UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DONNA FEHN,

                                              Plaintiff,

          - against -

Index No.

**COMPLAINT WITH JURY DEMAND**

# 07 CIV. 8321

## JUDGE CONNER

GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF JP MORGAN CHASE BANK,
JP MORGAN CHASE BANK, as Plan Administrator,
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY, as Administrator/Fiduciary of the Plan,
KRISTA DUDECK, Individually, DANIEL BERTA,
Individually, KARA MORETT, Individually,
and DESMOND "Doe," Individually,

                                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## I. <u>NATURE OF CLAIM</u>

1.     This is an action brought to redress violations of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Plaintiff, a long-term employee of

defendant JP Morgan Chase Bank, was recruited to return to the company eight months after her

resignation based upon representations by the company that all of her benefits would be reinstated

as if there were no break in service. Consequently, plaintiff recommenced her employment with

Defendant JP Morgan Chase, suffered a disabling condition, and was denied long-term disability

benefits (after receiving short-term disability benefits) on the basis that she was a newly hired

employee with a pre-existing condition. Accordingly, plaintiff brings causes of action for denial of

benefits in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), and for defendants' breach of fiduciary

duties pursuant to ERISA, 29 U.S.C. §§ 1104(a), and 1132(a)(3).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

## II. JURISDICTION AND VENUE

2.      The jurisdiction of this Court to adjudicate claims is invoked pursuant to ERISA 29

U.S.C. § 1132 and 28 U.S.C. §§ 1331, 1337 to enforce provisions of ERISA 29 U.S.C. §§ 1001, *et

seq.* and the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.      This Court is one of proper venue pursuant to ERISA, 29 U.S.C. § 1132(e) because

the relevant employee benefit plans are administered in this District, one or more defendants resides

or may be found in this District, the alleged breaches took place in this District, and pursuant to 28

U.S.C. § 1391, because the causes of action arose in this District.

## III. PARTIES

4.      Plaintiff Donna Fehn was an employee of Defendant JP Morgan Chase Bank (and/or

its predecessor company) during the period  from on or about July 24, 1978 through February 18,

2005, and again from October 31, 2005 through November 13, 2006.  She was assigned to work at

numerous facilities in Westchester and Putnam Counties.  As a result of her employment, Ms. Fehn

is entitled to benefits under employee benefits plans established and/or maintained by Defendant JP

Morgan Chase Bank and its predecessor company.  These plans include the Defendant Group Long

Term Disability Plan for Employees of JP Morgan Chase Bank ("LTD Plan"), JP Morgan Chase

Retirement Savings Plan and JP Morgan Chase Short-Term Disability Plan ("STD Plan").  Ms. Fehn

is a participant in these employee benefit plans within the meaning of ERISA § 3(7), 29 U.S.C. §

1002(7).  Ms. Fehn resides in Mahopac, New York.

5.      Upon information and belief, Defendant JP Morgan Chase Bank ("JPMC") is, and

has been at all relevant times, a New York domestic corporation with its principal place of business

in New York, New York.  Upon information and belief, at all relevant times, Defendant JPMC has

2

established, sponsored, administered and/or maintained several employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), including but not necessarily limited to the Plan sued herein. Upon information and belief, at all relevant times, Defendant JPMC has been the plan sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), and a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21). Upon information and belief, at all relevant times, Defendant JPMC, either directly or through its agents and/or employees has been the administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

6.    Upon information and belief, Defendant LTD Plan is, and has been at all relevant times, an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1). Upon information and belief, Defendant LTD Plan, Policy Number GLT675174 was established by Defendant JPMC, and is, and at all relevant times, has been maintained and/or sponsored by Defendant JPMC. Upon information and belief, the administrative offices of Defendant LTD Plan are, and have been at all relevant times, located in New York, New York.

