2001 U.S. Dist. LEXIS 19099, *

LEXSEE 2001 U.S. DIST LEXIS 19099

JAMES S. PATTERSON, Plaintiff, -against- DOUGLAS McCARRON, DOUGLAS BANES, ANDRIS SILINS, TOMMY RAY DUNFORD, DENNIS SHIEL, ARTHUR JOHANSEN, DAVID MEBERG, RICHARD B. HARDING, JR., PAUL J. O'BRIEN, GEORGE GRECO and MICHAEL MAZZUCA, as Trustees, and STUART GRABOIS, as Executive Director of Administration, of THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND, THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS VACATION FUND, THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS SCHOLARSHIP FUND, Defendants.

99 Civ. 11078 (AGS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 19099

November 20, 2001, Decided
November 21, 2001, Filed

**SUBSEQUENT HISTORY:** Subsequent appeal at *Patterson v. McCarron*, 2004 U.S. App. LEXIS 24355 (2d Cir. N.Y., Nov. 23, 2004)

**DISPOSITION:** [*1] Defendants' motion for summary judgment denied with respect to plaintiff's retaliation claim brought under § 510 of ERISA, and granted with respect to plaintiff's witness intimidation claim brought under *42 U.S.C. § 1985(2)*.

**COUNSEL:** For JAMES S. PATTERSON, plaintiff: Daniel Engelstein, Levy, Ratner & Behroozi, P.C., New York, NY.

For DOUGLAS MCCARRON, DOUGLAS BANES, ANDRIS SILINS, TOMMY RAY DUNFORD, DENNIS SHIEL, ARTHUR JOHANSEN, DAVID MEBERG, RICHARD B. HARDING, JR., PAUL J. O'BRIEN, GEORGE GRECO, STUART GRABOIS, MICHAEL MAZZUCCA, defendants: Ronald E. Richman, Schulte, Roth & Zabel, L.L.P., New York, NY.

**JUDGES:** Allen G. Schwartz, United States District Judge.

**OPINION BY:** Allen G. Schwartz

**OPINION**

**MEMORANDUM ORDER**

SCHWARTZ, Allen G., District Judge.

Plaintiff filed this action on November 3, 1999, alleging retaliatory discharge in violation of § 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1140*. Plaintiff also claims that the defendants' termination of his employment constituted witness intimidation in violation of *42 U.S.C. § 1985(2)*. Defendants now move for summary judgment [*2] dismissing both claims. For the reasons set forth below, defendants' motion is granted in part and denied in part.

**I. Factual Background**

Defendants are the trustees and executive director of the New York City District Council of Carpenters Benefits Funds ("the Funds"). The Trustees serve as representatives of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("the International Union"), the affiliated locals of the International Union ("the District Council"), and certain employers and employer associations that have entered into collective bargaining agreements with the District Council. (Defendants Statement Pursuant to Local Rule 56.1 ("Defs. 56.1") P 1) Defendant Stuart GraBois has been the executive director of the Funds since 1993. ( Id. P 2) Plaintiff James

Case 7:07-cv-08321-WCC    Document 18-3    Filed 02/06/2008    Page 2 of 5

Page 2
2001 U.S. Dist. LEXIS 19099, *

Patterson, who had been employed at the Funds since 1982, was promoted by defendant GraBois to the position of deputy director in 1993, and served in that position until his termination in September 1999. (Complaint P 20, 42; Defs. 56. *1 P 4*)

In 1998, the Trustees hired an outside firm, Zenith Administrators, to administer the Funds. (Defs. 56. *1 P 11*) This change from [*3] self-administration to third-party administration caused the Funds to lay off most of its employees. (Defs. 56. *1 P 17*) The transition period between the two forms of administration began on June 1, 1998, and was originally supposed to be completed in four months. (Defs. 56. *1 P 13*) However, the transition did not go according to plan and took at least fifteen months to complete. [1] Plaintiff claims that during the transition period he expressed opposition to the selection of Zenith as administrators, as well as to the way that Zenith administered the Funds. (Complaint P 34) Defendant GraBois, and some of the Funds Trustees, also criticized Zenith and its performance.( Defs. 56. *1 P 33*)

> 1   The parties disagree as to the exact duration of the transition period. Defendants assert that it took fifteen months (Defs. 56. *1 P 16*), whereas plaintiff insists that it took at least two years (Pl. 56. *1 P 3*). The Court does not resolve this issue since it does not affect the outcome of the current motion.

