2 of 2 DOCUMENTS

**DAVID YANKELEVITZ, M.D., Plaintiff, - against - CORNELL UNIVERSITY and CORNELL UNIVERSITY MEDICAL COLLEGE, Defendants.**

**95 Civ. 4593 (PKL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1996 U.S. Dist. LEXIS 11298*; 71 Fair Empl. Prac. Cas. (BNA) 1662

**August 7, 1996, Decided**
**August 7, 1996, FILED**

**DISPOSITION:** [*1] Plaintiff's motion to disqualify Thomas Mead Santoro, Esq. GRANTED. Plaintiff's motion to disqualify other members of the Cornell legal department DENIED. Plaintiff's motion to amend the complaint GRANTED. Defendants' cross-motion to strike DENIED.

**COUNSEL:** APPEARANCES

SIVE, PAGET, & RIESEL, P.C., New York, New York, Lawrence R. Sandak, Esq., of counsel, Attorneys for Plaintiff.

OFFICE OF THE UNIVERSITY COUNSEL OF CORNELL UNIVERSITY, Ithaca, New York, Thomas Mead Santoro, Esq., of counsel, Attorneys for Defendants.

**JUDGES:** Peter K. Leisure, U.S.D.J.

**OPINION BY:** Peter K. Leisure

**OPINION**

*OPINION AND ORDER*

LEISURE, *District Judge*:

Plaintiff moves to disqualify defendants' counsel and to amend his complaint pursuant to *Fed. R. Civ. P. 15(a)*. Defendants, pursuant to *Fed. R. Civ. P. 12(f)*, cross-move to strike portions of plaintiff's complaint. For the reasons stated below, plaintiff's motion to disqualify defense counsel is granted in part and denied in part, plaintiff's motion to amend his complaint is granted and defendants' motion to strike is denied.

**BACKGROUND**

Plaintiff David Yankelevitz, M.D. ("Dr. Yankelevitz" or "plaintiff") has been a member of the medical staff [*2] of the New York Hospital-Cornell University Medical Center for more than ten years. *See* Yankelevitz Affidavit ("Yankelevitz Aff.") P 5. He has been a faculty member of the Department of Radiology at defendant Cornell University Medical College (together with Cornell University, "Cornell" or "defendants") since 1987. *See id.* P 6.

In November, 1992, Dr. Claudia Henschke ("Dr. Henschke") was plaintiff's immediate supervisor. *See id.* P 12. In response to, *inter alia*, being passed over for the position of Acting Chairman of the Department of Radiology, Dr. Henschke filed a lawsuit in the Southern District of New York, *Henschke v. New York Hospital-Cornell Medical Center*, 92 Civ. 8260 (LAP), alleging gender-based employment discrimination.

In December, 1992, plaintiff agreed to be interviewed by lawyers representing Cornell as part of their investigation into Dr. Henschke's allegations. *See id.* Among those present at the interview was Thomas Mead Santoro, Esq. ("Santoro"), Deputy University Counsel for Cornell University. *See id.* P 14. Santoro represented Cornell at the interview and also represents Cornell in this litigation. *See id.*

Case 7:07-cv-08321-WCC   Document 18-4   Filed 02/06/2008   Page 2 of 6

Page 2

1996 U.S. Dist. LEXIS 11298, *2; 71 Fair Empl. Prac. Cas. (BNA) 1662

Plaintiff alleges **[*3]** that the information he proffered to the attorneys present at the interview hindered their case. *See id.* PP 16-17. Plaintiff also alleges that the attorneys were so dissatisfied with plaintiff's remarks that they, and consequently other employees of Cornell, committed numerous acts of retaliation against plaintiff that severely damaged his career. *See id.* PP 18, 20. Plaintiff claims that this alleged retaliation is in violation of federal, New York State, and New York City employment discrimination laws. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); Title IX of the Education Amendments of 1972, as amended, *20 U.S.C. § 1681 et seq.*, and the federal regulations pursuant to Title IX; the New York State Human Rights Law, *New York Executive Law § 296 et seq.*; and the Administrative Code of the City of New York § 8-107 *et seq.*

