UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X  Via ECF

DONNA FEHN,

                          Plaintiff,

        -against-

GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF JP MORGAN CHASE BANK, JP
MORGAN CHASE BANK, as Plan Administrator,
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY, as Administrator/Fiduciary of the Plan,
KRISTA DUDECK, Individually, DANIEL BERTA,
Individually, KARA MORETT, Individually, and
DESMOND "Doe," Individually,

                         Defendants.

------------------------------------------------ X

:  07 CIV. 8321 (WCC)

:

:  **AFFIDAVIT**
:  **OF**
:  **DEBORAH L. SILVERMAN**
:
:
:
:
:
:

| STATE OF NEW YORK | ) |
|---|---|
| | ) ss.: |
| COUNTY OF NEW YORK | ) |

**DEBORAH L. SILVERMAN**, being duly sworn, deposes and says:

    1.    I am a Vice President with JPMorgan Chase Bank, N.A. ("JPMorgan Chase") and am a Benefits Manager I with the Corporate Human Resources Compensation and Benefits area.

    2.    I am fully familiar with the facts and circumstances of this action set forth herein based upon my personal knowledge and review of JPMorgan Chase records. I am making this Affidavit in support of JPMorgan Defendants' Opposition to Plaintiff's Motion to Dismiss JPMorgan Defendants' Counterclaims and for Leave to Amend the Complaint.

    3.    Plaintiff Donna Fehn ("Plaintiff") was employed by JPMorgan Chase (and its predecessor entities) from July 24, 1978 through February 18, 2005.

163621:v1

4.    On or about October 17, 2005, Plaintiff received an offer of re-employment with JPMorgan Chase, with an anticipated start date of October 31, 2005. A copy of Plaintiff's offer letter from JPMorgan Chase, dated October 17, 2005, is annexed hereto as Exhibit A.

5.    Plaintiff accepted the offer of re-employment on or about October 19, 2005. See Exhibit A.

6.    On or about October 24, 2005, Plaintiff completed the JPMorgan Chase application, which subsequently was electronically preserved. A copy of Plaintiff's JPMorgan Chase application, dated October 24, 2005, is annexed hereto as Exhibit B. Plaintiff expressly agreed that she was "subject to and [would] follow JPMorgan Chase policies and procedures, including, but not limited to, . . . JPMorgan Chase's Human Resources policies."

7.    Plaintiff commenced her re-employment with JPMorgan Chase on October 31, 2005 after an approximate eight (8) month break in employment.

8.    A copy of JPMorgan Chase's HR Policy, "Introductory Period," in effect in or around October and November 2005 is annexed hereto as Exhibit C. The policy states, in relevant part (emphasis added), that it "applies to all newly hired and **re-employed** individuals **regardless of the length of the break in employment.**"

9.    A copy of JPMorgan Chase's Disability Leave Policy in effect ("Disability Leave Policy") in or around October and November 2005 is annexed hereto as Exhibit D. The policy states, in relevant part (emphasis added), that **"[i]f you are a rehired full-time** or part-time **salaried employee,** please note that **you must complete the Introductory Period following your rehire to be eligible for disability pay benefits,** even if you have met the recognized service requirement."

10.    Plaintiff commenced a leave of absence in early November 2005, a few days after she returned to JPMorgan Chase's employ and applied for short-term disability benefits under the Disability Leave Policy.

11.    JPMorgan Chase communicated information pertaining to Plaintiff's application for short-term disability benefits to its administrator, Defendant Hartford Life and Accident Insurance Company ("Hartford"), but erroneously provided Plaintiff's original hire date of July 24, 1978, rather than her re-hire date of October 31, 2005.

12.    JPMorgan Chase paid Plaintiff $33,749.51 in short-term disability benefits under its Disability Leave Policy.

13.    Under the Disability Leave Policy then in effect, Plaintiff had not completed her Introductory Period and was ineligible for disability pay benefits, however, she was entitled to statutory benefits of $170.00 per week (for a maximum of 26 weeks), which are paid to New York employees who are not eligible for disability benefits under the Disability Leave Policy. See Exhibits C and D.

14.    Plaintiff should have been paid only $4,420, which reflects her entitlement to New York statutory benefits in accordance with the Disability Leave Policy.

15.    Plaintiff was overpaid in the amount of $29,329.51, reflecting erroneous payment of salary continuation under the Disability Leave Policy.

16.    The overpayment of $29,329.51 was paid out by the JPMorgan Chase "cost center" for Plaintiff's business unit (#5560).

17.     Plaintiff's employment was terminated effective November 14, 2006.


_Deborah L. Silverman_
DEBORAH L. SILVERMAN

Sworn to before me this
4th day of March 2008


_Blecher_
Notary Public

STACEY L. BLECHER
Notary Public, State of New York
No. 02DA4994784
Qualified in New York County
Commission Expires April 13, 20_10_

164966:v1              5

EXHIBIT A

Message Preview

*U 417 315*

**JPMorganChase**

1 Chase Manhattan Plaza/27th Floor
New York, NY 10081

October 17, 2005

Donna Fehn
36 Tyler Ct
Mahopac, New York   10541

Dear Donna:

We are pleased to present our offer for you to join JPMorgan Chase & Co., or one of its subsidiaries!
We are delighted at the prospect of your joining the firm.

This letter contains the entire understanding between us and supercedes any prior verbal or written
communication related to terms and conditions of this offer of employment.  This offer can only be
modified in writing. The specifics of the offer are:

**Position:**
• Role:  Branch Manager
• Location:  Patterson-In-Store
• Manager:  Krista Dudek, 914-287-7004
• Start Date:  October 31, 2005

**Compensation:**
• Base pay at an annualized rate of  $65,000.00
• You are eligible to participate in the Branch Profitability Incentive Plan.*
* Your Manager will provide additional information about this performance based Incentive Plan that
provides you with an opportunity to enhance your total compensation.

**Benefits:**
• The enclosed Welcome Book provides an overview of Benefit offerings.
• You will receive a Benefits Enrollment Kit within the first 10 days after starting work, which will
provide you with details about the Health and Income Protection Plans, their features, what to do to
ensure that you have the coverage that you desire, and how to make your benefit elections. You will also
be able to review this information on the JPMorgan Chase company website approximately 48 hours
after your start date.

**Branch Manager Training Coordinator:**
• As part of your hiring process you will be assigned to a Branch Manager Training Coordinator, Norine
Bartone at 212-552-1067, who will be working with you as you progress through the Branch Manager
Training Curriculum.

