1 of 1 DOCUMENT

**EDWARD KREINIK, Plaintiff, -against- SHOWBRAN PHOTO, INC., et al, Defendants.**

**02 Civ. 1172(RMB)(DF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2003 U.S. Dist. LEXIS 18276**

**October 10, 2003, Decided**
**October 14, 2003, Filed**

**SUBSEQUENT HISTORY:** Judgment entered by *Kreinik v. Showbran Photo, Inc., 2005 U.S. Dist. LEXIS 27779 (S.D.N.Y., Nov. 9, 2005)*

**DISPOSITION:**   [*1]  Plaintiff's motion to *amend First* Amended Complaint was granted.

**COUNSEL:** For Edward Kreinik, PLAINTIFF: Anne L Clark, Vladeck, Waldman, Elias & Engelhard, PC, New York, NY USA.

For Showbran Photo, Inc, DEFENDANT: James Felix, Kilhenny & Felix, New York, NY USA.

**JUDGES:** DEBRA FREEMAN, United States Magistrate Judge.

**OPINION BY:** Debra Freeman

**OPINION**

   **MEMORANDUM AND ORDER**

   **DEBRA FREEMAN, United States Magistrate Judge:**

**INTRODUCTION**

   Plaintiff Edward Kreinik ("Kreinik") has moved pursuant to *Rule 15(a) of the Federal Rules of Civil Procedure* to amend his First Amended Complaint to add two new claims alleging that defendants' assertion of counterclaims in this action constitutes unlawful retaliation under (1) Section 510 of the Employee Retirement Income Security Act, *29 U.S.C. § 1001, et. seq.* ("ERISA"), and (2) *Section 215 of the New York State Labor Law* also to add new factual allegations in support of claims previously asserted. Defendants Showbran Photo, Inc., Showbran, Inc., Showbran, Inc. 401(K) Plan, and Showbran Photo, Inc. Atlantis Health Plan (collectively "Showbran"), oppose Kreinik's motion [*2]  to the extent that Kreinik seeks to add new claims, on the ground that such amendments would be futile. For the reasons stated below, Kreinik's motion to amend is granted in its entirety.

**BACKGROUND**

   On February 13, 2002, Kreinik filed a complaint against his former employer, Showbran Photo, Inc., seeking to enforce his rights under the terms of two employee benefit plans, [1] and also claiming, *inter alia,* that he was entitled to payment of unpaid commissions. In that initial pleading, Kreinik sought both damages and equitable relief under ERISA, the *New York Labor Law § 190, et seq.,* and state common law. (Complaint dated Feb. 13, 2002 (Dkt. 1), PP 1-2.) Defendant Showbran Photo Inc., filed an Answer to the Complaint on March 26, 2002 (Dkt. 4), but asserted no counterclaims at that time.

   1   The benefits plans at issue are: (1) a 401(K) Plan, which is a pension and welfare benefit plan available to Showbran employees administered by Showbran, Inc.; and (2) the Showbran Photo, Inc. Atlantis Health Plan, an additional welfare benefit plan provided to employees;, (First Amended

Complaint dated June 14, 2002 ("First Am. Compl.") (Dkt. 14), PP 7-10.)

**[*3]** On June 14, 2002, after receiving documents regarding Showbran Photo, Inc.'s, benefit plans, Kreinik filed his First Amended Complaint, adding as defendants certain parties responsible for the plans at issue. (First Am. Compl.; Affidavit of Anne Clark sworn to Nov. 14, 2002 ("Clark Aff.") (Dkt. 22), PP 5, 8.) On July 16, 2002, Showbran answered the First Amended Complaint, asserting seven counterclaims against Kreinik demanding monetary and injunctive relief for: (1) trade name infringement, unfair competition, and misappropriation under New York State common law; (2) violations of *New York Business Law §§ 368-d, 133, and 349*; (3) tortious interference with actual business relations; (4) tortious interference with prospective business relations; (5) misappropriation of proprietary information; (6) breach of contract; and (7) breach of implied covenants of good faith and fair dealing. (Answer to Amended Complaint dated July 16, 2002 (Dkt. 15), PP 61-126.) The counterclaims are based on events that allegedly occurred during, as well as subsequent to, the time Showbran Photo, Inc., employed Kreinik. On August 7, 2002, Kreinik answered the counterclaims, asserting, as affirmative defenses, **[*4]** that the counterclaims constituted retaliation for his claims, in violation of ERISA and the Labor Law. (Answer to Defendants' Counterclaims dated Aug. 7, 2002 (Dkt. 17), PP 135-36.)

