UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
DONNA FEHN,                               :      07 Civ. 8321 (WCC)

                        Plaintiff,        :      **ECF CASE**

            – against –                   :

                                                 **OPINION**
GROUP LONG TERM DISABILITY PLAN FOR       :      AND ORDER
EMPLOYEES OF JP MORGAN CHASE BANK, JP
MORGAN CHASE BANK, as Plan Administrator,:
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY, as Administrator/Fiduciary of    :
the Plan, KRISTA DUDECK, Individually,
DANIEL BERTA, Individually, KARA MORETT,:
Individually, and DESMOND "DOE,"
Individually,                             :

                        Defendants.       :
- - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                              SAPIR & FRUMKIN LLP
                              **Attorneys for Plaintiff**
                              399 Knollwood Road, Suite 310
                              White Plains, New York 10603

DANIEL T. DRIESEN, ESQ.
WILLIAM D. FRUMKIN, ESQ.

        Of Counsel


                              JPMORGAN CHASE LEGAL DEPARTMENT
                              **Attorneys for Defendants**
                                **Group Long Term Disability Plan**
                                **for Employees of JP MORGAN CHASE**
                                **BANK, JP Morgan Chase Bank, as**
                                **Plan Administrator, Krista**
                                **Dudeck, Individually, Daniel**
                                **Berta, Individually, Kara**
                                **Morett, Individually, and**
                                **Desmond "Doe"**
                              One Chase Manhattan Plaza, 26th Fl.
                              New York, New York 10081

STACEY L. BLECHER, ESQ.

        Of Counsel

**Conner, Sr. D.J.:**

Plaintiff, Donna Fehn, brings this suit against defendants Group Long Term Disability Plan for Employees of JP Morgan Chase Bank ("LTD Plan"), JP Morgan Chase Bank ("JPMC"), Hartford Life and Accident Insurance Company ("Hartford"), Krista Dudeck ("Dudeck"), Daniel Berta ("Berta"), Kara Morett ("Morett") and Desmond Doe ("Doe") pursuant to the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §§ 1104(a), 1132(a)(1)(B), (a)(3). Plaintiff alleges that defendants denied her benefits and breached their fiduciary duties in violation of ERISA. Defendant JPMC brings a counterclaim against plaintiff for recovery of money which it alleges plaintiff was paid but was not entitled to under the disability plan. Plaintiff moves to dismiss the claim against her pursuant to FED. R. CIV. P. 12(b)(6) and to amend the Complaint pursuant to FED. R. CIV. P. 15(a). For the following reasons, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The following facts, taken from JPMC's Counterclaim and those allegations set forth in the Complaint that JPMC admits, are assumed to be true for purposes of this motion.

Plaintiff commenced her employment with The Chase Manhattan Bank, predecessor in interest to JPMC, on July 24, 1978. (Answer ¶ 11.) At times, plaintiff received promotions, bonuses and salary increases during her employment from July 24, 1978 through February 18, 2005. (*Id.* ¶ 13.) In or about January 2005, plaintiff submitted her resignation to JPMC, at which time she was the Assistant Branch Manager of the Somers, New York branch and received an annual salary of $62,000.00. (Complt. ¶ 14.) Plaintiff's last day at JPMC was February 18, 2005, and at the time of her resignation plaintiff was a participant in JPMC's various employee benefits plans, including

1

defendant LTD Plan. (*Id*. ¶¶ 15-16.)

In or about September 2005, plaintiff and Dudeck discussed an opening for a Branch Manager at JPMC's Patterson, New York branch. (*Id*. ¶ 20.) Plaintiff informed Dudeck that she wanted JPMC to treat her as though she never left the company in connection with her employee benefits and seniority; she wanted credit for her twenty-three years of service and wanted the benefits to which she was entitled prior to leaving restored as of her original hire date. (*Id*. ¶ 21.) On October 12, 2005 plaintiff met with Berta, Senior Vice President at JPMC, who told plaintiff that JPMC wanted her back but that JPMC could not match her current annual salary of $72,000. (*Id*. ¶ 23.) Plaintiff and Berta also discussed the possibility of plaintiff being rehired as a reinstated employee to a Branch Manager position. (Answer ¶ 23.)