7.    Upon information and belief, Defendant Hartford Life and Accident Insurance Company ("Hartford") is, and has been at all relevant times, a corporation with its principal place of business in Simsbury, Connecticut. Upon information and belief, at all relevant times, Defendant Hartford has been a fiduciary and administrator of Defendant LTD Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) and ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), respectively.

8.    Upon information and belief, at all relevant times, Defendants Krista Dudeck ("Dudeck"), Kara Morrett ("Morrett") and Daniel Berta ("Berta") were employees of Defendant JPMC, assigned to work at Defendant JPMC's offices at 11 Martine Avenue, 14th Floor, White

Plains, New York 10607.

9.    Upon information and belief, at all relevant times, Defendant Desmond Doe ("Doe," last name unknown) was an employee of Defendant JPMC assigned to its Human Resources Access Group.

10.    Upon information and belief, at all relevant times, Defendants JPMC, Hartford, Dudeck, Berta and Doe were fiduciaries of Defendant LTD Plan within the meaning of ERISA §§ 3(16)(A) and 3(21), 29 U.S.C. §§ 1002(16)(A) and 1002(21).

## IV.  FACTS COMMON TO ALL CLAIMS

11.    In or about July 1978, Ms. Fehn commenced her employment with a predecessor of Defendant JPMC as a Department File Clerk.

12.    When she commenced her employment, Ms. Fehn was offered the same benefits package that the company provided to all its employees on her level, including LTD benefits.

13.    Over the years, Ms. Fehn experienced tremendous success at Defendant JPMC, receiving numerous promotions, bonuses and salary increases.

14.    In or about January 2005, Ms. Fehn submitted her resignation to Defendant JPMC. At that time, she was the Assistant Branch Manager of the company's Somers, New York branch and received an annual salary of $62,000.00.

15.    At the time of her resignation, Ms. Fehn was a participant under Defendant JPMC's various employee benefits plans, including Defendant LTD Plan.  As a result of her tenure at Defendant JPMC, Ms. Fehn was a participant in the "Prior Plan" as defined by the terms of Defendant LTD Plan.  Furthermore, because of her tenure with the company and participation in Defendant LTD Plan, Ms. Fehn was not subject to any pre-condition exclusion under the Defendant

LTD Plan, or any of its Prior Plans.

16.     Ms. Fehn's last day as an employee of Defendant JPMC was February 18, 2005. She left the company to pursue a more lucrative job as a Branch Manager at Mahopac National Bank ("MNB").

17.     At MNB, Ms. Fehn earned an annual salary of $72,000.00 and received a benefits package which included LTD benefits administered by Unum Life Insurance Company of America ("Unum").

18.     Ms. Fehn's period of LTD benefits coverage with Unum while at MNB was for the period from March 24, 2005 through October 28, 2005. Because Ms. Fehn's break in LTD coverage between her employment with Defendant JPMC and Mahopac National Bank was less than sixty days, she was not subject to any preexisting condition provision under the Unum LTD plan as prescribed by New York Insurance Law Section 3234.

19.     During her time away from Defendant JPMC, Ms. Fehn remained in contact with Defendant Dudeck, Vice President and District Manager at Defendant JPMC. On more than one occasion, Defendant Dudeck told Ms. Fehn that Defendant JPMC wanted Ms. Fehn to rejoin the company. When Ms. Fehn informed Defendant Dudeck of her annual salary, Defendant Dudeck responded that Defendant JPMC could not match it.

20.     In or about September 2005, Ms. Fehn and Defendant Dudeck discussed an opening for a Branch Manager at Defendant JPMC's Patterson, New York branch. Ms. Fehn told Defendant Dudeck that she would be interested in accepting this position for less money than what she was earning at that time if certain conditions were met.

21.    Specifically, Ms. Fehn informed Defendant Dudeck that she wanted Defendant JPMC to treat her as though she never left the company in connection with her employee benefits and seniority. Ms. Fehn wanted credit for her 23 years of service and wanted the benefits to which she was entitled prior to leaving Defendant JPMC restored as of her original hire date.