[*4] In late 1998 and early 1999 plaintiff and defendant GraBois met with investigators from the Department of Labor ("DOL") to discuss issues related to the administration of the Funds. [2] Zenith and the Trustees did not know about these meetings at the time. (GraBois Depo. at 258) Plaintiff also claims to have met with DOL investigators *without* GraBois present several times between May 1999 and September 1999. (Patterson Depo. at 152) In April 1999, the United States Attorney for the Southern District of New York issued a *subpoena duces tecum* seeking documents regarding the relationship between Zenith and the Funds, as well as documents related to the administration of the Funds. (Plaintiff's Exhibit 19) In early June 1999, plaintiff met with an Assistant U.S. Attorney (as well as two other individuals from the U.S. Attorney's office) to discuss these issues. In June and July of 1999, the DOL issued document requests regarding the Funds and Zenith. (Pl. Exh. 5, 19).

> 2   There is some dispute as to whether there were two or three such meetings. (*Compare* Deposition of James Patterson ("Patterson Depo.") at 138 *with* Deposition of Stuart GraBois ("GraBois Depo.") at 253-54.)

[*5] On August 11, 1999, the committee of trustees that was overseeing the transition to third-party administration held a meeting at the Funds office in lower Manhattan. (Pl. Exh. 27) Four trustees were present, as were GraBois, Zenith executive Gary Eng, and two attorneys for the Funds. (Id.) Eng, who was the main contact between Zenith and the Funds and was in charge of the transition, told the Trustees of his desire to terminate plaintiff. (Deposition of Gary Eng ("Eng Depo.") at 49) The reason given by Eng for the termination was that with almost all of the Funds administrative functions being moved to Zenith's offices in Chicago, plaintiff's position was being eliminated. (*Id. at 49, 50)* The Trustees discussed the matter with Eng at this meeting although no final decision was made as to plaintiff's status. (*Id. at 50, 53*). At the next full Trustees meeting on August 31, 1999, Eng recommended to the Trustees that plaintiff be laid off. (Defs. 56. *1 P 21*) The Trustees accepted Eng's recommendation although the details of that acceptance--specifically whether or not Eng needed the Trustees' approval to terminate plaintiff and whether [*6] the Trustees made an official decision to do so--are unclear (*Compare* Pl. 56. *1 P 10 with* Defs. 56. *1 P 24*) In any event, after the meeting plaintiff was informed that he was to be terminated. (Complaint P 40) Plaintiff requested permission to address the Trustees at their next meeting on September 14, 1999, but that request was denied. (Complaint P 42) The termination became effective September 17, 1999, although plaintiff continued to be paid through October 20, 1999. (Defs. 56. *1 P 25*; Complaint P 42) Plaintiff was provided with a severance agreement, but refused to sign the agreement claiming that it contained a provision that would have prevented his continued cooperation with government investigations of the funds (a provision that plaintiff claims was not included in the severance agreements of other laid off Funds employees). (Complaint P 47) [3]

> 3   As a result of not signing the agreement, plaintiff was denied certain pension benefits. A suit regarding that denial is currently pending in this district before Chief Judge Mukasey (No. 00 Civ. 5962 (MBM)).