Plaintiff asserts that Santoro, along with the entire Cornell legal department, actively participated in this pattern of retaliation. *See* Complaint P 31; Plaintiff's Memorandum of Law in Support of Motion to Disqualify ("Pl's. Mot. to Disq.") at 19. The retaliatory acts in **[*4]** which plaintiff alleges defense counsel were involved mainly revolve around an audit initiated by Cornell's legal department to determine whether plaintiff violated Cornell's Conflict of Interest policy and Cornell's Faculty Practice Plan ("FPP"). Plaintiff claims that the audit was used to harass and intimidate him, and to deny him job advancements. *See* Yankelevitz Aff. PP 21(3)-21(4). The audit has remained open for over two years, and plaintiff alleges that Santoro has personally directed that the audit not be closed. *See id.*

Plaintiff further alleges that Santoro told plaintiff that he must take certain actions with respect to the FPP, and that failure to do so could result in the termination of his employment. *See id.* P 21(9). Santoro allegedly made these threats even though,

> Santoro knew that some or all of the requirements being imposed upon Dr. Yankelevitz were not imposed upon any other member of the Department of Radiology and that the Department did not even have procedures in place to permit Dr. Yankelevitz to satisfy those requirements, nor did the Department itself follow the guidelines set forth in the FPP.

*Id.*

Finally, plaintiff alleges **[*5]** that defendants' counterclaim in this action, signed by Santoro, was made in retaliation for filing the lawsuit underlying the motions currently before the Court, *see id.* P 21(11), and thus also violates the employment discrimination laws cited above.

**DISCUSSION**

I. *Plaintiff's Motion to Disqualify Defense Counsel*

Disciplinary Rule 5-102(A) of the Code of Professional Responsibility ("DR 5-102(A)"), 22 N.Y.C.R.R. § 1200.21(a), reads in pertinent part as follows:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, the lawyer shall withdraw as an advocate before the tribunal . . . .

DR 5-102(A). "Strong policies underlie DR 5-102(A)" that "operate[] to protect the interests of the [client], the interests of the adverse party, and the reputation of the legal profession as a whole." *MacArthur v. Bank of New York, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981)*; *see S & S Hotel Ventures Limited Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 444, *508 N.E.2d 647, 650-51, 515 N.Y.S.2d 735, 738-39 (1987)*.

An advocate **[*6]** who also ought to be called as a witness hurts his client because the advocate's ability to objectively assess his client's case may become clouded. *See, e.g.*, *id.* at 444, 508 N.E.2d at 650, 515 N.Y.S.2d at 738 ("[DR 5-102(A)] has rooted the disqualification of a lawyer-witness in the concept that a lawyer's professional judgment should be exercised for the client's benefit, free of compromising influences and loyalties."). The interests of an adverse party are also hindered by an attorney-witness as a jury may view such an attorney as "possessing special knowledge of a case and [would] therefore accord a testifying attorney's arguments undue weight." *MacArthur, 524 F. Supp. at 1208*. In addition, a jury, "having seen the attorney take an oath on the witness stand . . . might accord testimonial weight to his closing arguments." *Id.* Finally, the legal profession can

Case 7:07-cv-08321-WCC   Document 18-4   Filed 02/06/2008   Page 3 of 6

Page 3

1996 U.S. Dist. LEXIS 11298, *6; 71 Fair Empl. Prac. Cas. (BNA) 1662

be "ill-served" by an attorney-witness as "lay observers . . . might speculate whether counsel has compromised his integrity on the stand in order to prevail in the litigation." *Id.* [1]

> 1   The Court notes that differences of opinion do exist as to the underlying rationale for DR 5-102(A). *See, e.g.*, *Keoseian v. Von Kaulbach, 707 F. Supp. 150, 154 (S.D.N.Y. 1989)* (advocate-witness rules "have nothing to do with protecting the client or the adversary from harm, but rather with protecting the legal profession as a whole from the unseemly public image it engenders.") (internal quotation marks and citation omitted); *S + S Hotel*, 69 N.Y.2d at 444, 508 N.E.2d at 651, 515 N.Y.S.2d at 739 n. 4 (discussing alternate rationales for DR 5-102(A)). However, the courts do agree that when an attorney ought to be called as a witness for his or her own client, under normal circumstances, disqualification of that attorney is appropriate.