**Starting Work:**
• Critical instructions on completing new hire forms and information for us to complete your
background check will be sent to you shortly via email. It is important that you complete the forms and

take all action requested within 48 hours. Failure to comply with this request could delay your start date or may cause us to rescind our offer. In addition, it is important that you complete your fingerprinting and drug testing as explained. If you need assistance in getting these forms completed, contact our team at 1-866-473-6765, enter your social security number, and press option #1.
• You can complete the online Corporate New Hire Orientation by accessing http://careers.jpmorganchase.com/welcomenewhire before or after your first day.
• In your new position, you will wear Bank Apparel or, in heritage Chase locations only, when Bank Apparel is rolled out to your location. Your manager will help you obtain a gift certificate which will assist you in your initial purchase.
• On your first day of work, please report to your manager at your work location at 8:30am.
•

You will be joining the Branch Manager Orientation Conference call on the 2nd or 4th Monday of the month at 2:00 pm EST. The call in # is 614-217-1234, participation code 3646. Please bring your Branch Manager Playbook and Orientation Guide to the call as it will be referenced throughout.
• After you have completed approximately your first four weeks of employment, you will be expected to attend Branch Manager Training in Chicago, Illinois for 4 days. This program is offered during the 2nd and 4th weeks of each month. Details regarding the required course pre-work and travel arrangements will be sent to you via email.

**Employment Relationship:**
• Your offer of employment is subject to satisfactory completion of all pre-employment processing, including a background check, fingerprint processing, drug screening and your completion of all forms necessary for employment. This offer is also contingent upon your ability to establish identity and valid employment eligibility.
• **By accepting this offer, you represent that you are not subject to and will not enter any written or oral agreement or arrangement which would restrict you from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with your ability to perform the functions associated with the position that you have been offered. You further understand and agree that you may not disclose to the firm or use in connection with your employment at the firm any protected trade secrets or protected confidential or proprietary materials of another entity.**
• Your first 90 days on the job will be an introductory period. This is a period for you and your manager to ensure that you have the ability to perform your role and responsibilities and to ensure that you understand all applicable performance standards and policies, which you are subject to throughout your employment. During the introductory period, you or your manager may terminate your employment if he or she determines that you are not appropriately qualified and/or suited for the position. The completion of the 90 day introductory period does not create a contract or guarantee of employment. You will remain an employee-at-will at all times irrespective of the 90 day introductory period. "Employee-at-will" means that either you or the company may terminate your employment at any time, for any or no reason.
• You must read and understand the company Code of Conduct prior to joining the firm and review it periodically on the company intranet site. The site is located at http://www.jpmorganchase.com >About Us>Governance>Code of Conduct.

We are very excited at the prospect of your joining us! Should you need any further information, please contact me at 212-552-2442.

Please indicate your acceptance by signing this letter and returning it to me.

Sincerely,

*Malinie Surujnarine*

Malinie Surujnarine
JPMorgan Chase Consumer Banking Staffing

By signing and returning this letter I accept the terms described above. I also affirm that I have read and understand the JPMorgan Chase Code of Conduct, and agree as a condition of employment to comply with the Code as in effect from time to time.

• I understand that I can access the Code via the Internet at http://www.jpmorganchase.com >About Us>Governance>Code of Conduct prior to joining the firm, and through the firm's intranet once I begin employment.
• I acknowledge that the Code requires that certain outside activities be approved in writing after I begin employment, and I agree that, if any such required approval is denied, I will cease the relevant activity immediately.

Agreed and Accepted by: _____ Signature

_10/19/05_ Date

# EXHIBIT B



**GID: 417315**

**SSN: 069568235**

**Start: 10/31/2005**

Patch V

**HROPS for HROPS User**

**Full New Hire Record**

>> Show data for EE Records Investigations <

### Internal Use Information

| | |
|---|---|
| Recruiter Name | Malinie Surujnarine |
| Hiring Manager Name | Krista Dudek |
| New Hire SID | U417315 |
| New Hire Title | BRANCH MANAGER IN-STORE |
| Anticipated Start Date | 10/31/2005 |

### Personal Profile

| | |
|---|---|
| Name | Donna E Fehn |
| Maiden name | Spinelli |
| Current address | 36 Tyler Ct<br>Mahopac, New York 10541<br>United States |
| Previous address | |
| National Id | 069568235 |
| Birth date | 09/08/1959 |
| Home phone | (845) 628--6314<br>J. P. Morgan Chase may contact you at this number |

| | |
|---|---|
| Email | de633@aol.com |
| Other surnames used | |
| Preferred first name | |
| Marital status | Married |

| | |
|---|---|
| Emergency contact name | Thomas P Fehn |
| Relation | Spouse |
| Emergency contact address | 36 Tyler Ct<br>Mahopac, New York 10541<br>United States |
| Day phone | (914) 494--3303 |
| Evening phone | (845) 628--6314 |

| | |
|---|---|
| Dependent #1 Name | Thomas P Fehn |
| Relation | Spouse |
| Birthdate | 05/10/1959 |
| Gender | Male |
| Marital status | Married |
| SSN/National Id | 057563874 |

| | |
|---|---|
| Gender | Female |
| Disabled | No |
| Veteran status | Not specified |
| Group identity | White - not of Hispanic origin |

**Job History**

| | |
|---|---|
| Job #1 Employer | Mahopac National Bank |
| Assignment type | Full Time |
| Dates | from 02/2005 to 10/2005 |
| Address | 630 Route 6 |
| | Mahopac, New York 10541 |
| | United States |
| Supervisor | Kathleen Rooney |
| Telephone | (845) 621--0543 |
| Title/Position | Branch manager |
| Starting pay | 70,000.00 (Base) |
| Current/Ending pay | 72,000.00 (Base) + 0.00 (Additional) |
| Reason for leaving | opportunity to return to Chase prior employeer |

| | |
|---|---|
| Job #2 Employer | Jp Morgan Chase |
| Assignment type | Full Time |
| Dates | from 07/1978 to 02/2005 |
| Address | Route 100 202 |
| | Somers, New York 10589 |
| | United States |
| Supervisor | anna Matteson |
| Telephone | (914) 276--2401 |
| Title/Position | Assistant Branch Manager |
| Starting pay | 62,000.00 (Base) |
| Current/Ending pay | |
| Reason for leaving | Branch Manager position at Mahopac National Bank |

**Education History**

| | |
|---|---|
| School #1 Name | New Rochelle |
| School address | Clove Rd |
| | New Rochelle, New York 10801 |
| | United States |
| Dates | from 09/1974 to 09/1977 |

| | |
|---|---|
| Graduated | Yes |
| Program | Full Time |
| Credit completed | |
| Type of degree | High School Diploma |
| Expected graduation date | |
| Subject major | |

| | |
|---|---|
| Special Training or Certification | New Rochelle High School Graduated 1977 retail **Banking with Chase since** 1977 Health Life |

## Payroll

Method of pay

I wish to have my semi-monthly salary credited to my personal account. (This option is available to employees who do not work in New York State or Texas).