On November 14, 2002, Kreinik moved to amend the First Amended Complaint to add new claims charging that Showbran's counterclaims had been asserted unlawfully, in retaliation for Kreinik's assertion of his rights, under ERISA and the Labor Law. (Proposed Second Amended Complaint dated Nov. 14, 2002 ("Proposed Second Am. Compl."), PP 57-62.) According to Kreinik, the retaliation claims pleaded in his Proposed Second Amended Complaint are supported by law, and permitting them at this juncture would not cause undue prejudice or delay. (Plaintiff's Memorandum of Law in Support of his Motion for Leave to Amend the Complaint ("Plaintiff's Mem.") (Dkt. 21), dated Nov. 14, 2002, at 1.) Showbran, however, argues that the new retaliation claims do not satisfy the elements of a *prima facie* case under ERISA or New York Labor Law, and that the proposed amendments should therefore be denied as futile. (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend ("Opp. Mem."), dated Dec. 11, 2002, at **[*5]** 2, 4.) Showbran adds that allowing the amendments would cause undue delay and prejudice, although it argues that the Court need not reach those issues because of the purported futility of the amendments. (Opp. Mem. at 2.)

Kreinik also seeks to amend the factual allegations asserted in paragraphs 12, 14 and 26 of the First Amended Complaint, to conform those paragraphs to deposition testimony. (Plaintiff's Mem. at 1.) Showbran does not oppose these proposed factual amendments. (Opp. Mem. at 11.)

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

Because Kreinik already amended his Complaint once as a matter of right, he must obtain leave of the Court for any further amendment. *Fed. R. Civ. P. 15(a)*. Although leave to amend "shall be freely given when justice so requires," *Fed. R. Civ. P. 15(a)*, a motion to amend should be denied for reasons "'such as undue delay, bad faith or dilatory motive ..., undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel,"162 F.3d 63, 69 (2d Cir. 1998)* **[*6]** (quoting *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)* (interpreting *Fed. R. Civ. P. 15(a)*); *Randolph Found. v. Duncan, 2002 U.S. Dist. LEXIS 362, No. 00 Civ. 6445, 2002 WL 32862, at *1 (S.D.N.Y. Jan. 1, 2002)*. The Court has broad discretion in determining whether to grant a motion to amend. *Local 802, Associated Musicians of Greater New York v. Parker-Meridian Hotel, 145 F.3d 85, 89 (2d Cir. 1998)*.

Where a party opposes a motion to amend a complaint based on futility, the proposed pleading may be reviewed for adequacy. *Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)*. The amendment will be deemed futile, and the motion to amend denied, where the amendment would be subject to "immediate dismissal" for failure to state a claim upon which relief can be granted, or would be subject to dismissal on some other basis. *Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 55 (2d Cir. 1999)*; *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Dev. Fund Co., 608 F.2d 28, 42 (2d Cir. 1979)*; see *Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d. Cir. 1993)* **[*7]** (upholding denial of motion where "granting leave to amend is unlikely to be productive");

*Whimsicality, Inc. Battat*, 27 F. Supp. 2d 456, 465 (S.D.N.Y. 1998) (denying the motion where proposed claim would fail in any event). If, however, there are "'at least colorable grounds for relief, justice ... requires'" that the motion to amend be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (quoting *S.S. Silberblatt*, 608 F.2d at 42); *Schwimmer v. Guardian Life Ins. Co.*, 1996 U.S. Dist. LEXIS 3853, No. 93 Civ. 0428, 1996 WL 146004, at *3 (S.D.N.Y. Apr. 1) (allowing amendment where "it is not so frivolous or outlandish to render it futile"), *aff'd*, 104 F.3d 354 (2d Cir. 1996); *Weg v. Macchiarola*, 729 F. Supp. 328, 341 (S.D.N.Y. 1990) (motion should be granted unless amendment is frivolous or facially insufficient).

Determining whether the amendment states "colorable grounds for relief" mandates an inquiry into the sufficiency of the proposed pleading comparable to that required by *Fed. R. Civ. P. 12(b)(6)*. *Barrett v. United States Banknote Corp.*, 806 F. Supp. 1094, 1098 (S.D.N.Y. 1992); **[*8]** *CBS, Inc. v. Ahern*, 108 F.R.D. 14, 18 (S.D.N.Y. 1985). Thus, as both parties acknowledge (*see* Plaintiff's Mem. at 6; Opp Mem. at 2), the standard for evaluating Showbran's opposition to the amendment, on the ground that it would be futile, requires the Court to examine whether Kreinik's proposed retaliation claims could withstand a *Rule 12(b)(6)* motion to dismiss. *See Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern *Rule 12(b)(6)* motion to dismiss."); *Finley v. Simonovitch*, 1997 U.S. Dist. LEXIS 19100, No. 97 Civ. 1455, 1997 WL 746460, at * 4 (S.D.N.Y. Dec. 2, 1997) (citing cases).