On October 31, 2005, plaintiff reported for work at JPMC's Patterson branch. (Complt. ¶ 33.) After her rehire date and the onset of her alleged illness on or about November 2, 2005, plaintiff was paid $33,749.51 in short-term disability benefits under JPMC's Short-Term Disability Plan ("STD Plan"). (Countercl. ¶ 1.) Pursuant to the STD Plan then in effect, plaintiff was not eligible to receive salary continuation because she had not yet met the Introductory Period, as defined by the STD Plan. (*Id*. ¶ 2.) Plaintiff was entitled only to receive statutory benefits of $170 per week paid to employees working in New York if they were not eligible for salary continuation, in which case she would have been paid only $4,420. (*Id*. ¶¶ 3-4.) JPMC claims that plaintiff was overpaid in the amount of $29,329.51, the erroneous payment of salary continuation by JPMC, and therefore it is entitled to recover that amount because plaintiff was not entitled to it under the STD Plan. (*Id*. ¶¶ 5-6.)

**DISCUSSION**

**I.      Legal Standard**

A motion brought under FED. R. CIV. P. 12(b)(6) posits that the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted).  The fact pleading standard is "a flexible 'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007).  Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law.  *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

When deciding a 12(b)(6) motion to dismiss a counterclaim, the Court must take as true the facts as alleged in the counterclaim, and may consider documents incorporated in the counterclaim by reference, matters of which judicial notice may be taken, or documents that the counter-plaintiff relied on in bringing suit.  *See Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court must construe the counterclaim liberally and draw all reasonable inferences in the counter-plaintiff's favor.  *Id*.

## II.    JPMC Fails to State a Claim Under ERISA

Section 502(a)(3)(B) of ERISA authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has held that the term "'equitable relief'" in § 502(a)(3) refers to "'those categories of relief that were *typically* available in equity.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993)) (emphasis in original). Suits seeking to compel the payment of a sum of money are suits for "'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the . . . breach of legal duty." *Id*. (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting). Money damages are the classic form of legal relief. *Id*.

In *Knudson*, respondent wife was injured in a car accident and received benefits under respondent husband's plan with Great-West. *Id*. at 207. The Plan included a reimbursement provision that gave the Plan the right to recover from the beneficiary benefits paid by the Plan that the beneficiary recovered from a third-party. *Id*. Respondents recovered a settlement in a state court tort action which allocated a portion of the settlement amount, $13,828.70, to satisfy Great-West's claim under the reimbursement provision of the Plan. *Id*. at 207-08. Respondents' attorney provided a check in that amount to Great-West, which Great-West did not cash. Instead, Great-West filed an action in federal court seeking injunctive and declaratory relief under § 502(a)(3) to enforce the reimbursement provision of the Plan by requiring respondents to pay the Plan $411,157.11 of any proceeds recovered from third-parties. *Id*. at 208.

4

Great-West argued that they were entitled to relief under § 502(a)(3)(B) because they sought restitution, which they characterized as a form of equitable relief. *Id*. at 212. The Court noted, however, that not all relief for restitution is available in equity. *Id*. Whether restitution is a legal or equitable remedy depends on "the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." *Id*. at 213. (internal quotation marks and citation omitted; alteration in original). The plaintiff had a right to restitution at law when he sought to impose a merely personal liability upon the defendant, in which case he could show just grounds for recovering money for a benefit the defendant received from him but could not assert title or right to possession of particular property. *Id*. A plaintiff could seek restitution in equity "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id*. In such cases, a court of equity could order a defendant to transfer title or to give a security interest to a plaintiff; however, where the property or its proceeds "have been dissipated so that no product remains," the plaintiff's claim is that of a general creditor. *Id*. (internal quotation marks and citation omitted).