22.    Defendant Dudeck agreed to this demand, representing to Ms. Fehn that her terms could be met, particularly because Ms. Fehn would be returning less than one year after the date she left the company.

23.    On October 12, 2005, Ms. Fehn met with Defendant Dudeck's superior, Defendant Berta. Defendant Berta was a Senior Vice President at Defendant JPMC. Ms. Fehn and Defendant Berta discussed the Branch Manager position for which she had been recruited. Defendant Berta told Ms. Fehn, "you know we want you back," however, he reiterated Defendant Dudeck's assertion that Defendant JPMC could not match her annual salary of $72,000.00. To entice Ms. Fehn to rejoin the company, Defendant Berta expressly represented that she would be rehired as a reinstated employee, that Defendant JPMC would recognize her 23 years of service, and that all of her employee benefits would be restored as of her original hire date without interruption. Defendant Berta assured Ms. Fehn that these terms would be memorialized in an employment agreement.

24.    Based upon the representations of Defendants JPMC, Dudeck and Berta, Ms. Fehn indicated to Defendant Berta that she would accept the position.

25.    On October 14, 2005 Defendant Dudeck formally offered the Branch Manager job to Ms. Fehn. As previously discussed, Defendant Dudeck informed Ms. Fehn that she was being rehired as a reinstated employee as of her original hire date and that her annual salary was $65,000.00. Defendant Dudeck also told Ms. Fehn that her benefits would be fully restored as

6

though she never left the company.

26.    On October 17, 2005, Ms. Fehn accepted Defendant JPMC's job offer. Even though the position paid $7,000.00 less than what she was earning at MNB, Ms. Fehn felt that it was beneficial for her career to rejoin Defendant JPMC as a reinstated employee.

27.    But for Defendants' representations concerning her status as a reinstated employee, Ms. Fehn never would have accepted the offer of employment and forfeited the additional salary and benefits to which she was entitled as a Branch Manager at MNB.

28.    In reliance upon the representations of Defendants Berta and Dudeck, Ms. Fehn accepted the position and resigned from MNB before she received the employment agreement from Defendant JPMC.  In fact, it wasn't until later that evening that Ms. Fehn downloaded the employment agreement from Defendant JPMC's website.

29.    The agreement provided by Defendant JPMC was silent regarding her rejoining Defendant JPMC as a reinstated employee.

30.    On October 19, 2005, Ms. Fehn contacted Defendant Dudeck regarding the proposed agreement.  Ms. Fehn asked Defendant Dudeck to send her an e-mail to confirm the terms of her employment.  In the telephone discussion, Defendant Dudeck reiterated the agreed upon terms regarding reinstatement and told Ms. Fehn that she would receive a confirmatory e-mail from the Defendant JPMC to supplement the employment agreement.

31.    On October 20, 2005, Ms. Fehn received an e-mail from Defendant Morett, an employee in Defendant JPMC's Human Resources Department.  In the e-mail, Defendant Morett welcomed Ms. Fehn back to the company and confirmed her benefits package as a reinstated employee.  Specifically, Defendant Morett wrote, "if an employee is rehired within 12 or fewer

7

months, the employee's service for . . . Plan purposes will be considered as *uninterrupted*."

32.    Based upon these assurances, on October 24, 2005 Ms. Fehn followed Defendant Dudeck's instructions: she executed the employment agreement even though it did not have the agreed upon terms and returned it to Defendant JPMC.

33.    On October 31, 2005, Ms. Fehn reported for work at Defendant JPMC's Patterson, New York branch.

34.    On November 1, 2005, Ms. Fehn engaged in a telephone conversation with an employee from Defendant JPMC's HR Access group who identified himself solely by his first name, Desmond. Defendant Desmond "Doe" answered Ms. Fehn's questions about her coverage under the LTD Plan. Defendant Doe informed Ms. Fehn that she was listed in his computer system as being hired on July 24, 1978. He also told Ms. Fehn that she was a reinstated employee under the LTD Plan, and as such, she was not subject to any LTD coverage restrictions.