[*7] II. Discussion

A. Summary Judgment Standard

A court may grant summary judgment only if it is satisfied that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, which may be satisfied if it can point to the absence of evidence necessary to support an essential element of the non-

Case 7:07-cv-08321-WCC    Document 18-3    Filed 02/06/2008    Page 3 of 5

Page 3
2001 U.S. Dist. LEXIS 19099, *

moving party's claim. See *Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)*; see also *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. If the moving party meets its burden, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat the motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. See *Ortiz v. Makram, 2000 U.S. Dist. LEXIS 18428*, No. 96 Civ. 3285(AGS), 2000 WL 1876667, at [*8] *4 (S.D.N.Y. Dec. 21, 2000). "Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996)*. All reasonable inferences and ambiguities are resolved in favor of the party against whom summary judgment is sought. See *Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)*. The court's function on a motion for summary judgment is not to weigh the evidence, but to determine if there is an issue for trial. See *Anderson, 477 U.S. at 249*. There is an issue for trial if the party opposing summary judgment offers sufficient evidence for that party to obtain a favorable jury verdict at trial. See *id*. Summary judgment is proper when reasonable minds could not differ as to the import of the proffered evidence. See *id. at 250-52*; *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)*.

**B. Retaliation Claim**

Retaliation claims under § 510 of ERISA are analyzed using the burden-shifting framework established in *McDonnell Douglas Corp v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*; [*9] *Heyman v. Queens Village Committee for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999)*. This framework was originally used in Title VII cases, but has since been applied in other contexts, including claims brought under § 510 of ERISA. See *Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir. 1988)*. Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. See *James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000)*. If the plaintiff makes out a prima facie case, this creates a presumption of discrimination. The burden of production then shifts to the defendant, who must proffer a nondiscriminatory reason for its action. See *id. at 154*. If the defendant carries its burden, the presumption of discrimination disappears and the plaintiff must offer evidence reasonably supporting a finding of unlawful discrimination, see *id*., which may include a showing that the defendant's proffered reason was a pretext for discrimination. See *Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)*. [*10]

To establish a prima facie case of retaliation under § 510 of ERISA, a plaintiff must establish that: (i) he was engaged in protected activity; (ii) the employer was aware of plaintiff's participation in that protected activity; (iii) the employer took adverse action against plaintiff; and (iv) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. See *Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)* (prima facie case for retaliation in Title VII context). In this case, it is clear that plaintiff can satisfy parts (i) and (iii): cooperating with government investigators is protected activity, and being terminated is certainly an adverse employment action. Defendants argue, however, that plaintiff cannot establish parts (ii) and (iv), because those who decided to terminate plaintiff did not know about his meetings with the DOL and the U.S. Attorney, and even if the decision-makers did know about plaintiff's cooperation with the government there was no causal connection between that cooperation and his termination. Rather, defendants maintain, plaintiff was discharged because after the [*11] transition to third-party administration the work handled at the Funds' New York office did not require two executive supervisors (i.e. by both GraBois and plaintiff).

With respect to part (ii) of the prima facie case-- employer knowledge of plaintiff's protected activity--the key issue is whether or not defendant GraBois participated in the decision to terminate plaintiff. If he did--as plaintiff contends--then plaintiff has clearly satisfied this part of his prima facie case since GraBois obviously knew about plaintiff's cooperation with the government (the two men met with DOL investigators together). (GraBois Depo. at 253-55) However, defendants assert that the decision to terminate was made by the Zenith and the Trustees, neither of whom knew about plaintiff's meetings with government investigators. The evidence in the record does not clearly establish either side's contention, and thus a question of fact sufficient to defeat the motion exists as to this issue.