[*7] Because of the importance of the policy considerations supporting DR 5-102(A), the stricture of the rule is mandatory. A "party cannot choose between the attorney's testimony and his representation." *Id. at 1209*. A party can find alternative representation, but "cannot obtain substitute testimony for a counsel's personal, relevant knowledge." *Id.* [2] However, because a motion for disqualification "denies a party's right to representation by the attorney of its choice" *S & S Hotel*, 69 N.Y.2d at 442, 508 N.E.2d at 650, 515 N.Y.S.2d at 738 (citation omitted), it may be employed in bad faith to gain strategic advantage. *See MacArthur, 524 F. Supp. at 1210*. Consequently, a "party seeking disqualification must carry a heavy burden and meet a high standard of proof." *Paretti v. Cavalier Label Co., Inc., 722 F. Supp. 985, 987 (S.D.N.Y. 1989)* (internal quotation marks and citations omitted); *see also Paramount Communications, Inc. v. Donaghy, 858 F. Supp. 391, 394 (S.D.N.Y. 1994)* ("motions to disqualify opposing counsel under the Code . . . are viewed with disfavor.").

> 2   Similarly, because DR 5-102(A) applies when a lawyer "*ought to be* called as a witness on behalf of his client" DR 5-102(A) (emphasis added), "that the lawyer may not actually testify is not controlling." *MacArthur, 524 F. Supp. at 1208* (citing *J.P. Foley & Co., Inc. v. Vanderbilt, 523 F.2d 1357, 1359 (2d Cir. 1975)*.

[*8] Review of the record in the case at bar compels the conclusion that plaintiff has met the requisite standard of proof. According to plaintiff's affidavit, Santoro has been actively involved in a substantial portion of the alleged retaliation. Plaintiff alleges actions, statements, and beliefs of Santoro that only Santoro can explain or refute. *See* Yankelevitz Aff. PP 21(1)-21(9). [3] *See Keoseian, 707 F. Supp. at 154* (judicial disqualification of an attorney-witness "takes into account such factors as the significance of the matters, weight of the testimony and availability of other evidence."); *Foley, 523 F.2d at 1359*.

> 3   Defendants offer little argument to contradict plaintiff's allegations, which indicate that Santoro ought to be called as a witness in this action. Instead, defendants argue that Santoro was merely "protecting" his clients and that disqualification based on such "ordinary advocacy is highly questionable." Defendants' Memorandum in Opposition ("Defs'. Opp.") at 24. Without speaking to the nature of Santoro's actions, the Court notes that even if Santoro was merely protecting his clients, defendants' argument is not persuasive. As the *MacArthur* Court noted, "A lawyer can choose . . . to participate actively in a client's business affairs . . . . But, if an attorney chooses to become intimately involved in the client's business, then he or she must be prepared to step aside if the matters involved result in litigation." *MacArthur, 524 F. Supp. at 1211*.

[*9] Two prior decisions of this Court are particularly on point. In *MacArthur*, plaintiff sued for breach of a joint venture agreement. On the second day of trial, it became clear that defendant's lead counsel was "intimately involved" with matters as to the creation of the joint venture that were "at the heart of [the] litigation." *MacArthur, 524 F. Supp. at 1206*. The Court consequently dismissed the attorney, as well as his firm, as defense counsel. In *Gandler v. Nazarov, 1994 U.S. Dist. LEXIS 10236, 1994 WL 391665*, at *2 (S.D.N.Y. July 28, 1994), Judge Haight found that plaintiff's counsel's potential testimony was necessary to defendant's testimony and disqualified him *sua sponte*. In addition, plaintiff's counsel possessed unique personal knowledge necessary for his client's case which could not be provided by alternate means. *Id.* Like the attorneys in these two cases, Santoro's testimony is necessary to defendants in the instant litigation.

Case 7:07-cv-08321-WCC   Document 18-4   Filed 02/06/2008   Page 4 of 6

Page 4

1996 U.S. Dist. LEXIS 11298, *9; 71 Fair Empl. Prac. Cas. (BNA) 1662

However, even though his testimony is necessary, an attorney-witness can continue to represent his client if "disqualification would work a substantial hardship on the client." DR 5-101(B)(4). Defendants argue that a substantial hardship exists as to **[*10]** Santoro's dismissal because, "Mr. Santoro has worked closely with his client regarding this and other matters, and his disqualification would severely prejudice Cornell by denying it its most experienced and knowledgeable counsel." Defendants' Memorandum in Opposition at 15. The Court disagrees.