## Employee Banking

Household Income          65,000.00

Mothers maiden name       Codella

Joint applicant name

Joint applicant address

Joint applicant phone

Joint applicant mothers maiden name

Joint applicant household income

Employee checking

Convert my existing Chase Checking account to an Employee Checking account. My checking account number will remain the same. Account #: 9980345947 Routing #: 021000021

Employee bank card

I do not wish to select a Banking Card at this time.

Overdraft line of credit option

High yield savings

I do not wish to open a new High Yield Savings account at this time.

Employee credit card

I do not wish to apply for a Chase Personal Credit Card at this time.

Online banking

Not enrolled.

## Security Data

Previous name(s)

No, I do not have additional information relative to change of name, use of an assumed name or nickname necessary to enable a check on my arrest/conviction, work or school records.

Previous J.P. Morgan Chase & Co. employment information

I was a previously employed by JP Morgan Chase under the name Donna Spinelli
Previous Employee ID: 417315
07/1978 - 02/2005

Consulting information

No, I have never worked for an office temporary agency or consulting firm and

been assigned to JP Morgan Chase, JP Morgan & Co., Chase Manhattan Corporation, Chemical Banking Corporation, Manufacturers Hanover Corporation or any of their subsidiaries or affiliates.

| | |
|---|---|
| Application information | No, I have never previously been considered for employment, but not hired, by JP Morgan Chase, JP Morgan & Co., Chase Manhattan Corporation, Chemical Banking Corporation, Manufacturers Hanover Corporation or any of their subsidiaries or affiliates. |
| Continuing activities | No, I am not currently or expect to be engaged in any occupation or business activity as an employee, director, officer, executor, trustee, etc., which I would want to continue while employed at JP Morgan Chase. |
| Related employee | No, I am not related to an employee of JP Morgan Chase. |
| Military service | No, I have not served in the armed forces. |
| Bonding coverage | No, I have not been refused or cancelled from bonding coverage. |

**Legal History**

| | |
|---|---|
| Arrests | None |
| Convictions | None |
| Comments | None |

**Signatures 18**

| | |
|---|---|
| Signature #1 | Accuracy |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I certify that the statements made on this form are true and correct to the best of my knowledge and I understand and agree that any misstatement or omission of fact, or failure to timely provide verification of information provided on this form will result in disqualification of my application, withdrawal of my offer, or termination of my employment whenever discovered. |

| | |
|---|---|
| Signature #2 | backgroundAuthorization |
| Initials | df |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I understand that as part of the new-hire process for all JPMorgan Chase candidates, and to obtain information for employment purposes subsequent to any date of hire, a background investigation, which will include a consumer report and which may include an investigative consumer report, will be conducted by a consumer reporting agency for employment purposes to verify the information that I provided on my resume and/or application for employment. The consumer report may include, but is not limited to, verification of my educational background, prior employment records, military records, credit history and criminal records. A background investigative consumer report is a consumer report which contains information on my character, general reputation, personal characteristics, or mode of living all or part of which is obtained through personal interviews with neighbors, friends, associates and acquaintances who may have knowledge concerning any such items of information. |

Upon request, I will be informed whether a consumer report or investigative consumer report was requested from a consumer reporting agency by JPMorgan Chase and provided with the name and address of the consumer reporting agency that furnished the report. I understand that within a reasonable period of time I may make a written request for information concerning the nature and scope of any such investigation requested and that I have the right to receive such information within five days after JPMorgan Chase receives my request or five days after JPMorgan Chase requested the report, whichever is the later. I further understand that I may inspect and receive a copy of the report by contacting the consumer reporting agency.

I understand that before adverse action can be taken against me in whole or in part due to the results of the above-referenced consumer report or investigative consumer report, such report(s) will be provided to me with a written summary of my rights under the Fair Credit Reporting Act. I further understand that I may have additional rights under applicable state law.

I hereby authorize all corporations, companies, credit agencies, educational institutions, persons, law enforcement agencies, criminal, civil and federal courts, current and former employers to release and forward to JPMorgan Chase and its consumer reporting agency any and all information, references and records sought in connection with any request for an employment reference by JPMorgan Chase.

By signing below, I acknowledge that JPMorgan Chase has provided me with a summary of my rights under the federal Fair Credit Reporting Act as prepared by the Federal Trade Commission.

This authorization and release is knowingly and voluntarily entered into, and is binding now and in the future on my heirs, assignees, associates and personal representatives. A copy of this authorization shall have the same authority as the original. The following information is provided in connection with this authorization.

I certify that the statements made on this form are true and correct to the best of my knowledge and I understand and agree that any misstatement or omission of fact, or failure to timely provide verification of information provided on this form will result in disqualification of my application, withdrawal of my offer, or termination of my employment whenever discovered.

I understand that nothing contained in this New Hire Information Form is intended to lead to or create an employment contract between JPMorgan Chase and me. I further understand and agree that the employment relationship that may result will be an employment-at-will and either I or JPMorgan Chase may terminate my employment at any time for any reason or for no reason and with or without notice. I acknowledge that no other representations concerning the terms or conditions of my employment oral or written have been made to, or relied upon by me. I understand that no employee (including any officer) of JPMorgan Chase has the authority to alter the employment-at-will relationship, orally, or in writing. I further agree that I am subject to and will follow JPMorgan Chase policies and procedures, including, but not limited to, JPMorgan Chase's Worldwide Rules of Conduct (including the "Intellectual Property and Confidential and Proprietary Information Policy") and any responsibilities set forth in JPMorgan Chase's Human Resources policies. I understand that JPMorgan Chase's policies and procedures are guidelines subject to JPMorgan Chase's discretion in interpretation and shall not be considered to impose any contractual obligations on JPMorgan Chase. I further understand that JPMorgan Chase may change its policies and procedures without notice to or consent by its employees.

I understand and agree that, consistent with applicable law, I am obligated to immediately inform JPMorgan Chase and update any information included on this form including any pending criminal cases, criminal convictions, guilty pleas, no contest pleas, and entry into pretrial diversions or similar programs concerning prosecution for a criminal offense, and that failure to do so may result in disqualification of my application, withdrawal of my offer, or termination of my employment whenever discovered.