A *Rule 12(b)(6)* motion is decided solely on the pleadings. *See, e.g., Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *CBS, Inc.*, 108 F.R.D. at 18. The Court must accept all factual allegations in the complaint as true and "draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 268, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994)); **[*9]** *see Rotter v. Leahy*, 93 F. Supp. 2d 487, 497 (S.D.N.Y. 2000) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)). A claim may not be dismissed under *Rule 12(b)(6)* unless "'it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). The task of the Court is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Connell v. City of New York*, 2002 U.S. Dist. LEXIS 215, No. 00 Civ. 6306, 2002 WL 22033, at *2 (S.D.N.Y. Jan. 8, 2002) (quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)); *Coffey v. Cushman & Wakefield, Inc.*, 2002 U.S. Dist. LEXIS 13226, No. 01 Civ. 9447, 2002 WL 1610913, at * 1 (S.D.N.Y. July 22, 2002). These standards will be applied to Kreinik's proposed amended claims of retaliation under ERISA and New York Labor Law to determine whether his motion should be granted.

**II.   KREINIK'S PROPOSED [*10] RETALIATION CLAIM UNDER ERISA**

*Section 510 of ERISA* makes it unlawful for an employer to retaliate against an employee for, *inter alia,* "exercising any right to which [the employee] is entitled under the provisions of an employee benefit plan ...." *29 U.S.C. § 1140*. To prove unlawful retaliation for the assertion of rights under ERISA, the employee must establish that the employer's action was at least partially motivated by the specific intent to engage in the prohibited retaliatory conduct. [2] *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988). Because direct evidence of intent is often scarce or non-existent in this context, the Court evaluates retaliation claims under *Section 510 of ERISA* using the same analytical framework applied to similar claims under *Title VII of the Civil Rights Act of 1964* ("Title VII") and other civil rights statutes, where direct evidence of discriminatory intent is often equally unavailable. *Id. at 1112*. [3] Thus, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), **[*11]** which allows a plaintiff to prevail with indirect proof of intent, applies to claims brought pursuant to *Section 510 of ERISA*. *Id.*

> 2   It is not necessary that retaliation for the protected activity was the sole cause of the adverse action, but only that the retaliatory motive played "a part" in the motivation behind that action. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980); *Titch v. Reliance Group, Inc.*, 548 F. Supp. 983, 985 (S.D.N.Y. 1982), *aff'd*, 742 F.2d 1441 (2d Cir. 1983).

    3    The courts have frequently relied on interpretations of the anti-retaliatory provisions in federal labor statutes interchangeably, given that such provisions in Title VII, the *Americans with Disabilities Act* ("ADA"), the *Age Discrimination in Employment Act* ("ADEA"), the *National Labor Relations Act* ("NLRA"), the *Fair Labor Standards Act* ("FLSA"), and ERISA are modeled on one another or are similarly worded, thus assuming parallel congressional intent with respect to meaning. *See, e.g., Robinson v. Shell, 519 U.S. 337, 346, 136 L. Ed. 2d 808, 117 S. Ct. 843 (1997)* (noting that the NLRA, FLSA and Title VII all share a "primary purpose" of "maintaining unfettered access to statutory remedial mechanisms"); *Passer v. Am. Chem. Soc'y, 290 U.S. App. D.C. 156, 935 F.2d 322, 330 (D.C. Cir. 1991)* (comparing parallel retaliation provisions in the ADEA and Title VII and noting that "cases interpreting the latter are frequently relied upon in interpreting the former"); *Patterson v. McCarron, 2001 U.S. Dist. LEXIS 19099, No. 99 Civ. 11078, 2001 WL 1488122, at *3 (S.D.N.Y. Nov. 21, 2001)* (employing Title VII analysis in ERISA retaliation case).

[*12] Under this framework, Kreinik would first have to establish a *prima facie* case of retaliation by showing that: (1) he was engaged in a protected activity; (2) Showbran was aware of Kreinik's participation in the protected activity; (3) Showbran took adverse employment action against Kreinik; and (4) a causal connection existed between the protected activity and the adverse action. [4] *See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)*; *Patterson v. McCarron, 2001 U.S. Dist. LEXIS 19099, No. 99 Civ. 11078, 2001 WL 1488122, at *3 (S.D.N.Y. Nov. 21, 2001)*. Kreinik's claim of retaliation will survive a motion to dismiss if, after construing all reasonable inferences and implications of the allegations in the complaint liberally in his favor, the Court determines that he has pleaded facts sufficient to support the elements of a *prima facie* case, as set out above. *See Coffey, 2002 U.S. Dist. LEXIS 13226, 2002 WL 1610913, at *4-5*; *Mendelsohn v. Univ. Hosp., 178 F. Supp. 2d 323, 329 (E.D.N.Y. 2002)*; *Connell, 2002 U.S. Dist. LEXIS 215, 2002 WL 22033, at *4*; *E.E.O.C. v. Die Fliedermaus, 77 F. Supp. 2d 460, 471-72 (S.D.N.Y. 1999)*.

    4    Neither party disputes that this is the appropriate test for establishing a *prima facie* case, although Kreinik articulates the test in an alternative manner that combines the first two elements, requiring him to have been "engaged in a protected activity known to defendants." (Plaintiff's Reply Memorandum of Law in Support of his Motion for Leave to Amend the Complaint dated Dec. 18, 2002 ("Reply Mem.") (Dkt. 23), at 2); *see, e.g., Quinn v. Green Tree Credit, 159 F.3d 759, 769 (2d Cir. 1998)* (identifying three elements of *prima facie* case).