The Court noted that the basis for Great-West's claim was not that respondents held particular funds that belonged to Great-West, but rather that Great-West was entitled to some funds for benefits that they conferred, which was not an equitable relief to impose a trust or lien but rather a legal relief seeking to impose personal liability for the benefits that they conferred upon respondent. *Id*. at 214; *see Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103-04 (2d Cir. 2005); *Zarycki v. Mount Sinai/NYU Health*, 2005 WL 2977568, at *10 (S.D.N.Y. Nov. 4, 2005).

In *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006), the fiduciary of a health plan brought suit against the plan beneficiaries seeking reimbursement for amounts paid for medical

5

expenses of the beneficiaries, who were injured in automobile accident, from the proceeds of the beneficiaries' settlement with third-party tortfeasors in a personal injury action.   Soon after the beneficiaries commenced the tort action, Mid Atlantic sent their attorney a letter asserting a lien on the anticipated proceeds from the suit.  *Id*. at 360.  After the beneficiaries settled neither they nor their attorney sent any money to Mid Atlantic to satisfy the lien.  *Id*.  The Court distinguished *Knudson*, noting that unlike Great-West, Mid Atlantic did not simply seek to impose personal liability for a contractual obligation to pay money, but rather sought specifically identifiable funds that were within the possession and control of the beneficiaries—that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and preserved in the beneficiaries' investment accounts. *Id*. at 362-63; *see Coan v. Kaufman*, 457 F.3d 250, 263 (2d Cir. 2006) (noting that the Supreme Court in *Sereboff* reaffirmed the holding of *Knudson* that money damages are unavailable under section 502(a)(3) when the plaintiff does not seek to recover a particular fund from the defendant, and determining that plaintiff sought monetary relief because she did not attempt to recover a specifically identified fund from the defendants); *Union Labor Life Ins. Co. v. Olsten Corp. Health & Welfare Benefit Plan*, 2008 WL 817112, at *10 (E.D.N.Y. Mar. 26, 2008).

In *Vacca v. Trinitas Hospital*, the Fund attempted to recover money overpaid in error to a medical provider.  2006 WL 3314637, at *1 (E.D.N.Y. Nov. 14, 2006).  Plaintiffs argued that because they could identify the specific checks that were paid to defendants and the bank accounts into which the checks were deposited, the overpayment could be traced with enough particularity to establish an equitable lien over the funds.  *Id*. at *4.  The court noted that this approach was rejected by the Second Circuit, holding that "no claim in equity could be established where the defendant was not required to segregate the monies upon which plaintiff sought to impose a trust, and where there was

6

no allegation that the funds were kept in a separate account." *Id*. (citing *Nechis*, 421 F.3d at 103). The court also noted that although plaintiffs framed their claim as an equitable one, "'the gravamen of this action remains a claim for money compensation and that, above all else, dictates the relief available.'" *Id*. (quoting *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006)). *But see Fedderwitz v. Metro. Life Ins. Co.'s Disability Unit*, 2007 WL 2846365, at *11 (S.D.N.Y. Sept. 27, 2007) (granting summary judgment in favor of MetLife on counterclaim seeking recovery of overpayment of long-term disability benefits due to plaintiff's receipt of Social Security disability benefits because a specific *res* (the Social Security disability benefits) was designated to a specific creditor (MetLife), and thus the action was permissible under ERISA).

JPMC argues that its counterclaim is an equitable action under § 502(a)(3)(B) because it seeks the return of money improperly paid by the STD Plan to plaintiff which "is clearly [an action] for restitution pursuant to the terms of the Plan." (Defs. JPMC Mem. Opp. Mot. Dismiss at 4.) Defendants argue that they are entitled to relief under *Sereboff* because the amount in dispute is clearly identifiable—the benefits mistakenly paid by the STD Plan and taken from the JPMC cost center for plaintiff's previous business unit. (*Id*. at 5.)