35.    Ms. Fehn's status as a reinstated employee further was evident by her participation in other benefit plans offered by Defendant JPMC. When Ms. Fehn activated her retirement savings account, Lynn Abadie, an administrator for the Retirement Savings Plan, informed Ms. Fehn that she did not need to complete and submit any new forms because she was a "reinstated employee" with a hire date of July 24, 1978.

36.    On November 2, 2005, while driving on the Taconic State Parkway, Ms. Fehn suffered a severe anxiety/panic attack as a result of her renewed employment with Defendant JPMC. The severity of the anxiety/panic attack forced Ms. Fehn to pull over onto the shoulder of the busy parkway. Immediately thereafter, Ms. Fehn went directly to her doctor's office where she received treatment for "heart attack- like" symptoms. Her physician prescribed anti-anxiety medication and

recommended rest.

37.    Notwithstanding the medication and rest, Ms. Fehn's condition deteriorated. A few days later, Ms. Fehn had a follow-up visit with her regular treating physician, Dr. Gupta. Dr. Gupta prescribed Zanax to treat her severe anxiety. Ms. Fehn's condition failed to improve over the next few days and her prescription was increased.

38.    By November 10, 2005, Ms. Fehn's condition worsened to the point that Dr. Gupta referred her to Carmel Psychological Associates, P.C. for psychological treatment. Since on or about November 14, 2005, Ms. Fehn has been receiving this treatment.

39.    As a result of her severe anxiety, Ms. Fehn is completely disabled and unable to work.

40.    On or about November 18, 2005, Ms. Fehn applied for benefits under Defendant JPMC's short-term disability (STD) plan. Based on her status as a reinstated employee, Defendant JPMC approved Ms. Fehn's application and she received STD benefits for twenty-five (25) weeks.

41.    After her STD benefits ended, Ms. Fehn submitted an application to Defendant LTD Plan for LTD benefits.

42.    On May 23, 2006, the Defendant LTD Plan denied Ms. Fehn's claim even though she was totally disabled. The Plan stated that the basis for the denial of benefits was that Ms. Fehn was ineligible because her anxiety condition "occurred within [her] first year of coverage ... ." Defendant Plan erroneously determined Ms. Fehn's coverage began when she rejoined Defendant JPMC on October 31, 2005, rather than on her original hire date of July 24, 1978.

43.    Pursuant to the "Group Benefit Plan, Long Term Disability" Plan document provided by Defendant JPMC, Ms. Fehn was entitled to continuity of coverage and without implication of Pre-Existing Conditions Limitations because, prior to resigning from the company, Ms. Fehn was a

participant of the Plan as of its effective date of January 1, 2005 and was a participant of the Predecessor Plans on December 31, 2004 continuing back to her original hire date in 1978.

44.    In a fax-letter dated June 2, 2006, Saundra Prejean, employee in Defendant JPMC's HR Access group, notified Defendant LTD Plan that Ms. Fehn was a reinstated employee, and that her hire date was July 24, 1978.

45.    On August 22, 2006, based on the foregoing factual assertions, Ms. Fehn appealed the denial of LTD benefits by Defendant LTD Plan.

46.    In correspondence dated November 3, 2006, Defendant LTD Plan denied Ms. Fehn's appeal.

47.    In its November 3, 2006 letter, Defendant LTD Plan stated that it based the denial of the appeal on the facts in the original May 23, 2006 denial letter, as well as the contention that Ms. Fehn's disability was a pre-existing condition.

48.    On page 3, paragraphs 4-6, of its November 3, 2006 letter, Defendant LTD Plan relied upon an erroneous interpretation the New York State Insurance Law wherein it concluded that benefits should be denied based upon the alleged pre-existing condition.