GraBois concedes that as executive director of the Funds he was directly involved in the layoffs at the Funds, especially after the number of people employed by the Funds got closer to the final target number (GraBois [*12] Depo. at 103, 106-07, 160-61). And it is clear that since GraBois was present at the transition committee meeting on August 11, 1999, he knew of Zenith's intention to terminate plaintiff well in advance of plaintiff. GraBois maintains, however, that he tried to dissuade Gary Eng from terminating plaintiff (Grabois Affidavit P 4; GraBois Depo. at 166-67), an assertion corroborated by Gary Eng (Eng Depo. at 44). In support of the idea that GraBois participated in the decision to terminate him, plaintiff points to several pieces of circumstantial evidence, including two memos prepared by Gary Eng. The first of

Case 7:07-cv-08321-WCC    Document 18-3    Filed 02/06/2008    Page 4 of 5

Page 4
2001 U.S. Dist. LEXIS 19099, *

these, prepared on August 13, 1999, says that by the end of that day, "Stu [GraBois] will have reduced the staff of the NYC office to the level we committed to the Trustees." (Pl. Exh. 1) Plaintiff argues that this document illustrates GraBois' primary role in deciding which employees were laid off. The second memo, a file memo prepared by Eng on August 4, 1999, lists all Funds employees to be retained indefinitely after August 13, as well as those employees to only be retained for a one to four week period after that date (Pl. Exh. 11). The final section of the memo is titled [*13] simply "Issues?" It contains one line, which lists plaintiffs name and department, the word "Zenith" (which apparently meant that Zenith was responsible for plaintiff's salary at that point, as opposed to the District Council), and then the word "Stu." Both sides agree that "Stu" refers to Stuart GraBois but their interpretations of this final portion of the document diverge from there. Defendants, and the memo's author Gary Eng, argue that the last line of the memo simply means that Eng wanted to talk to GraBois about terminating Patterson since GraBois was against the decision. (Def. Reply to Pl.'s Opposition to Summary Judgment at 5) Plaintiff maintains that the memo indicates GraBois's participation in the decision to terminate him (Pl. Memo in Opposition to Defs.' Motion for Summary Judgment ("Pl. Memo.") at 21) Both of these interpretations are plausible and the Court cannot say that either one is correct as a matter of law. That decision is for the ultimate fact-finder in this case.

Assuming, *arguendo*, that plaintiff can establish a prima facie case, defendants' might still be entitled to summary judgment if they satisfy their burden of production by offering a legitimate [*14] reason for plaintiff's discharge and plaintiff cannot raise an issue of fact as to whether discrimination was the real reason for his discharge. See *Tavoloni v. Mount Sinai Medical Center, 26 F. Supp. 2d 678, 680-81 (S.D.N.Y. 1998)*, citing *Fisher v. Vassar College, 114 F.3d 1332, 1339 (2d Cir.1997)* (en banc), cert. denied, *522 U.S. 1075, 139 L. Ed. 2d 752, 118 S. Ct. 851 (1998)*. It should be noted, however, that plaintiff need not show that discrimination resulting from his protected activity was the *sole* motivation for his discharge, only that it was a motivating factor behind defendants' decision to terminate him. See *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 120 (2d Cir. 1997)* (Title VII).

There is evidence in the record that raises issues of fact regarding the true motivation behind plaintiff's discharge. Defendants contend that it was simply a matter of reduced work in the Funds office (Defs.' Memorandum of Law in Support of their Motion for Summary Judgment ("Defs.' Memo") at 16) But as far back as January 20, 1999, Gary Eng had made it clear to plaintiff [*15] that plaintiff and/or GraBois would be terminated if they said negative things about Zenith's performance. (Pl. Exh. 8) GraBois himself conceded that he feared he would lose his job if Zenith found out that he and plaintiff were maneuvering to expose the problems associated with Zenith's administration of the funds (GraBois Depo. at 222-23). In his deposition, GraBois also seemed to indicate that his fear of being fired was based at least in part on the fact that he was also cooperating with the DOL around the same time that he was discussing Zenith's performance with others at the Funds. (*Id. at 223*)

There is also evidence in the record showing that GraBois reassigned many of plaintiff's duties without informing him right around the time that plaintiff met with the U.S. Attorney's office. (Deposition of Yelena Chagina at 97-98; Affidavit of James P. Drum P 25). Finally, plaintiff maintains that two days before his termination became effective GraBois accused him of "'bad-mouthing" GraBois to government investigators. (Affidavit of James Patterson P 15). As discussed above, it is unclear whether GraBois actually participated in the decision to terminate plaintiff, but assuming [*16] that he did, there is enough evidence in the record to suggest that the decision may have been motivated by retaliatory animus. As a result, this Court cannot dismiss plaintiff's claim as a matter of law.