Disqualification of Santoro will not "work a substantial hardship" on defendants because the remainder of Cornell's legal department, individual members of whom have substantial familiarity with this case, is not disqualified from this litigation. 4 Although plaintiff argues that the legal department should be disqualified as it "has been an essential force in implementing defendants' retaliation against Dr. Yankelevitz," Pl's. Mot. to Disq. at 19, this contention is unsatisfying. In *Kubin v. Miller, 801 F. Supp. 1101, 1114 (S.D.N.Y. 1992)*, Judge Kram held that "vicarious disqualification is an extremely harsh measure which should be limited to special circumstances." Specifically, absent any "conflict of interest considerations," there was no basis to disqualify defense counsel's law firm "based on the necessary testimony of one of it's partners in support of defendant's case." *Id.* **[*11]** Here, plaintiff never mentions any potential conflicts of interest and offers only vague, conclusory assertions in support of the disqualification of Cornell's legal department. Moreover, plaintiff does not assert that any member of Cornell's legal department beyond Santoro ought to be called as a witness. As "vicarious disqualification . . . is in the discretion of the court," *id. at 1113*, while plaintiff's motion to disqualify Santoro is granted, plaintiff's motion to disqualify Cornell's legal department is denied.

> 4  The Court also notes that the *MacArthur* Court, in construing DR 5-101(B)(4), conceded that disqualification of familiar counsel intimately involved in the subject matter of the dispute greatly burdened the party. Nonetheless the Court held that disqualification was necessary. *MacArthur, 524 F. Supp. at 1210*.

II. *Plaintiff's Motion to Amend*

*Fed. R. Civ. P. 15(a)* mandates that leave to amend "shall be freely given when justice so requires." Accordingly, motions to amend shall **[*12]** be granted absent "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)*; see *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1963)*; *Richardson Greenshields Sec., Inc., v. Lau, 825 F.2d 647, 653 (2d Cir. 1987)*.

Defendants assert that the proposed additions to paragraphs 26 and 29, and proposed new paragraphs 28, 31, and 32 in plaintiff's amended complaint should be disallowed as they are futile. These amendments all specify acts of retaliation in which Santoro was allegedly involved. "An amendment is considered futile if the proposed pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *New York State Ass'n of Career Schools, Inc. v. State Educ. Dep't of New York, 142 F.R.D. 403, 405 (S.D.N.Y. 1992)*. However, as defendants concede, plaintiff only seeks to add to his complaint factual allegations which support his existing claims against Cornell University and Cornell University Medical College. *See* Defs'. Opp. at 5. Therefore, absent an attack by defendants **[*13]** on the validity of these claims, by a motion to dismiss for failure to state a claim or otherwise, which has not occurred in this case, plaintiff's motion to amend cannot be denied on the basis of futility.

Defendants also argue that plaintiff's amendments should not be allowed as they will cause severe prejudice to the defendants in the form of the disqualification of Santoro. Because Santoro has already been disqualified for reasons independent of the proposed amendments, defendants' argument is moot.

III. *Defendants' Cross-Motion to Strike*

Defendants' cross-motion to strike paragraphs 26 and 31 of the original complaint is based on the assumption that plaintiff's motion to amend is denied. *See* Defs'. Opp. at 19-20. As the motion to amend is granted, the portion of defendants' cross-motion to strike paragraphs 26 and 31 of the complaint is denied as moot.

The cross-motion also seeks to strike plaintiff's affirmative defense to defendants' counterclaim which contends that the counterclaim is retaliatory. This aspect of the motion is also denied. A motion to strike an affirmative defense under *Fed. R. Civ. P. 12(f)* "is not favored and will not be granted unless it appears **[*14]** to a certainty that [defendants] would succeed despite any

Case 7:07-cv-08321-WCC   Document 18-4   Filed 02/06/2008   Page 5 of 6

Page 5
1996 U.S. Dist. LEXIS 11298, *14; 71 Fair Empl. Prac. Cas. (BNA) 1662

state of facts which *could be proved* in support of the [plaintiff]." *Salcer v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds, 478 U.S. 1015 (1986)* (emphasis added) (internal quotation marks omitted).

Despite defendants' arguments, the Court is unwilling to adopt a rule stating that compulsory counterclaims, or any other legal cause of action, cannot, as a matter of law, constitute retaliation in violation of the employment discrimination laws. "In order to make out a prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995)*. In the context of a motion to strike, all plaintiff must do is satisfy the above three factors under the "any state of facts" standard.