I understand and agree that my employment is subject to successfully passing a review by human resources regarding concurrent employment at JPMorgan Chase of relatives by blood, marriage or law, including a domestic partner. I also understand and agree that my employment is subject to the successful completion of fingerprinting, drug testing, reference checking and any pre-employment background checks and investigations.

I agree to have my fingerprints and photograph taken and that law enforcement agencies, including the FBI, will be contacted and I agree that JPMorgan Chase may conduct pre-employment investigations.

I understand that past employers/educational institutions and/or the military may be contacted for references, and I hereby authorize such inquiries, agree that this form may be used in such inquiries and agree that I will sign any necessary release authorizing such entities to provide JPMorgan Chase with my complete employment, education and/or military background, including information and opinions regarding my character, ability, performance, attendance, punctuality, conduct, and circumstances and reason for termination.

| | |
|---|---|
| Signature #3 | BackgroundConsumerReport |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I understand that as part of the new-hire process for all JPMorgan Chase[1] candidates, and to obtain information for employment purposes subsequent to any date of hire, a background investigation, which will include a consumer report and which may include an investigative consumer report, will be conducted by a consumer reporting agency for employment purposes to verify the information that I provided on my resume and/or application for employment. The consumer report may include, but is not limited to, verification of my educational background, prior employment records, military records, credit history and criminal records. A background investigative consumer report is a consumer report which contains information on my character, general reputation, personal characteristics, or mode of living all or part of which is obtained through personal interviews with neighbors, friends, associates and acquaintances who may have knowledge concerning any such items of information. |
| Signature #4 | ConsumerReportRequest |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | Upon request, I will be informed whether a consumer report or investigative consumer report was requested from a consumer reporting agency by JPMorgan Chase and provided with the name and address of the consumer reporting agency that furnished the report. I understand that within a reasonable period of time I may make a written request for information concerning the nature and scope of any such investigation requested and that I have the right to receive such information within five days after JPMorgan Chase receives my request or five days after JPMorgan Chase requested the report, whichever is the later. I further understand that I may inspect and receive a copy of the report by contacting the consumer reporting agency. |
| Signature #5 | ContactReferences |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I understand that past employers/educational institutions and/or the military may be contacted for references, and I hereby authorize such inquiries, agree that this form may be used in such inquiries and agree that I will sign any necessary release authorizing such entities to provide JPMorgan Chase with my complete employment, education and/or military background, including |

information and opinions regarding my character, ability, performance, attendance, punctuality, conduct, and circumstances and reason for termination.

| | |
|---|---|
| Signature #6 | CriminalUpdate |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I understand and agree that, consistent with applicable law, I am obligated to immediately inform JPMorgan Chase and update any information included on this form including any pending criminal cases, criminal convictions, guilty pleas, no contest pleas, and entry into pretrial diversions or similar programs concerning prosecution for a criminal offense, and that failure to do so may result in disqualification of my application, withdrawal of my offer, or termination of my employment whenever discovered. |

| | |
|---|---|
| Signature #7 | Disclosure |
| Initials | NO |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | [1]JPMorgan Chase includes J.P. Morgan Chase & Co. and any affiliates and subsidiaries and any information provided in connection with this Authorization/Disclosure may be communicated among these corporate entities unless I indicate that such information is not to be so communicated by checking here: NO.<br><br>[2]As set forth in the employment application, arrest and conviction screenings, as well as all screenings, are conducted in accordance with applicable law. |

| | |
|---|---|
| Signature #8 | EmploymentContract |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I understand that nothing contained in this New Hire Information Form is intended to lead to or create an employment contract between JPMorgan Chase and me. I further understand and agree that the employment relationship that may result will be an employment-at-will and either I or JPMorgan Chase may terminate my employment at any time for any reason or for no reason and with or without notice. I acknowledge that no other representations concerning the terms or conditions of my employment oral or written have been made to, or relied upon by me. I understand that no employee (including any officer) of JPMorgan Chase has the authority to alter the employment-at-will relationship, orally, or in writing. I further agree that I am subject to and will follow |

JPMorgan Chase policies and procedures, including, but not limited to, JPMorgan Chase's Worldwide Rules of Conduct (including the "Intellectual Property and Confidential and Proprietary Information Policy") and any responsibilities set forth in JPMorgan Chase's Human Resources policies. I understand that JPMorgan Chase's policies and procedures are guidelines subject to JPMorgan Chase's discretion in interpretation and shall not be considered to impose any contractual obligations on JPMorgan Chase. I further understand that JPMorgan Chase may change its policies and procedures without notice to or consent by its employees.

| | |
|---|---|
| Signature #9 | FairCredit |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | By signing below, I acknowledge that JPMorgan Chase has provided me with a summary of my rights under the federal Fair Credit Reporting Act as prepared by the Federal Trade Commission. |
| Signature #10 | FingerPhoto |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I agree to have my fingerprints and photograph taken and that law enforcement agencies, including the FBI, will be contacted and I agree that JPMorgan Chase may conduct pre-employment investigations. |
| Signature #11 | MethodOfPayment |
| Initials | df |
| Timestamp | 2005-10-24T17:42:42-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I wish to have my semi-monthly salary credited to my personal account. (This option is available to employees who do not work in New York State or Texas). |
| Signature #12 | PersonalProfile |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I understand and agree that my employment is subject to successfully passing a review by human resources regarding concurrent employment at JPMorgan Chase of relatives by blood, marriage or law, including a domestic partner. I also understand and agree that my employment is subject to the successful |

completion of fingerprinting, drug testing, reference checking and any pre-employment background checks and investigations.

| | |
|---|---|
| Signature #13 | PrintEmployeeBanking |
| Initials | YES |
| Timestamp | 2005-10-24T17:49:23-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I have printed the Employee Banking form. |
| Signature #14 | PrintI9 |
| Initials | YES |
| Timestamp | 2005-10-24T17:49:23-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I have printed the Form I-9 (Proof of eligibility to work). |
| Signature #15 | ReleaseAndForward |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I hereby authorize all corporations, companies, credit agencies, educational institutions, persons, law enforcement agencies, criminal, civil and federal courts, current and former employers to release and forward to JPMorgan Chase and its consumer reporting agency any and all information, references and records sought in connection with any request for an employment reference by JPMorgan Chase. |
| Signature #16 | RightsSummary |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | I understand that before adverse action can be taken against me in whole or in part due to the results of the above-referenced consumer report or investigative consumer report, such report(s) will be provided to me with a written summary of my rights under the Fair Credit Reporting Act. I further understand that I may have additional rights under applicable state law. |
| Signature #17 | SecurityInformationRider |
| Initials | df |
| Timestamp | 2005-10-24T17:43:09-04:00 |
| Client address | 170.148.2.154 |

DocumentText

The following chart lists various states that have certain restrictions relating to inquiries concerning criminal history (e. g., arrests, pre- or post- trial diversion programs and convictions of misdemeanors). If the state in which you are applying for employment has a restriction, **you should not provide the** information as checked below.