[*13] If a plaintiff's retaliation claim survives the pleading stage, then, either at trial or on a motion based on the evidence, the plaintiff would have to prove its *prima facie* case, the defendant would then need to articulate a legitimate reason for its allegedly retaliatory conduct, and the plaintiff would ultimately bear the burden of demonstrating that the stated reason was pretextual. *See Dister, 859 F.2d at 1115*; *Patterson, 2001 U.S. Dist. LEXIS 19099, 2001 WL 1488122, at *3*; *see also Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 444-45 (2d Cir. 1999)* (on summary judgment motion, parties must meet their burdens under the complete burden-shifting analysis); *Cosgrove v. Federal Home Loan Bank, 1999 U.S. Dist. LEXIS 7420, 1999 WL 163218, at *23* (same); *Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995)* (same).

At this stage, the Court need not look beyond the question of whether Kreinik has sufficiently pleaded facts which identify and support a *prima facie* case of retaliation *See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002)* (to survive a motion to dismiss, an employment discrimination complaint [*14] need not specifically establish every fact proving a *prima facie* case under the *McDonnell-Douglas* framework, as long as the complaint gives defendant fair notice of the claim and on what grounds it is based as required by the federal pleading rules); *Coffey, 2002 U.S. Dist. LEXIS 13226, 2002 WL 1610913, at *5* (complaint alleging retaliation under the ADEA was sufficient to withstand a motion to dismiss, where defendant was placed on notice of the nature and basis of the claim). This, therefore, is the question to which both parties have addressed their arguments. (Reply Mem. at 2-7; Opp. Mem. at 4-7.)

**A. The First and Second Elements of a *Prima Facie* Case:**

**Kreinik's Protected Activity and Showbran's Awareness of that Activity**

Showbran does not dispute that Kreinik's proposed ERISA retaliation claim, as pleaded, would satisfy the first and second elements of a *prima facie* case. (Opp. Mem. at 4.) With respect to the first element, Kreinik's attempt to assert his right to employee benefits under the statute plainly constitutes a protected activity against which interference is prohibited. *See 29 U.S.C. § 1140.* More specifically, ERISA expressly [*15] empowers individuals to enforce their rights under the terms of their employee benefit plans by bringing civil actions. *29 U.S.C. § 1132(a)(1)(A).*

As to the second element, there is no question that Showbran was fully aware of Kreinik's involvement in a protected activity, given that Showbran has appeared in and defended this suit. (Opp. Mem. at 4.)

**B. The Third Element of a *Prima Facie* Case:**

**Showbran's Alleged Adverse Action Against Kreinik**

Showbran does challenge Kreinik's ability to demonstrate that counterclaims, asserted after the termination of a plaintiff's employment, can constitute the type of "adverse employment action" required to meet the third element of a *prima facie* case of retaliation. (Opp. Mem. at 4.) In evaluating Kreinik's argument on this point, the first inquiry is whether *former* employees can be protected under ERISA against retaliatory action by their *former* employers. *See, e.g., Straus v. Prudential Employment Sav. Plan, 253 F. Supp. 2d 438, 447-48 (E.D.N.Y. 2003)* (analyzing whether non-employee beneficiaries are entitled to *Section 510* protection). The second inquiry is whether the challenged [*16] action can be considered "adverse" in relation to the plaintiff's employment. *See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997)* (noting that "because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse'"); *see also Ginsberg v. Valhalla Anesthesia Assocs., P.C., 971 F. Supp. 144, 148-49 (S.D.N.Y. 1997)* (analyzing the extent to which the alleged retaliatory conduct had some impact on plaintiff's employment or prospective employment); *Yankelevitz v. Cornell Univ., 1996 U.S. Dist. LEXIS 11298, No. 95 Civ. 4593, 1996 WL 447749, at *5 (S.D.N.Y. Aug. 7, 1996)* (discussing whether the adverse action was related to the "terms, privileges, duration, or conditions of the plaintiff's employment").

**1. ERISA's Coverage of Former Employees**

Although the law is not well-settled as to whether "post-employment" retaliation is actionable under *Section 510 of ERISA, the Supreme Court* has articulated a broad rationale behind anti-retaliation provisions in federal labor statutes, stating that the primary purpose of such provisions is to maintain "unfettered access [*17] to statutory remedial mechanisms." *Robinson v. Shell Oil Co., 519 U.S. 337, 346, 136 L. Ed. 2d 808, 117 S. Ct. 843 (1997).* In *Robinson,* the Court noted that the exclusion of former employees from the protection of Title VII's retaliatory provisions would undermine the effectiveness of that statute by allowing the threat of post-employment retaliation to deter victims of discrimination from complaining and by providing "a perverse incentive for employers to fire employees who might bring ... claims." *Id.* The Court therefore reasoned that the best approach would be to include former employees within the scope of protected "employees." *Id. at 345*.