As we already discussed, *Sereboff* confirms the holding in *Knudson* that money damages are unavailable under § 502(a)(3) when the party does not seek to recover a particular fund. *See Coan*, 457 F.3d at 263. JPMC seeks to recover from plaintiff money that it alleges was paid out in error. Although in its argument JPMC has attempted to specifically identify the funds as moneys paid by the STD Plan from the JPMC cost center for plaintiff's previous business unit, for purposes of this inquiry it does not matter where the funds originated. JPMC must demonstrate that it has a right to clearly identifiable funds in plaintiff's possession. JPMC does not identify segregated funds in

7

plaintiff's possession, but merely attempts to impose a personal liability upon plaintiff. All JPMC

can do in this case is show just grounds for recovering money for a benefit plaintiff received, but it

can not assert title or right to possession of particular property. *See Knudson*, 534 U.S. at 213. For

this reason, JPMC fails to state a claim under § 502(a)(3).


### III.    Plaintiff Fails to State a Claim of Retaliation

Plaintiff seeks leave of the Court to further amend her Complaint to assert a claim of unlawful

retaliation and interference by JPMC in bringing "an unwarranted counterclaim response to her filing

the instant ERISA complaint." (Pl. Mem. Supp. Mot. Dismiss at 8.) Leave to amend "shall be freely

given when justice so requires." FED. R. CIV. P. 15(a). However, a motion to amend should be

denied if there is an "'apparent or declared reason—such as undue delay, bad faith or dilatory motive

. . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Dluhos

v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

JPMC argues that the proposed claim is futile because it could not withstand a motion to

dismiss. (Defs. JPMC Mem. Opp. Mot. Dismiss at 6.) The amendment will be deemed futile, and

the motion to amend denied, "where the amendment would be subject to immediate dismissal for

failure to state a claim upon which relief can be granted, or would be subject to dismissal on some

other basis." *Kreinik v. Showbran Photo, Inc.*, 2003 WL 22339268, at *2 (S.D.N.Y. Oct. 14, 2003)

(internal quotation marks and citation omitted). We review plaintiff's proposed amended complaint

for adequacy using the same standards as those that govern the adequacy of a filed pleading, and need

not allow its filing if it does not state a claim upon which relief can be granted. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Plaintiff alleges retaliation and interference under section 510 of ERISA, which provides that it shall be unlawful for any person to discriminate against a participant or beneficiary for exercising any right to which she is entitled or interfere with the attainment of any right to which such participant may become entitled. *See* 29 U.S.C. § 1140. To assert a claim of retaliation under section 510, plaintiff would have to establish that: (1) she was engaged in a protected activity; (2) JPMC was aware of her participation in the protected activity; (3) JPMC took adverse employment action against her; and (4) a causal connection existed between the protected activity and the adverse action. *See Kreinik*, 2003 WL 22339268, at *3 (internal citation omitted); *see, e.g. Resner v. Arc Mills, Inc.*, 152 F.3d 920 (2d Cir. 1998) (holding that, in order to state a discrimination claim under ERISA, plaintiff must first establish a prima facie case by demonstrating that she was a member of the protected class, qualified for her job and discharged under circumstances giving rise to an inference of discrimination). Plaintiff's filing of her ERISA claim against JPMC was a protected activity of which JPMC was aware. We consider whether she sufficiently pleads that JPMC took adverse employment action against her by filing the counterclaim.