49.    The Plan documents provide, with respect to the application of Pre-existing Conditions Limitations to New York residents, that if an employee is covered under an employer-provided disability benefit arrangement within 60 days of the effective date of coverage under Defendant LTD Plan, any treatment-free period requirements or period of coverage requirements, which were satisfied under the previous coverage will be credited toward satisfaction of similar periods under the Plan.

50.    Defendant LTD Plan failed to credit the time Ms. Fehn had LTD coverage with Unum Provident and Unum Life to the time she was covered under Defendant's plan.

51.    Ms. Fehn satisfied the treatment free period requirements and period of coverage requirements under the Unum Life policy while employed with Mahopac National Bank due to her coverage with Unum Provident. Accordingly, because she had continuity of coverage during that time, the treatment free period requirements and period of coverage requirements under Defendant LTD Plan were satisfied.

52.    Additionally, Defendant LTD Plan failed to provide medical support for its conclusion that Ms. Fehn's November 2, 2005 Disability was a "Pre-existing Condition." In fact, the opinion of Defendant LTD Plan's reviewing physician as stated in the November 3, 2006 denial letter supports that Plaintiff's medical condition does not meet the definition of "Pre-existing Condition" under the LTD Plan.

53.    Defendant LTD Plan stated in the November 3, 2006 denial letter that its reviewing physician recognized that Ms. Fehn's anxiety and panic attack disorder beginning on November 2, 2005 was the result of stress at Ms. Fehn's job at JP Morgan Chase. The reviewing physician noted that, "the most recent episode appears to have been related to the claimant's perceived stress at her new job." Therefore, Ms. Fehn's diagnosed anxiety and panic attack disorder beginning in November 2005 was caused by a "clearly identifiable and different precipitant" than what precipitated her treatment of generalized anxiety on September 12, 2005, and thus is not a Pre-existing Condition under the terms of the LTD Plan.

54.    Defendant LTD Plan's conclusion and denial of benefits was contrary to the decision of its own reviewing physician.

55.     On or about January 25, 2007, plaintiff challenged Defendant LTD Plan's November 3, 2006 denial of her appeal, setting forth, *inter alia*, the contentions raised herein.

56.     Defendant LTD Plan refused to consider the January 25, 2007 correspondence, deeming its decision of November 3, 2006 as complete and final.

57.     Because Defendant LTD Plan's decision was based upon an erroneous interpretation of New York State Insurance Law, it is not entitled to deference by this Court.

## AS AND FOR A FIRST CLAIM FOR RELIEF

*(CLAIM FOR BENEFITS UNDER ERISA § 502(a)(1)(B))*
*(AGAINST DEFENDANTS LTD PLAN and JPMC)*

58.     Plaintiff incorporates paragraphs 1 through 57 as though fully set forth herein.

59.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a participant to bring suit to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of the plan and/or to clarify her rights to future benefits under the terms of a Plan.

60.     On November 18, 2005, Plaintiff submitted her claims for long-term disability benefits. Plaintiff set forth the factual and legal bases for her claims relating to Defendant LTD plan which was established, maintained and administered by Defendant JPMC. By letter dated May 23, 2006, Defendant LTD Plan denied those claims. By letters dated August 22, 2006 and January 25, 2007, Plaintiff appealed Defendants' denial of her claims. By letters dated November 3, 2006 and January 31, 2007, Defendant LTD Plan denied the respective appeals. Accordingly, plaintiff has exhausted the Defendant LTD Plan's claims and review procedures under ERISA § 503, 29 U.S.C. § 1103, prior to instituting this action.

61.    By the acts and omissions set forth herein, the Defendants LTD Plan and JPMC, and each of them, have violated and continue to violate, the terms of the Defendant Plan and each of the foregoing provisions of ERISA. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has been deprived of benefits to which she is entitled under Defendant LTD Plan.