### C. Witness Intimidation Claim

In order to maintain a claim of witness intimidation under *42 U.S.C. § 1985(2)*, plaintiff must sufficiently allege: "(1) a conspiracy between two or more persons, (2) to deter a witness 'by force, intimidation, or threat' from attending any court of the United States or testifying freely in a matter pending therein, which (3) causes injury to the claimant." Patterson v. Retirement and Pension Plan for Officers and Employees of the New York District Council of Carpenters and Related Organizations, 2001 WL 1178670 (S.D.N.Y) at *8, quoting *Herrera v. Scully, 815 F. Supp. 713, 726 (S.D.N.Y. 1993)* (quoting the statute).

The Second Circuit interprets the word "witness" liberally for purposes of *§ 1985(2)* claims. See *Chahal v. Paine Webber, Inc., 725 F.2d 20, 23 (2d Cir. 1984)*; see also Patterson v. Retirement and Pension Plan, 2001 WL 11178670 at *9. Even [*17] under this liberal interpretation, however, it is not clear that plaintiff could be considered a witness since the facts in the record do not indicate that he will ever be called to testify in a federal proceeding. Assuming that plaintiff is covered by the definition of witness, there is still no evidence that indicates defendants ever used force, intimidation, or threats against plaintiff. Plaintiff concedes that he was never threatened or intimidated by any of the Trustees or employees of the Funds (Patterson Depo. at 372-73); nor

Case 7:07-cv-08321-WCC  Document 18-3  Filed 02/06/2008  Page 5 of 5

Page 5
2001 U.S. Dist. LEXIS 19099, *

was he deterred from meeting with government investigators, even after he was terminated. (*Id. at 91-92*)

Plaintiff argues that *§ 1985(2)* does not require evidence of physical threats or violence and cites *Haddle v. Garrison, 525 U.S. 121, 125 n.3, 142 L. Ed. 2d 502, 119 S. Ct. 489 (1998)*, asserting that the Supreme Court's decision in that case "presupposes that deterrence need not involve violence or the threat of violence." (Pl. Memo at 31). In the passage from Haddle that plaintiff cites, however, the Supreme Court explicitly states that, "We express no opinion regarding respondents' argument that intimidation claims under [*18] *§ 1985(2)* are limited to conduct involving force or threat of force," *Haddle 525 U.S. at 125 n.3*. Plaintiff also cites *Morris v. Lindau, 196 F.3d 102 (2d Cir. 1999)* to support his argument, but that case did not deal specifically with the issue of a violence requirement; the Court of Appeals reversed the district court's dismissal of the *§ 1985(2)* claim because it was not clear whether plaintiffs had sustained any actual injury. See *Morris, 196 F.3d at 116-17*. Given the history of *§ 1985(2)*, which was originally enacted to combat violence against blacks in the Reconstruction era, see *Keating v. Carey, 706 F.2d 377, 392 (2d Cir. 1983)* (Meskill, J., concurring and dissenting), and the lack of judicial precedent expanding the statute's scope to wholly nonviolent cases like plaintiff's, defendants are entitled to summary judgment on this claim absent a showing of any violent or threatening conduct.

### III. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is denied with respect to plaintiff's retaliation claim brought under § 510 of ERISA, and granted with respect to plaintiff's [*19] witness intimidation claim brought under *42 U.S.C. § 1985(2)*.

SO ORDERED.

Allen G. Schwartz

United States District Judge

Dated: New York, New York

November 20, 2001