As to the first prong of the retaliation test, the filing of the instant lawsuit is the protected activity known [*15] to the defendant. Whether, under any set of facts, a counterclaim can be an adverse employment action is a more difficult question to answer. An adverse action affects "the terms, privileges, duration, or conditions of the plaintiff's employment." *Dortz v. New York, 904 F. Supp. 127, 156 (S.D.N.Y. 1995)* (internal quotation marks omitted). Defendants argue that the "anti-retaliation provisions of . . . Title VII are designed principally to deal with retaliatory conduct that occurs outside the judicial system." *Glass v. IDS Financial Services, Inc., 778 F. Supp. 1029, 1065 (D.Minn. 1991)*. However, Judge Edwards of the Court of Appeals for the District of Columbia Circuit recently held that "the ADEA does not limit its reach only to acts of retaliation that take the form of cognizable 'employment actions' such as discharge, transfer or demotion." *Passer v. American Chemical Soc., 290 U.S. App. D.C. 156, 935 F.2d 322, 331 (D.C. Cir. 1991)*. [5] Judge Edwards then listed a number of cases that recognized illegal adverse actions by former employers that could not be described strictly as employment actions, yet constituted retaliation. *See id.* (citing *Sherman v. Burke Contracting,* [*16] *Inc., 891 F.2d 1527, 1532 (11th Cir.), cert. denied, 498 U.S. 943, 112 L. Ed. 2d 317, 111 S. Ct. 353 (1990)* (unlawful retaliation under Title VII to persuade former employee's new employer to fire the employee); *Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1164-65 (10th Cir. 1977)* (unlawful retaliation under Title VII to inform prospective employer that former employee brought discrimination charges against former employer); *Lytle v. Household Mfg., Inc., 494 U.S. 545, 108 L. Ed. 2d 504, 110 S. Ct. 1331 (1990)* (reinstating former employee's claim of retaliation under *42 U.S.C. § 1981* against former employer who failed to provide complimentary job references and suggesting that such facts could also state a valid claim under Title VII's anti-retaliation provision); *Shehadeh v. C & P Tel. Co., 193 U.S. App. D.C. 326, 595 F.2d 711, 720-22 & n. 44 (D.C. Cir. 1978))*.

> 5   In both the Second Circuit and the D.C. Circuit, the standard of proof for retaliation under the ADEA is identical to the Title VII standard. *See, e.g., Bornholdt v. Brady, 869 F.2d 57, 65 (2d Cir. 1989); Passer, 935 F.2d at 330*.

[*17] Although defendant still employs plaintiff, it is not difficult to square the case at bar with those cited above. Defendants' counterclaim is based on plaintiff's alleged failure to conform to the procedures required by the FPP. The counterclaim demands, *inter alia*, an accounting from plaintiff of all his clinical practice income for the past six years. *See* Defendants' Answer and Counterclaim at 10. The allegations and implications of the counterclaim shed a negative light on plaintiff's professionalism and ethics in a profession that holds such qualities in high regard.

In the above cases, the former employers scuttled their former employees' job searches by sullying their former employees' reputations. In the instant case, plaintiff could prove a set of fact to show that defendants' counterclaim mars plaintiff's professional reputation. As plaintiff does procure employment outside of his work for Cornell, defendants' actions could have an adverse impact on plaintiff's employment prospects. *Cf. Passer, 935 F.2d at 331*.

Finally, plaintiff could prove a set of facts which establishes a causal connection between plaintiff's lawsuit and defendants' counterclaim thereby [*18] satisfying the third prong of the retaliation test. "The causal connection between the protected activity and the adverse employment action can be established . . . through evidence of retaliatory animus." *Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990)*. Defendants brought their claim against plaintiff after plaintiff initiated this lawsuit even though defendants had

Case 7:07-cv-08321-WCC   Document 18-4   Filed 02/06/2008   Page 6 of 6

Page 6

1996 U.S. Dist. LEXIS 11298, *18; 71 Fair Empl. Prac. Cas. (BNA) 1662

prior opportunity to bring their claim. Considering this, along with the pattern of retaliatory animus alleged by plaintiff, a state of facts could be proven in which the counterclaim, although it may be compulsory, is causally connected to plaintiff's lawsuit.

Thus, under the limited burden imposed upon plaintiff by defendants' motion to strike, plaintiff could prove a state of facts that establishes a prima facie case of retaliation.

**CONCLUSION**

For the reasons stated above, plaintiff's motion to disqualify Thomas Mead Santoro, Esq. is HEREBY GRANTED. Plaintiff's motion to disqualify other members of the Cornell legal department is HEREBY DENIED. Plaintiff's motion to amend the complaint is HEREBY GRANTED. Defendants' cross-motion to strike is HEREBY DENIED. The parties are directed [*19] to appear at a pre-trial conference in Courtroom 18B at 500 Pearl Street on September 6, 1996 at 3:00 p.m.

**SO ORDERED.**

New York, New York

August 7, 1996

Peter K. Leisure

U.S.D.J.