Prohibited Inquiries

Pending Unresolved Arrests.

AZ CA(1) IL IN IA KS MA MI(2) MN NV NM OH RI UT WA WV

Records of Conviction for Misdemeanors or Summary Offenses.

IN

Pre- or Post-Trial Diversions.

CA

First Conviction of Certain Misdemeanors(3) or Completion of Incarceration Period for any Misdemeanor or Conviction Which Occurred Five or More Years Prior to Application Date.

MA

Any Misdemeanor Conviction for Which Probation has been Successfully Completed or Otherwise Discharged and the Case has been Dismissed Judicially.

CA

Any Conviction of Possession of Marijuana if the Conviction Occurred More Than Two Years Before the Application Date.(4)

CA

[1] Can inquire about an arrest for which the applicant is out on bail or on his/her own recognizance pending trial.

[2] Can inquire only as to pending **felony** charges.

[3] Certain misdemeanors include: drunkenness, simple assault, speeding, minor traffic violations, affray, and disturbance of the peace.

[4] This law only applies to infractions for possesion of insubstantial amounts of marijuana, not to convictions of possession for large amounts of the drug,

distribution or possession, and distribution or manufacture of other drugs such as cocaine.

| | |
|---|---|
| Signature #18 | VolunteerRelease |
| Initials | YES |
| Timestamp | 2005-10-24T17:47:52-04:00 |
| Client address | 170.148.2.154 |
| DocumentText | This authorization and release is knowingly and voluntarily entered into, and is binding now and in the future on my heirs, assignees, associates and personal representatives. A copy of this authorization shall have the same authority as the original. The following information is provided in connection with this authorization. |

Process and remove from worklist

Cancel and return to worklist

EXHIBIT C

**JPMorganChase** ⬤

Company Home | HR & Personal | Workplace Resources | Technology & Operations | Human Resources

Nevual Gogri     JPM 33.580 ▲ 0.0 null
EDT

People Search [        ] Go

HR News    Help    Feedback    Site map    Search accessHR [        ]

*access* HR

Nevual Gogri [ Sign Out ]

■Benefits  ■Pay & Recognition  ■Learning & Development  ■Diversity  ■Work-Life Solutions  ■HR Policies  ■Tools & Resources

**HR Policies> Introductory Period**

# Introductory Period

 *Terms to Know*

At JPMorgan Chase, all employees, including re-employed individuals, begin their employment with a 90-day introductory period. During this 90-day period of continuous service, employees are given an opportunity to demonstrate their performance capabilities and can assess whether the position is suited to them, and their manager can assess if they are appropriately qualified and suited for the position. The introductory period may also serve as a period of time to complete any training or licensing requirements for the position in which the employee was hired.

This policy applies to all newly hired and re-employed individuals regardless of the length of the break in employment. It does not apply if an employee transfers or is promoted into a new position or if an employee joins the firm through a merger or an acquisition.

During an employee's introductory period (and throughout employment with JPMorgan Chase), an employee's employment may be terminated at any time without prior warning.

### Last Update Date: 07/01/05

↑ *Return to Top*

Home| HR News| Search| Site Map| Help| Feedback     ©2005 J.P. Morgan Chase and Co. All rights reserved.

EXHIBIT D

**JPMorganChase ◯**

Nevual Gogri   **JPM 33.580** ▲ 0.0  null
EDT

| Company Home | HR & Personal | Workplace Resources | Technology & Operations | Human Resources |

People Search [          ] Go

HR News        Help                              Site map    Search accessHR [          ]

**access HR**   Nevual Gogri  [ Sign Out ]

◯◯◯◯ ■Benefits ■Pay & Recognition ■Learning & Development ■Diversity ■Work–Life Solutions ■HR Policies ■Tools & Resources

**HR Policies> Disability Leave**

# Disability Leave

 Terms to Know

JPMorgan Chase'sDisability Leave Policy provides time off for employees when they have an illness or injury that continues for more than one workweek and up to 26 weeks. The policy also provides disability pay benefits in the form of full or partial pay for eligible employees.

For the purposes of this policy, the term, disability, is defined as a period of illness or injury that continues for eight or more consecutive calendar days, during which you are unable to perform all of the material and substantial duties of your position, on an active employment basis. You must be under the care of a licensed physician during this time and certified by JPMorgan Chase'sapplicable short-term disability benefits administrator for non-work-related illnesses or injuries or you must be certified as disabled by JPMorgan Chase'sWorkers' Compensation benefits administrator for work-related illnesses or injuries. Accordingly, you are not covered under this policy if the sole reason you cannot report to work is due to your inability to commute to the workplace. (If this is an issue that affects you, please see the Disability and Reasonable AccommodationPolicy.) Furthermore, this policy does not cover any disability that results from cosmetic surgeries, war (declared or undeclared, or any act of war), your active participation in a riot or your participation in a felony.

Details, including your rights to benefits under the program are contained in the documents governing its operations. To the extent a benefit is insured (e.g., state disability benefits in New York and New Jersey), the benefits under the program are governed by the Employee Retirement Income Security Act (ERISA), a federal law that regulates employee benefits. For these insured benefits, both the insurance policy and the related plan document are the governing documents.

- Maximum Disability Leave Duration
- Eligibility for Disability Pay Benefits
- Disability Pay Benefits Schedule
- Reporting a Disability Leave
- Filing a Claim for Disability Pay Benefits
- Ongoing Certification Process
- Medical Documentation
- Denied Claims
- Disability Leaves Exceeding 26 Weeks
- Recurrent Disabilities
- Multiple Disability Leaves
- Job Protection
- While You Are on a Disability Leave

**Maximum Disability Leave Duration**
All employees are eligible to take time off in accordance with the terms of this policy. Depending upon your employment classification and length of service, your disability leave may consist of paid and/or unpaid time off, as further described in the Eligibility for Disability Pay Benefits section of this policy. When you take a disability leave, your maximum disability leave duration, i. e., the maximum amount of disability leave time available to you for each disability leave you

accessHR: HR Policies - Disability Leave

take, is determined by your employment classification, as follows:

- If you are a full-time or part-time salaried employee who is actively at work when your disability leave begins, you are eligible to take up to 26 weeks of paid or unpaid disability leave.
- If you are a part-time hourly-paid employee who is actively at work when your disability leave begins, you are eligible to take up to 60 days of unpaid disability leave. While you are not eligible for disability pay benefits, you may be eligible for statutory benefits, i.e., state disability benefits if you work in a state that provides such benefits or Workers' Compensation benefits, if applicable.