This reasoning, combined with the case law in this circuit as it has developed with respect to this issue in various statutory contexts, supports Kreinik's position that *Section 510* should be read to cover post-employment retaliation. *See, e.g., Silver v. Mohasco Corp., 602 F.2d 1083, 1090 (2d Cir. 1979)* (post-employment blacklisting falls within the scope of retaliatory provisions of Title VII), *rev'd on other grounds, 447 U.S. 807, 814 n.17 (1980)*; *Pantchenko v. C.B. Dolge Co., Inc., 581 F.2d 1052, 1055 (2d Cir. 1978)* [*18] (finding that Title VII "prohibits discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct"); *Straus, 253 F. Supp. 2d at 447-48* (noting that while the Second Circuit hasn't spoken squarely on this issue, "it seems only logical that former employees and beneficiaries, who in many instances have as strong an interest in the pension rights as their employee counterparts, receive some protection from alienation of those rights under *§ 510 of ERISA*"); *Patel v. Lutheran Med. Ctr., 753 F. Supp. 1070, 1073 (S.D.N.Y. 1991)* (noting that a claim for retaliation under the ADEA is cognizable even where the employment relationship had been terminated before the alleged adverse action occurred).

Further, the text of *Section 510* itself suggests that

post-employment retaliation is actionable under the statute. *See Straus, 253 F. Supp. 2d at 447-48* (accepting the textual argument that protection under *Section 510* includes former employees and beneficiaries); *see also Mattei v. Mattei, 126 F.3d 794, 801 (6th Cir. 1997)* **[*19]** (*Section 510* specifically covers "participants" and "beneficiaries," which are defined as including both employees and former employees); *Choi v. Mass. Gen. Physicians Org., 66 F. Supp. 2d 251, 254 (D. Mass. 1999)* (for the purposes of retaliation claims under *Section 510 of ERISA*, an adverse employment action need not relate to a current employer-employee relationship because the statute specifically protects "participants," which includes former employees).

For these reasons, the Court concludes that Kreinik's proposed retaliation claim under ERISA is not barred merely because he no longer had an employment relationship with Showbran at the time the counterclaims were asserted.

### 2. The Adverse Effect of the Counterclaims

The next question is whether Showbran's counterclaims, by their nature, can constitute an "adverse employment action." On this point, Kreinik argues that his proposed claim is sufficient because the allegations made in the counterclaims may have the effect of marring his reputation as a businessman and jeopardizing his future business relations. (Plaintiff's Reply Mem. at 4-6.) Showbran argues that the allegations fail to assert an adverse **[*20]** employment action because the alleged retaliation lacks any "nexus" to Kreinik's employment. (Opp. Mem at 5.)

Although an adverse employment action is generally one that affects the terms, privileges, duration, or conditions of a plaintiff's employment, reprisals less flagrant than job termination or reduced wages can constitute adverse employment actions that warrant statutory protection. *Wanamaker, 108 F.3d at 466*; *Yankelevitz, 1996 U.S. Dist. LEXIS 11298, 1996 WL 447749, at *5* (claims of retaliation are not limited "'only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion'") (quoting *Passer v. Am. Chem. Soc., 290 U.S. App. D.C. 156, 935 F.2d 322, 331 (D.C. Cir. 1991)*); *Dortz v. New York, 904 F. Supp. 127, 156 (S.D.N.Y. 1995)*. Indeed, retaliatory actions injurious to a plaintiff's ability to secure future employment are actionable. *See, e.g., Wanamaker, 108 F.3d at 466* (a retaliation claim could be maintained where a former employer sullies a plaintiff's reputation, thereby affecting "tangible *future* employment objectives") (emphasis in original); *see also* **[*21]** *Silver, 602 F.2d at 1090* (finding that post-employment blacklisting falls within the scope of retaliatory provisions of Title VII); *Pantchenko, 581 F.2d at 1055* (finding that a refusal to provide an employee with an employment reference, allegedly in retaliation for filing a claim against the employer, constituted an adverse employment action); *Gonzalez v. Police Comm'r Bratton, 147 F. Supp. 2d 180, 196 (S.D.N.Y. 2001)* ("Retaliatory conduct that would naturally create major obstacles for a former employee in obtaining employment in her field ... is actionable under [Title VII]."), *aff'd, 48 Fed. Appx. 363, No. 01 Civ. 7826, 2002 WL 31317871 (2d Cir. Oct. 16, 2002)*; *E.E.O.C. v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999)* (finding that public distribution of derogatory flyers in response to the filing of a charge with the E.E.O.C. constituted retaliation under Title VII where the flyers could affect plaintiffs' ability to find jobs).