In *Kreinik*, the court held that counterclaims, asserted after the termination of a plaintiff's employment, could constitute the type of adverse employment action required to meet the third element of a *prima facie* case of retaliation. *Id*. at *4. The court noted that for a counterclaim to be actionable as retaliatory, however, it must have some impact on the plaintiff's employment or prospective employment. *Id*. at *7. In *Kreinik*, the counterclaims alleged that the plaintiff engaged in trade name infringement, unfair competition and misappropriation under state common law;

violations of New York Business Law; tortious interference with actual business relations; tortious interference with prospective business relations; misappropriation of proprietary information; breach of contract and breach of implied covenants of good faith and fair dealing. *Id*. The court determined that even if it was not likely that the counterclaims would have an actual, adverse effect on plaintiff's business, the apparent potential for an adverse impact to his livelihood was sufficient for the retaliation claim to survive at the pleading stage. *Id*.

Plaintiff is no longer employed by JPMC and has not been since November 14, 2006. The nature of JPMC's claim is in restitution for recovery of money allegedly overpaid to plaintiff under the STD Plan. Plaintiff does not allege, nor can we surmise, how this claim will have an actual or apparent adverse impact on plaintiff's prospective employment. The claim does not impugn her professional reputation in any way. Nor is it apparent how a counterclaim asserted against plaintiff for recovery of money that JPMC, through the STD Plan, overpaid her would impact any potential employment opportunities.

Plaintiff "respectfully disagrees with the part of the holding in *Kreinik*, wherein it was stated that the adverse retaliatory action suffered by the litigant had to be an adverse *employment* action." (Pl. Reply Mem. Supp. Mot. Dismiss at 3 (emphasis in original).) Plaintiff argues that the law is unsettled regarding the extent to which a section 510 claim must implicate the employer-employee relationship. (*Id*. (citing *Tirone v. N.Y. Stock Exch., Inc.*, 2006 U.S. Dist. LEXIS 69591, at *9 (S.D.N.Y. Sept. 28, 2006).) Plaintiff argues that other circuits have noted that the anti-retaliation and anti-interference provision in ERISA is not narrowed to the employment relationship, and because the law is unsettled the proposed claim can not be futile. (*Id*. (citing *Mattei v. Mattei*, 126 F.3d 794,

10

801 (6th Cir. 1997).)[1]

Plaintiff's reading of *Tirone* is simply wrong.  Although the court in *Tirone* noted that the Second Circuit had not squarely addressed the issue of whether a section 510 claim must implicate the employer-employee relationship, it noted that courts in the District have held that section 510 only proscribes interference with the employment relationship.[2] *See Tirone*, 2006 U.S. Dist. LEXIS 69591, at *9 (citing *Devlin v. Transp. Commc'ns Int'l Union*, 1997 WL 570512, at *6 (S.D.N.Y. Sept. 15, 1997); *Downes v. JP Morgan Chase & Co.*, 2004 WL 1277991, at *5 (S.D.N.Y. June 8, 2004); *DeSimone v. Transprint USA, Inc.*, 1996 WL 209951, at *3 (S.D.N.Y. Apr. 29, 1996); *DeGrooth v. Gen. Dynamics Corp.*, 837 F. Supp. 485, 489 (D. Conn. 1993)); *see also Ello*, 531 F. Supp. 2d at 571, n.18.  The court held that the plaintiffs must allege that the defendant took some type of adverse employment action to interfere with the attainment of their benefit rights under the plan, and determined that the Amended Consolidated Complaint did not allege an adverse employment action. *Tirone*, 2006 U.S. Dist. LEXIS 69591, at *10.  Because we determine that plaintiff likewise does not allege an adverse employment action in her proposed Amended Complaint, her request to amend the Complaint is denied as futile.

---

[1]  The Third Circuit rejected the holding of *Mattei* in *Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 383 (3d Cir. 2002).  We are not persuaded by it here either.

[2]  Because the text of section 510 does not specifically state that the interference must be with an employment relationship, we rely on previous case law that has addressed this issue.  *See* 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act . . . .").

## CONCLUSION

For all of the foregoing reasons, the plaintiff's motion to dismiss the counterclaim is granted and her motion to amend the Complaint is denied.


SO ORDERED.

Dated:  White Plains, New York
        June 30, 2008

_William C. Conner_

Sr. United States District Judge

12