62.    Plaintiff, therefore is entitled to benefits under the terms of such Plan and the relief as set forth below.

## AS AND FOR A SECOND CLAIM FOR RELIEF

*(CLAIM FOR RELIEF UNDER ERISA § 502(a)(3) FOR BREACH OF FIDUCIARY DUTY)*
*(AGAINST DEFENDANTS JPMC, HARTFORD, DUDECK, BERTA, MORRETT and DOE)*

63.    Plaintiff incorporates paragraphs 1 through 57 as though fully set forth herein.

64.    At all relevant times, Defendants breached their fiduciary duties to the Plaintiff when they misrepresented to Plaintiff verbally and in a writing that, upon her reinstatement, she would be entitled to all employment benefits, including long-term disability benefits, as if her employment with Defendant JPMC was continuous and not interrupted. Plaintiff relied upon those misrepresentations by terminating her employment and her employer-provided long-term disability insurance coverage to return to Defendant JPMC and receive long-term disability insurance that she reasonably believed would be deemed continuous and uninterrupted from her prior period of employment with Defendant.

65.    By failing to act in the best interest of Plaintiff, the Plan participant, the aforementioned Defendant fiduciaries caused plaintiff to be wrongfully excluded from Defendant LTD Plan and thereby denied benefits to which she was otherwise entitled under that Plan.

13

66.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) permits a participant to bring suit to enjoin any act or practice which violates any provision of ERISA or the terms of the Plan, or to obtain other appropriate equitable relief to address such violation or enforce any provision of ERISA.

67.    By the acts and omissions set forth herein, Defendants breached their fiduciary duties to Plaintiff. As a proximate result of the Defendants' acts and omissions, as alleged herein, Plaintiff has been deprived of benefits to which she is entitled under the Defendant LTD Plan. As a result the Plaintiff is entitled to relief as set forth below.

## PRAYER FOR RELIEF

Plaintiff respectfully request this Court to:

## ON THE FIRST CLAIM

1.    Declare that Defendants LTD Plan and JPMC, and each of them, have breached the duties, responsibilities and obligations imposed upon them by the applicable terms of the Defendant LTD plan established, administered and/or maintained by Defendant JPMC, and have violated Plaintiff's rights thereunder by engaging in the acts and/or omissions complained of herein;

2.    Permanently enjoin the Defendants, and each of them, from any further acts or practices in violation of the terms of the Plans;

3.    Order the Defendants, and each of them, to pay the Plaintiff any benefits to which she is entitled under the terms of such Plans, together with prejudgment interest thereon;

4.    Declare the Plaintiff's rights to receive future benefits under the terms of such plans;

5.    Award Plaintiff the costs of this action, including reasonable attorneys' fees.

## ON THE SECOND CLAIM

1.    Declare that the Defendants, and each of them, have breached their fiduciary duties,

14

responsibilities and obligations imposed upon them by ERISA and have violated the Plaintiff's rights thereunder, by engaging in the acts and/or omissions complained of herein;

2.    Restore and reinstate Plaintiff as a participant entitled to receive benefits under Defendant LTD Plan.

3.    Declare the Plaintiff's rights to receive future benefits under the terms of such plans;

4.    Award Plaintiff the costs of this action, including reasonable attorneys' fees.

## ON ALL CLAIMS

1.    Provide such other relief under the circumstances as this Court deems equitable and just.

## JURY DEMAND

Plaintiff demands trial by jury of all issues in this action properly triable before a jury.

Dated:  White Plains, New York
        September 20, 2007

                              **SAPIR & FRUMKIN LLP**

                              By: _____
                                  William D. Frumkin (WF 2173)
                                  Attorneys for Plaintiff
                                  399 Knollwood Road
                                  White Plains, New York 10603
                                  (914) 328-0366

F:\APPLICAT\WP\Fehn\Complaint.revised.wpd\dp\rlh

15