↑ Return to Top

**Eligibility for Disability Pay Benefits**
If you are actively at work when your disability leave begins and you are either a full-time employee who has completed the Introductory Period or a part-time salaried employee who has completed two years of recognized service, you are eligible for disability pay benefits if you file your completed claim in a timely manner and it is approved by the appropriate benefits administrator.

If you are a rehired full-time or part-time salaried employee, please note that you must complete the Introductory Period following your rehire to be eligible for disability pay benefits, even if you have met the recognized service requirement.

Disability pay benefits (up to a maximum of 25 weeks within a calendar year) are based on your completed years of recognized service as of the beginning of your disability leave and the approved duration of the disability under the terms of the program. As described below, your disability leave includes a wait period before your disability pay benefits begin, in accordance with the terms of this policy.

*The First Week Of Your Disability Leave*
There is a one-week wait period, i.e., seven consecutive calendar days, for disability pay benefits. Please refer to the Applying Available Paid Time Off section of this policy for more information.

*Disability Pay Benefits*
Beginning on the eighth consecutive calendar day of your disability leave, you may be eligible to receive disability pay benefits at either 100% or 60% pay (up to a total of 25 weeks within a calendar year), in accordance with the Disability Pay Benefits Schedule below. (In certain instances, employees may receive disability pay benefits at a higher percentage of pay than 60%, in accordance with applicable statutory requirements.) Disability pay benefits are payable only if your claim is approved for short-term or Workers' Compensation benefits. The disability pay benefits that you receive during your approved disability period are offset by any statutory benefits, including, but not limited to, any state disability (e.g., in New York and New Jersey) or Workers' Compensation benefits for which you may be eligible. You are not eligible to receive more than 100% of your pay between any state disability or Workers' Compensation benefits and disability pay benefits you may be eligible to receive under this policy. Any combination of disability benefit payments exceeding 100% of your pay must be returned to the firm.

The number of weeks of disability pay benefits at 100% or 60% pay for which you may be eligible during a disability leave under this policy is determined by your completed years of recognized service as of the beginning of your disability leave and the number of weeks of disability pay benefits that you already have received within the calendar year in which your disability leave begins. If you are eligible for time off under the JPMorgan Chase and the Family and Medical Leave Act(FMLA) Policy and your disability leave qualifies under that policy, your disability leave and time off approved under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy run concurrent and count toward the maximum leave duration under the Disability Leave Policy, as well as toward the time off for which you are eligible under the JPMorgan Chaseand the Family and Medical Leave Act (FMLA) Policy

↑ Return to Top

**Disability Pay Benefits Schedule**

accessHR: HR Policies - Disability Leave

| Years of Recognized Service | Weeks at 100% Pay within a Calendar Year | Weeks at 60% Pay within a Calendar Year |
|---|---|---|
| Less than 1* | 0 | 25 |
| 1 – 2* | 4 | 21 |
| 3 – 4 | 7 | 18 |
| 5 – 6 | 10 | 15 |
| 7 – 9 | 13 | 12 |
| 10 – 19 | 16 | 9 |
| 20 or More | 25 | 0 |

*Full-time employees, including rehired employees, must complete the Introductory Period before the beginning of the disability leave to be eligible for disability pay benefits; part-time salaried employees must complete two years of recognized service before the beginning of the disability leave to be eligible for disability pay benefits. Rehired part-time salaried employees must complete the Introductory Period following rehire in order to be eligible to receive disability pay benefits, even if they previously satisfied the two-year service requirement.

▲ Return to Top

**Reporting a Disability Leave**
It is your responsibility to provide your manager with as much advance notification as possible if you believe that you will be absent due to an illness or injury that will continue for eight or more consecutive calendar days. Advance notification will enable your manager to make the necessary arrangements to cover your work during your absence and to report your request for disability leave to the accessHR Contact Center, between the first and eighth consecutive calendar day of your absence, through the Leaves and Terminations database which can be accessed via a link on the Manager Connection home page. Timely reporting of your disability leave ensures a timely determination of the disability pay benefits for which you may be eligible.

Note: If you believe that your illness or injury was sustained in the course of or arose out of work, you must immediately inform your manager, whether or not your illness or injury causes you to be absent, so that your manager can report any work-related illnesses or injuries directly to the appropriate Worker's Compensation vendor.

▲ Return to Top

**Filing a Claim for Disability Pay Benefits**
Upon learning of your disability leave from your manager, the accessHR Contact Center will send you a leave packet that includes disability claim forms and instructions for filing your disability claim to determine if you are eligible for disability pay benefits. You and your health care provider will be required to provide complete medical evidence to support your request for disability leave by sending the completed claim forms to the appropriate benefits administrator. Please note that any disability pay benefits for which you may be eligible will be suspended if you fail to provide the necessary medical information within the time frame required, i.e., within 15 calendar days. If you do not submit the required medical information and/or your claim is not approved within the subsequent time frame communicated to you, your claim will be denied and your employment may be terminated.

▲ Return to Top

**Ongoing Certification Process**
Based on the medical information supplied, the benefits administrator will determine your eligibility for disability pay benefits, including the duration of benefits. Payroll will be notified of the claim determination and you will be paid accordingly. If you continue to require leave, periodic updates of medical documentation will be required, at your expense. Disability pay benefits will be suspended and your employment may be terminated if you fail to provide the

necessary medical information when it is required.

↑ *Return to Top*

## Medical Documentation
Certain medical information will be requested of you and must be supplied at your own expense and in a timely manner, in order for your request for disability leave to be evaluated, both initially and on an ongoing basis. You will also be required to provide signed authorization for JPMorgan Chase'sbenefits administrator to obtain and release all reasonably necessary information which supports your disability pay benefits claim.

You should only provide your medical certification to the medical professionals who are responsible for reviewing your medical certification; it should not be provided to your manager, Human Resources Business Partner or anyone else. Any medical information that you submit to the firm's benefits administrators is treated as confidential and used only for appropriate purposes.

JPMorgan Chasereserves the right to have you examined by a licensed physician chosen by the firm, at the firm's expense, as often as reasonably necessary while your claim continues. Failure to comply with this examination may result in the denial, suspension or termination of any disability pay benefits provided under this policy, unless JPMorgan Chaseagrees you have a valid and acceptable reason for not complying.