Specifically, with regard to allegedly retaliatory counterclaims, this Court has expressly refused "to adopt a rule stating that ... counterclaims, or any other legal **[*22]** cause of action, cannot, as a matter of law, constitute retaliation in violation of the employment discrimination laws." *Yankelevitz, 1996 U.S. Dist. LEXIS 11298, 1996 WL 447749, at *4*. The plaintiff in *Yankelevitz* was a doctor, and the defendant's counterclaim was based on the plaintiff's alleged failure to conform with professional practice procedures. *Id.* The court found that the counterclaim at issue was actionable because it "shed a negative light on plaintiff's professionalism and ethics ... marred plaintiff's professional reputation ... [and] could have an adverse impact on plaintiff's employment prospects." *1996 U.S. Dist. LEXIS 11298, [WL] at *5*.

For a counterclaim to be actionable as retaliatory, however, it must, as in *Yankelevitz,* have "some impact on [the] plaintiff's employment or prospective employment." *Ginsberg, 971 F. Supp. at 148* (finding that a doctor had not stated a claim for retaliation based on the assertion of a breach-of-contract counterclaim that did not reflect negatively on her ethical or professional reputation); *see also Jetter v. Knothe Corp., 200 F. Supp. 2d 254, 267 (S.D.N.Y. 2002)* (plaintiff failed to demonstrate that his former employer's **[*23]** communication to clients of plaintiff's retirement rose to

the level of adverse), *aff'd, 324 F.3d 73 (2d Cir. 2003)*; *Patel, 753 F. Supp. at 1074* (former employer's alleged tortious interference was not an adverse employment action because, where the employee had not worked for the employer for two years and was not even undertaking to find a new job when the alleged act occurred, the challenged action did not impact on the employee's attempt to secure future employment). Thus, for Kreinik's proposed retaliation claim to withstand a motion to dismiss, the claim as pleaded must sufficiently suggest that Showbran's counterclaims could have a direct, adverse impact on Kreinik's present employment or future employment prospects.

In this case, Showbran's counterclaims allege that Kreinik engaged in trade name infringement, unfair competition, and misappropriation under state common law; violations of *New York Business Law §§ 368-d, 133, and 349*; tortious interference with actual business relations; tortious interference with prospective business relations; misappropriation of proprietary information; breach of contract; and breach of implied covenants of **[*24]** good faith and fair dealing. (Answer to Amended Complaint, PP 61-126.) These counterclaims go beyond what Showbran characterizes as "simple breach of contract and related claims." (Opp. Mem. at 6.) The counterclaims challenge Kreinik's ability to compete fairly and to exhibit good faith in his business relationships. Accepting all factual allegations in the Proposed Second Amended Complaint as true and drawing all inferences in the light most favorable to Kreinik, it is reasonable to assume that Showbran's counterclaims could impact on Kreinik's personal and professional reputation and on his ongoing efforts to create and maintain his own business. (Proposed Second Am. Compl. PP 28, 57-59.) Furthermore, Kreinik is apparently seeking to compete with Showbran and to share the same clientele. (Plaintiff's Reply Mem. at 4.) In these circumstances, the ancillary consequences of litigation, such as the potential need for customers to testify, could have a detrimental effect on Kreinik's future business relationships.

Even if, as Showbran argues, the likelihood is not great that the counterclaims will have an actual, adverse effect on Kreinik's business, the apparent potential for an adverse **[*25]** impact to his livelihood is sufficient for the retaliation claim to survive at the pleading stage. *See, e.g., Mendelsohn, 178 F. Supp. 2d at 329* (finding that a description of the employment duties that diminished after filing a complaint under Title VII was sufficient to plead an adverse employment action); *Connell, 2002 U.S. Dist. LEXIS 215, 2002 WL 22033, at *4* (the allegation that pension board members "commenced actions to arbitrarily deprive [plaintiff] of a [pension], as retribution for seeking complaints against their peers," sufficiently alleged a *prima facie* case of retaliation to withstand a motion to dismiss); *Coffey, 2002 U.S. Dist. LEXIS 13226, 2002 WL 1610913, at *4-5* (despite the fact that plaintiff did not specify what the adverse action was, the allegations in the complaint sufficiently placed the defendant on notice of the nature and basis of the retaliation claim); *Die Fliedermaus, 77 F. Supp. 2d at 471-72* (adverse employment action identified where plaintiffs alleged that defendants had publicly distributed derogatory flyers about employees who had filed of charges of discrimination).

The Court therefore concludes that Kreinik's proposed allegations **[*26]** are sufficient, for pleading purposes, to satisfy the third element of a *prima facie* case of retaliation under ERISA.