↑ *Return to Top*

## Denied Claims
If the benefits administrator informs you that your claim for leave under this policy is denied and your time off is not designated as covered under the JPMorgan Chase and the Family and Medical Leave Act(FMLA) Policy by the FMLA Unit within JPMorgan Chase'sDisability Management Services Department, it is your responsibility to immediately contact your manager to determine whether your former position is available and whether you may return to it. If your position is no longer available, your employment will be terminated.

If your former position is available and your manager indicates that you are eligible to return to it, you will be expected to return to work immediately. If you are returned to your former position, any time off that was not approved by the benefits administrator and was not approved under the JPMorgan Chase and the Family and Medical Leave (FMLA) Policy will be considered as an unapproved absence and may affect your attendance record and can be used as a negative factor toward corrective action. Except when you are notified that your time off is covered under the JPMorgan Chase and the Family and Medical Leave Act(FMLA) Policy, if you do not contact your manager upon notification of denial of disability pay benefits or if you do not return to work as instructed by your manager, your employment will be terminated for failure to return from leave.

Whether or not you return to work, any overpayment of disability pay benefits will be recovered from you. At the time that the benefits administrator informs you of the denial of your request for disability leave, you will also be advised of any appeal process. If you appeal the denial of your request for disability leave and your appeal is successful, you will receive the disability pay benefits for which you are eligible.

↑ *Return to Top*

## Disability Leaves Exceeding 26 Weeks
In the event you continue to be disabled as defined within this policy after taking an approved 26-week disability leave under this policy, you may be eligible to receive long-term disability (LTD) benefits if you elected LTD benefits coverage, under the terms of JPMorgan Chase'sLTD benefit plan. If you are approved for LTD benefits, you will be placed on LTD status and paid the benefits for which you qualify under the terms of your LTD Plan coverage. If you did not elect LTD benefits coverage or if your claim for LTD benefits is denied, your employment is terminated, unless any of the following three exceptions apply to you:

- Your initial claim for LTD benefits is still being reviewed in which case your leave will be

accessHR: HR Policies - Disability Leave

extended on an unpaid basis until an initial LTD claim determination is made; or

- You have requested and have been approved for additional unpaid leave time under another JPMorgan Chase policy, such as the Disability and Reasonable AccommodationPolicy; or
- Other laws require an extension of your disability leave on an unpaid basis.

↟ Return to Top

## Recurrent Disabilities

If you return to active status from a disability leave under this policy and you take another disability leave under this policy for a medical condition related to or due to the same cause as your prior disability leave within 60 calendar days of returning to work, you will not have to complete another one-week wait period and your subsequent disability leave will be considered a continuation of your original disability period (even if the subsequent disability period occurs in a new calendar year), provided your successive leave is approved by the benefits administrator. The subsequent weeks of disability leave will resume being counted toward the maximum leave duration for which you are eligible, i.e., 26 weeks for salaried employees. If you are eligible for disability pay benefits, your benefits will resume at the appropriate rate, i.e., 100% or 60% of pay, based on your length of service as of the beginning of your original disability leave, up to the maximum of 25 weeks available to you within the calendar year in which your original disability period began. If you reach the maximum of 25 weeks of disability pay benefits within a calendar year, any further disability leave for which you may be eligible is provided an unpaid basis, provided your disability leave continues to be approved by the benefits administrator.

↟ Return to Top

## Multiple Disability Leaves

If you return from a leave under this policy and are in active status for more than 60 calendar days and you require another leave under this policy for a condition related to or due to the same medical condition as your prior leave or if you take another disability leave at any time after returning to active status for a different condition than your prior disability leave, your successive leave will be considered a new disability leave. Therefore, you will be required to complete another one-week wait period and your maximum disability leave duration, i.e., 26 weeks for salaried employees will begin anew. If you are eligible for disability pay benefits as determined by the benefits administrator, your benefits will resume at the appropriate rate, i.e., 100% or 60% of pay, based on your length of recognized service as of the beginning of your most recent disability leave, up to the maximum of 25 weeks within the calendar year in which your disability leave begins. If you reach the maximum of 25 weeks of disability pay benefits within a calendar year, any further disability leave for which you may be eligible is provided on an unpaid basis, provided your disability leave continues to be approved by the applicable benefits administrator.

↟ Return to Top

## Job Protection

If you are a full-time or part-time salaried employee with 12 or more months of recognized service when your disability leave under this policy begins, or a part-time hourly-paid employee with 12 or more months of recognized service when your disability leave under this policy begins who has worked 1,250 or more hours within the 12-month period immediately preceding your disability leave, your disability leave may be job protected to the extent it is covered under the JPMorgan Chase and the Family and Medical Leave Act(FMLA) Policy.

If your disability leave is approved by the appropriate benefits administrator or by the FMLA Unit within Disability Management Services and is job protected under the JPMorgan Chaseand the Family and Medical Leave Act (FMLA) Policy, you may return to the same job or an equivalent job. If you do not return to work on the date that you are released to return to work, your employment may be terminated due to your failure to return from leave, unless your continued absence was otherwise approved under another JPMorgan Chasepolicy, such as the Disability and Reasonable AccommodationPolicy.

If your disability leave under this policy is approved by the appropriate benefits administrator, but you are not eligible for job protection under the JPMorgan Chaseand the Family and Medical Leave Act (FMLA) Policy, you may return to your former job if it has not been filled. If your former job

has been filled, you are eligible to conduct a 60-day unpaid internal job search, provided you meet the Job Posting Program eligibility requirements. If you do not secure another position within the 60-day job search period or do not meet the Job Posting Program eligibility requirements, your employment with JPMorgan Chaseis terminated unless you are approved for additional time off under another JPMorgan Chasepolicy, such as the Disability and Reasonable AccommodationPolicy.

If you are provided with a job-search period, you may continue many of the benefits you elected provided you make the necessary contributions. Benefits which do not continue while you are on a job-search include Business Travel Accident, Transportation Spending Accounts, Child/Elder Care Spending Account and Long-term Disability (LTD).

If you are a part-time hourly-paid employee with less than 12 months of recognized service when your disability leave under this policy begins and you have not worked 1,250 hours within the 12-month period immediately preceding the disability leave, you are not eligible for job protection under the JPMorgan Chaseand the Family and Medical Leave Act (FMLA) Policy and, therefore, during your disability leave. If you return to work within 60 days of having begun a disability leave under this policy, you may, however, return to your former position if it is still available. Otherwise, you are eligible to conduct a 60-day unpaid internal job search, provided you meet the Job Posting Program eligibility requirements. If you do not secure another position within the 60-day job search period or do not meet the Job Posting Program eligibility requirements, your employment with JPMorgan Chaseis terminated.