### C. The Fourth Element of a *Prima Facie* Case:

### Causal Connection Between the Protected Activity and the Adverse Action

Finally, the "causal connection" between (a) Kreinik's assertions of his rights through the commencement of this suit, and (b) the challenged counterclaims, can be inferred from the circumstances of the case. In the Title VII context, the Second Circuit has held that evidence of a causal connection between a protected activity and an adverse employment action may be established indirectly, by showing that the adverse action or discriminatory treatment occurred shortly following the protected activity. *See Davis v. State Univ. of New York, 802 F.2d 638, 642 (2d Cir. 1986)*; *see also, e.g., Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)* (finding a casual connection between the protected activity and the retaliatory conduct where the adverse action occurred less than two months after the filing of a complaint); *Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995)* **[*27]** (causal element of retaliation met where adverse action occurred three months after the protected activity); *DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d. Cir. 1986)* (firing plaintiff "within one year" of a Title VII action may be probative of an indirect causal connection).

Applying this reasoning, this Court has permitted a plaintiff to challenge a defendant's counterclaims as retaliatory, where, as here, the claims could have been asserted earlier, but were instead asserted only after the plaintiff had initiated the action seeking to vindicate his federal rights. *See Yankelevitz, 1996 U.S. Dist. LEXIS 11298, 1996 WL 447749, at *6* (further noting that the fact that asserted counterclaims might have been compulsory did not *per se* negate the retaliatory animus). Indeed, Showbran does not contest that this element is likely satisfied in this case "as the counterclaims were filed after the instant complaint." (Opp. Mem. at 4.) Thus, Kreinik has established that a causal connection could exist between the assertion of rights and the adverse action, satisfying the fourth element of the *prima facie* case.

Overall, regardless of whether Kreinik's ERISA retaliation [*28] claim will ultimately stand, Kreinik has stated a *prima facie* case for retaliation and has shown that the claim would not be subject to "immediate dismissal" for failure to state a claim. There is therefore no basis for the Court to reject the proposed amendment on the ground of futility.

### III. NEW YORK LABOR LAW

Kreinik also seeks leave to amend his First Amended Complaint to assert a retaliation claim under *New York Labor Law Section 215*. (Proposed Second Am. Compl., PP 1, 60-62.) In relevant part, this state statute provides that an employer may not "discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint ... or because such employee has caused to be instituted a proceeding under or related to this chapter ...." *N.Y. Labor Law § 215(1)*. *Section 215* is analogous to *Section 510 of ERISA*, in that it covers claims for retaliation against employees who make complaints under the state Labor Law. *See Jacques v. DiMarzio, 200 F. Supp. 2d 151, 162 (E.D.N.Y. 2002)* (evaluating claim of retaliation under *New York Labor Law § 215* [*29] ); *Warden v. E.R. Squibb & Sons, Inc., 840 F. Supp. 203, 208 (E.D.N.Y. 1993)* ("[*Section 215*] provides a right of action to an employee who has been subjected to retaliation."); *Kelly v. Xerox Corp., 256 A.D.2d 311, 681 N.Y.S.2d 322*; *256 A.D.2d 311, 681 N.Y.S.2d 322 (2d Dep't 1998)*. To state a claim under *Section 215*, Kreinik must adequately plead that Showbran's counterclaims constitute an adverse employment action taken because of Kreinik's complaints under the Labor Law. *Jacques, 200 F. Supp. at 162*; *Shaw v. Baldowski, 747 N.Y.S.2d 136, 145, 192 Misc. 2d 635, 646 (Sup. Ct. Albany Co. 2002)*.

Under New York law, as under federal law, an alleged adverse employment action need not rise to the level of improper discharge, demotion, or reduction in pay, in order to be actionable as retaliatory. *See Shaw, 747 N.Y.S.2d at 145, 192 Misc. 2d at 646* (non-traditional employment actions may be sufficient to sustain a claim under *Section 215*); *cf. In the Matter of Electchester Housing Project, Inc. v. Rosa, 639 N.Y.S.2d 848, 849, 225 A.D.2d 772, 773 (2d Dep't 1996)* (under analogous provision of New York Executive [*30] Law, defendant's contesting of former employee's unemployment benefits, in response to the filing of a complaint with the State Division of Human Rights, constituted retaliation). This Court has recognized that counterclaims can be used as a retaliatory practice, with a concrete, adverse impact on the plaintiff. *See Jacques, 200 F. Supp. 2d at 162* ("The Court is deeply troubled by [defendant employer's counterclaim], which appears to be nothing more than a naked form of retaliation [against the employee]."). Here, as discussed above, Kreinik has alleged facts sufficient to infer that the counterclaims asserted against him could harm his reputation in his industry and negatively affect his prospective employment or business opportunities. (Proposed Second Am. Compl. PP 28, 60-62.) Kreinik's assertions, if proven, could lead a trier of fact to view the counterclaims as an adverse employment action under *Section 215*. *Cf. Shaw, 747 N.Y.S.2d at 146, 192 Misc. 2d at 647* (dismissing a claim of retaliation under *Section 215* where a potential adverse impact could not be fairly inferred from the facts as alleged).