The approval of your disability leave under this policy, either with or without job protection, does not restrict the firm's right to eliminate positions in connection with staff reductions or other business reasons. If your position is eliminated during your approved disability leave, your termination date typically will be deferred until your disability leave has ended.

⬆ Return to Top

## While You Are on a Disability Leave

*Holidays*
You are not paid for holidays while you are receiving disability pay benefits at 60% pay or while you are on an unpaid disability leave. In addition, you do not earn floating holidays for holidays that occur while you are on a disability leave, unless the holiday occurs during the first week of a disability leave covered under the Disability Leave Policy.

*Applying Available Paid Time Off*
If your disability leave is due to a non-work related illness or injury, you must apply any earned and unused sick time during the one-week wait period for disability pay benefits, as well as during an unpaid disability leave that is approved by the applicable disability administrator or by the FMLA Unit of Disability Management Services. If your earned and unused sick time is exhausted, you must apply earned and unused personal days and floating holidays, if applicable, as well as any accrued and unused vacation. In addition, at your request, JPMorgan Chasewill advance you unaccrued vacation time for the calendar year in which your leave begins for use during your one-week wait period or unpaid disability leave. However, you will be required to reimburse JPMorgan Chasefor any unaccrued vacation time for which you are paid if your employment terminates prior to the date you otherwise would have accrued such vacation time. The paid days you apply to your leave may not exceed the number of unpaid days you are taking. For example, you may not apply three weeks of unused vacation to a two-week unpaid disability leave.

If your disability leave is due to a work-related illness or injury, you may, but are not required to, apply any of your available paid time off during the one-week wait period for disability pay benefits or an unpaid disability leave that is approved by the Workers' Compensation administrator or by the FMLA Unit of Disability Management Services. You may also choose not to receive the disability pay benefits described in this policy. If you choose to use your available paid time off and/or to receive disability pay benefits, your available paid time off and/or disability pay benefits will be offset by any Workers' Compensation benefits for which you may be eligible, unless prohibited by state law. In other words, you are not eligible to receive more than 100% of your pay between Workers' Compensation benefits and your available paid time off and/or disability pay benefits. Disability pay benefits and other available paid time off are paid on the

express condition that you will return to the firm any combination of disability pay benefits and/or paid time off and Workers' Compensation benefit payments exceeding 100% of your pay.

You may not apply any of your available paid time off if your pay is suspended because you have not provided medical information to support your request for leave in a timely manner or if your benefits claim is denied and your time off is not approved under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy. You also may not apply any of your available paid time off while you are receiving disability pay benefits, including benefits that are provided on a partial pay basis.

*Benefits Coverage During Your Disability Leave*
While you are on a disability leave under this policy you may continue many of the benefits you elected provided you make the necessary contributions. Benefits which do not continue while you are on disability leave include Business Travel Accident and Transportation Spending Accounts. In addition, if your leave is unpaid, you cannot continue the Child/Elder Care Spending Account. Benefits coverage may also cease after appropriate notification from JPMorgan Chaseif you do not make the necessary contributions. You may resume your benefits coverage when you return to work.

*Timing of Your Salary Review*
If your salary review date occurs during your disability leave, your salary will be reviewed at that time. Any salary increase for which you may be eligible will be effective on the regularly scheduled date.

*Corrective Action*
If you did not provide advance notification of your disability leave, your absence may affect your attendance record and can be used as a negative factor toward corrective action, unless your absence is approved under the JPMorgan Chase and the Family and Medical Leave Act(FMLA) Policy or Disability and Reasonable AccommodationPolicy or related to an approved Workers' Compensation claim.

If you were within the corrective action restrictions period before you began your disability leave, the balance of the restrictions period resumes when you return to work if you are eligible to return to your former position. If your former position has been filled, you are not eligible to conduct an unpaid internal job search and your employment is terminated.

*Returning to Work*
At least two days before your scheduled return to work, you must inform your manager of your intent to return to work. You must also provide the applicable benefits administrator with a statement from your health care provider verifying that you are able to return to work. Your manager can then notify the *access*HR Contact Center as soon as you have actually returned so that you are reactivated on the payroll system.

*Termination of Employment*
During any leave approved under this policy, your employment remains subject to the Employment at Will Policy. Please note that your employment may be terminated if it is determined that you, either before or during your leave, committed a material violation of the firm's Code of Conduct or a major violation of any JPMorgan Chasepolicies. Falsification or unauthorized alteration of any documentation submitted under this policy will be considered to be a violation of JPMorgan Chasepolicy and will result in the immediate termination of employment as well as the termination of any benefits under this policy.

**Last Update Date: 07/01/05**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -    X    Via ECF

DONNA FEHN,

                     Plaintiff,

      -against-

GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF JP MORGAN CHASE BANK, JP
MORGAN CHASE BANK, as Plan Administrator,
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY, as Administrator/Fiduciary of the Plan, KRISTA
DUDECK, Individually, DANIEL BERTA, Individually,
KARA MORETT, Individually, and DESMOND "Doe,"
Individually,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -    X

07 CIV. 8321 (WCC)

AFFIDAVIT OF SERVICE

**STATE OF NEW YORK**     )
                       ) ss.:
**COUNTY OF NEW YORK**    )

      STUART RAQ·SU being duly sworn, deposes and says, that deponent is not a party to the action, is over eighteen years of age and is employed by JPMorgan Chase Bank, N.A.

      That on the 4th day of March, 2008 deponent served the within:

AFFIDAVIT OF DEBORAH L. SILVERMAN
**JPMORGAN DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS JPMORGAN CHASE BANK, N.A.'S
COUNTERCLAIM AND FOR LEAVE TO AMEND THE COMPLAINT**

To:   Danie T. Driesen, Esq.
      **Sapir & Frumkin LLP**
      Attorneys for Plaintiff
      399 Knollwood Road, Suite 310
      White Plains, New York 10603
      DDriesen@sapirfrumkin.com

      Michael Bernstein, Esq.
      **Sedgwick, Detert, Moran & Arnold, LLP**
      Attorneys for Defendant Hartford
      125 Broad Street, 39th Floor
      New York, New York 10004-2400
      Michael.Bernstein@sdma.com

by the address designated for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Sworn to before me this
17th day of March, 2008

_Vivian Patricia Falcon_
Notary Public

VIVIAN PATRICIA FALCONI
Notary Public, State of New York
No. 41-4635878
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Aug 31, 20 09

163621:v1