In addition, Kreinik's First Amended Complaint [*31] alleged violations of *Section 190, et seq.,* of New York Labor Law (*see* First Am. Compl., PP 1-2, 32-36), and Showbran's counterclaims, which could have been raised earlier, instead closely followed the assertion of those claims. For this reason, Kreinik's allegations sufficiently plead that his labor law complaints were a motivating factor for Showbran's adverse action. *See Jacques, 200 F. Supp. 2d at 162* (finding that a close connection in time between the complaint and termination indicated that labor law complaints could have been a motivating factor for the employee's discharge).

Therefore, for essentially the same reasons discussed above in connection with Kreinik's proposed ERISA retaliation claim, Kreinik's proposed amendment to add a claim under *Section 215* may not be rejected as futile.

**IV. UNDUE PREJUDICE AND DELAY**

Kreinik additionally maintains that his proposed amended complaint will not cause undue delay or prejudice and, therefore, that his motion should not be denied on this basis. (Plaintiff's Mem. at 5-6; Reply Mem. at 1). Showbran does not offer any meaningful opposition to Kreinik's argument, stating only that the amendments **[*32]** would also cause delay and prejudice, but that the "Court need not reach these[] issues because the proposed claims are in any case futile." (Opp. Mem. at 2.) The Court has nonetheless reviewed these issues, and concludes that granting the motion to amend will not inordinately delay the proceedings or unduly prejudice Showbran.

Mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis to deny a motion to amend. *Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)* (citing *State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).* In determining whether a party's interests will be unduly prejudiced by an amendment, this Court must consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute ...." *Id.* (citations omitted).

Here, although the deadline for completion of discovery has passed and the amendments may result in a slight delay, Kreinik asserts that additional discovery will be minimal, and Showbran has not shown **[*33]** to the contrary. (Plaintiff's Mem. at 5-6, n.3.) Moreover, the mere fact that discovery has concluded does not provide a reason for denying leave to amend. *Cemar Tekstil Ithalat Ihracat San ve Tic. A.S. v. Joinpac, Inc., 1993 U.S. Dist. LEXIS 5065, No. 91 Civ. 8408, 1993 WL 126890, at *1 (S.D.N.Y. Apr. 16, 1993)* (allowing amendment to add a counterclaim where discovery had already closed). This is especially true where the proposed amendment arises from the same set of operative facts as the original claims, or from events closely related to those originally pleaded. *Fluor Corp., 654 F.2d at 856*; *see, e.g., Harrison v. New York City Admin. for Children's Servs., 2002 U.S. Dist. LEXIS 16438, 02-Civ. 0947, 2002 WL 2022932, *1 (S.D.N.Y. Sept. 3, 2002)*; *Union Carbide Corp. v. Siemens Westinghouse Power Corp., 2002 U.S. Dist. LEXIS 20190, No. 99 Civ. 12003, 2002 WL 31387269, *3 (S.D.N.Y. Oct. 23, 2002)*. Even if discovery were to be prolonged, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989)* (citation omitted). **[*34]** In this case, the proposed new claims relate to the defendants' motivation and intent in asserting their counterclaims, a subject on which the parties should not need substantial additional discovery. Thus, allowing the amendments will not call for a great expenditure of resources or significantly prolong the dispute.

Showbran also has not alleged any bad faith on Kreinik's part. Showbran does not contest Kreinik's assertions that he had good reasons for failing to raise his new claims sooner, nor does Showbran contest that it was on notice of these claims for some time. [5] Nor has Kreinik asserted these claims on the eve of trial in an attempt to "sandbag" Showbran.

> 5   For instance, Showbran does not contest that it took some time to respond to Kreinik's counsel's inquiries as to whether Showbran would consent to the proposed amendments, and that Showbran requested that counsel hold off in filing the proposed amendments in order to explore a resolution of the claims. (*See* Clark Aff. at PP 14-19.)

Finally, **[*35]** forcing Kreinik to institute a new action against Showbran would run counter to the interests of judicial economy. Kreinik's proposed retaliation claims are related to his original claims and are also tied to his affirmative defense of unclean hands and retaliation, which he pleaded in reply to Showbran's counterclaims. (Answer to Defendant's Counterclaims PP 128, 135-36.) Allowing all of the claims and counterclaims to be litigated in a single action would avoid unnecessary duplication of effort by counsel, ultimately reduce litigation costs, and save time. *See Expoconsul Int'l, Inc. v. A/E Sys., Inc., 145 F.R.D. 336, 339 (S.D.N.Y. 1993)* (granting motion to amend, even though five years had passed and over 5600 pages of deposition testimony had been taken, because the amendment did not add to the complexity of the case or to discovery, and a separate lawsuit would have resulted

in duplicative efforts and might have resulted in consolidation in any event).

Thus, in the circumstances presented, concerns about undue delay and prejudice are insufficient to warrant denial of the motion to amend.

**CONCLUSION**

For all of the foregoing reasons, Kreinik's motion [*36] to amend his First Amended Complaint is granted in its entirety.

Dated: October 10, 2003

SO ORDERED

DEBRA FREEMAN

United States Magistrate Judge