UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X  Via ECF

DONNA FEHN,

                   Plaintiff,             :       07 CIV. 8321 (WCC)

                                 :

     -against-

                                 :       **AFFIDAVIT OF**

GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF JP MORGAN CHASE BANK, JP    :       <u>**STACEY L. BLECHER**</u>
MORGAN CHASE BANK, as Plan Administrator,
HARTFORD LIFE AND ACCIDENT INSURANCE    :
COMPANY, as Administrator/Fiduciary of the Plan,
KRISTA DUDECK, Individually, DANIEL BERTA,    :
Individually, KARA MORETT, Individually, and
DESMOND "Doe," Individually,              :

                        Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK      )
                        ) s.s.:
COUNTY OF NEW YORK    )

       STACEY L. BLECHER, being duly sworn, deposes and says:

       1.      I am an Assistant General Counsel with the JPMorgan Chase Legal &
Compliance Department and represent Defendant JPMorgan Chase Bank, N.A. (erroneously
named herein as "JPMorgan Chase Bank") ("JPMorgan Chase") in the above-captioned action. I
am making this Affidavit in support of JPMorgan Chase's Motion for Reconsideration, pursuant
to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, for reconsideration of a portion
of the Court's Opinion and Order dismissing JPMorgan Chase's Counterclaim dated June 30,
2008 (the "Order"), which was filed in the Clerk's office on June 30, 2008. A copy of the Order
is annexed hereto as Exhibit A.

    2.    A copy of JPMorgan Chase's Disability Leave Policy, in effect as of July 1, 2005, is annexed hereto as Exhibit B.

    **WHEREFORE**, JPMorgan Chase respectfully submits that this Court reconsider that part of the Order that dismissed JPMorgan Chase's Counterclaim, and grant JPMorgan Chase such other and further relief as the Court deems appropriate.

STACEY L. BLECHER

Sworn to before me this
15th day of July 2008

Notary Public

FREDERIC L. LIEBERMAN
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
NO. 02LI5067577
MY COMMISSION EXPIRES OCT 15, 2010

167931:v1

**EXHIBIT A**

OFFICE RECORD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOCKET YES ___✓___ NO _____ CLOSED _____

- - - - - - - - - - - - - - - - - - - X

DONNA FEHN,                          :    07 Civ. 8321 (WCC)

                    Plaintiff,       :    **ECF CASE**

        - against -                  :
                                          **OPINION**
GROUP LONG TERM DISABILITY PLAN FOR  :    **AND ORDER**
EMPLOYEES OF JP MORGAN CHASE BANK, JP
MORGAN CHASE BANK, as Plan Administrator,:
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY, as Administrator/Fiduciary of  :
the Plan, KRISTA DUDECK, Individually,
DANIEL BERTA, Individually, KARA MORETT,:
Individually, and DESMOND "DOE,"
Individually,                        :

                    Defendants.      :
- - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                              SAPIR & FRUMKIN LLP
                              **Attorneys for Plaintiff**
                              399 Knollwood Road, Suite 310
                              White Plains, New York 10603

DANIEL T. DRIESEN, ESQ.
WILLIAM D. FRUMKIN, ESQ.

        Of Counsel


                              JPMORGAN CHASE LEGAL DEPARTMENT
                              **Attorneys for Defendants**
                              **Group Long Term Disability Plan**
                              **for Employees of JP MORGAN CHASE**
                              **BANK, JP Morgan Chase Bank, as**
                              **Plan Administrator, Krista**
                              **Dudeck, Individually, Daniel**
                              **Berta, Individually, Kara**
                              **Morett, Individually, and**
                              **Desmond "Doe"**
                              One Chase Manhattan Plaza, 26th Fl.
                              New York, New York 10081

STACEY L. BLECHER, ESQ.

        Of Counsel

**Conner, Sr. D.J.:**

Plaintiff, Donna Fehn, brings this suit against defendants Group Long Term Disability Plan

for Employees of JP Morgan Chase Bank ("LTD Plan"), JP Morgan Chase Bank ("JPMC"), Hartford

Life and Accident Insurance Company ("Hartford"), Krista Dudeck ("Dudeck"), Daniel Berta

("Berta"), Kara Morett ("Morett") and Desmond Doe ("Doe") pursuant to the Employee Retirement

Income Security Act ("ERISA") 29 U.S.C. §§ 1104(a), 1132(a)(1)(B), (a)(3). Plaintiff alleges that

defendants denied her benefits and breached their fiduciary duties in violation of ERISA. Defendant

JPMC brings a counterclaim against plaintiff for recovery of money which it alleges plaintiff was

paid but was not entitled to under the disability plan. Plaintiff moves to dismiss the claim against

her pursuant to FED. R. CIV. P. 12(b)(6) and to amend the Complaint pursuant to FED. R. CIV. P.

15(a). For the following reasons, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The following facts, taken from JPMC's Counterclaim and those allegations set forth in the

Complaint that JPMC admits, are assumed to be true for purposes of this motion.

Plaintiff commenced her employment with The Chase Manhattan Bank, predecessor in

interest to JPMC, on July 24, 1978. (Answer ¶ 11.) At times, plaintiff received promotions, bonuses

and salary increases during her employment from July 24, 1978 through February 18, 2005. (*Id.* ¶

13.) In or about January 2005, plaintiff submitted her resignation to JPMC, at which time she was

the Assistant Branch Manager of the Somers, New York branch and received an annual salary of

$62,000.00. (Complt. ¶ 14.) Plaintiff's last day at JPMC was February 18, 2005, and at the time of

her resignation plaintiff was a participant in JPMC's various employee benefits plans, including

1

defendant LTD Plan. (*Id.* ¶¶ 15-16.)

In or about September 2005, plaintiff and Dudeck discussed an opening for a Branch Manager at JPMC's Patterson, New York branch. (*Id.* ¶ 20.) Plaintiff informed Dudeck that she wanted JPMC to treat her as though she never left the company in connection with her employee benefits and seniority; she wanted credit for her twenty-three years of service and wanted the benefits to which she was entitled prior to leaving restored as of her original hire date. (*Id.* ¶ 21.) On October 12, 2005 plaintiff met with Berta, Senior Vice President at JPMC, who told plaintiff that JPMC wanted her back but that JPMC could not match her current annual salary of $72,000. (*Id.* ¶ 23.) Plaintiff and Berta also discussed the possibility of plaintiff being rehired as a reinstated employee to a Branch Manager position. (Answer ¶ 23.)

On October 31, 2005, plaintiff reported for work at JPMC's Patterson branch. (Complt. ¶ 33.) After her rehire date and the onset of her alleged illness on or about November 2, 2005, plaintiff was paid $33,749.51 in short-term disability benefits under JPMC's Short-Term Disability Plan ("STD Plan"). (Countercl. ¶ 1.) Pursuant to the STD Plan then in effect, plaintiff was not eligible to receive salary continuation because she had not yet met the Introductory Period, as defined by the STD Plan. (*Id.* ¶ 2.) Plaintiff was entitled only to receive statutory benefits of $170 per week paid to employees working in New York if they were not eligible for salary continuation, in which case she would have been paid only $4,420. (*Id.* ¶¶ 3-4.) JPMC claims that plaintiff was overpaid in the amount of $29,329.51, the erroneous payment of salary continuation by JPMC, and therefore it is entitled to recover that amount because plaintiff was not entitled to it under the STD Plan. (*Id.* ¶¶ 5-6.)

2

## DISCUSSION

### I.   Legal Standard

A motion brought under FED. R. CIV. P. 12(b)(6) posits that the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). The fact pleading standard is "a flexible 'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

When deciding a 12(b)(6) motion to dismiss a counterclaim, the Court must take as true the facts as alleged in the counterclaim, and may consider documents incorporated in the counterclaim by reference, matters of which judicial notice may be taken, or documents that the counter-plaintiff relied on in bringing suit. *See Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007). The Court must construe the counterclaim liberally and draw all reasonable inferences in the counter-plaintiff's favor. *Id.*

3

## II.    JPMC Fails to State a Claim Under ERISA

Section 502(a)(3)(B) of ERISA authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has held that the term "'equitable relief'" in § 502(a)(3) refers to "'those categories of relief that were *typically* available in equity.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993)) (emphasis in original). Suits seeking to compel the payment of a sum of money are suits for "'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the . . . breach of legal duty." *Id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting). Money damages are the classic form of legal relief. *Id.*

In *Knudson*, respondent wife was injured in a car accident and received benefits under respondent husband's plan with Great-West. *Id.* at 207. The Plan included a reimbursement provision that gave the Plan the right to recover from the beneficiary benefits paid by the Plan that the beneficiary recovered from a third-party. *Id.* Respondents recovered a settlement in a state court tort action which allocated a portion of the settlement amount, $13,828.70, to satisfy Great-West's claim under the reimbursement provision of the Plan. *Id.* at 207-08. Respondents' attorney provided a check in that amount to Great-West, which Great-West did not cash. Instead, Great-West filed an action in federal court seeking injunctive and declaratory relief under § 502(a)(3) to enforce the reimbursement provision of the Plan by requiring respondents to pay the Plan $411,157.11 of any proceeds recovered from third-parties. *Id.* at 208.

4

Great-West argued that they were entitled to relief under § 502(a)(3)(B) because they sought restitution, which they characterized as a form of equitable relief. *Id.* at 212. The Court noted, however, that not all relief for restitution is available in equity. *Id.* Whether restitution is a legal or equitable remedy depends on "the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." *Id.* at 213. (internal quotation marks and citation omitted; alteration in original). The plaintiff had a right to restitution at law when he sought to impose a merely personal liability upon the defendant, in which case he could show just grounds for recovering money for a benefit the defendant received from him but could not assert title or right to possession of particular property. *Id.* A plaintiff could seek restitution in equity "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* In such cases, a court of equity could order a defendant to transfer title or to give a security interest to a plaintiff; however, where the property or its proceeds "have been dissipated so that no product remains," the plaintiff's claim is that of a general creditor. *Id.* (internal quotation marks and citation omitted).

The Court noted that the basis for Great-West's claim was not that respondents held particular funds that belonged to Great-West, but rather that Great-West was entitled to some funds for benefits that they conferred, which was not an equitable relief to impose a trust or lien but rather a legal relief seeking to impose personal liability for the benefits that they conferred upon respondent. *Id.* at 214; *see Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103-04 (2d Cir. 2005); *Zarycki v. Mount Sinai/NYU Health*, 2005 WL 2977568, at *10 (S.D.N.Y. Nov. 4, 2005).

In *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006), the fiduciary of a health plan brought suit against the plan beneficiaries seeking reimbursement for amounts paid for medical

5

expenses of the beneficiaries, who were injured in automobile accident, from the proceeds of the

beneficiaries' settlement with third-party tortfeasors in a personal injury action. Soon after the

beneficiaries commenced the tort action, Mid Atlantic sent their attorney a letter asserting a lien on

the anticipated proceeds from the suit. *Id.* at 360. After the beneficiaries settled neither they nor their

attorney sent any money to Mid Atlantic to satisfy the lien. *Id.* The Court distinguished *Knudson*,

noting that unlike Great-West, Mid Atlantic did not simply seek to impose personal liability for a

contractual obligation to pay money, but rather sought specifically identifiable funds that were within

the possession and control of the beneficiaries—that portion of the tort settlement due Mid Atlantic

under the terms of the ERISA plan, set aside and preserved in the beneficiaries' investment accounts.

*Id.* at 362-63; *see Coan v. Kaufman*, 457 F.3d 250, 263 (2d Cir. 2006) (noting that the Supreme Court

in *Sereboff* reaffirmed the holding of *Knudson* that money damages are unavailable under section

502(a)(3) when the plaintiff does not seek to recover a particular fund from the defendant, and

determining that plaintiff sought monetary relief because she did not attempt to recover a specifically

identified fund from the defendants); *Union Labor Life Ins. Co. v. Olsten Corp. Health & Welfare

Benefit Plan*, 2008 WL 817112, at *10 (E.D.N.Y. Mar. 26, 2008).

In *Vacca v. Trinitas Hospital*, the Fund attempted to recover money overpaid in error to a

medical provider. 2006 WL 3314637, at *1 (E.D.N.Y. Nov. 14, 2006). Plaintiffs argued that because

they could identify the specific checks that were paid to defendants and the bank accounts into which

the checks were deposited, the overpayment could be traced with enough particularity to establish an

equitable lien over the funds. *Id.* at *4. The court noted that this approach was rejected by the

Second Circuit, holding that "no claim in equity could be established where the defendant was not

required to segregate the monies upon which plaintiff sought to impose a trust, and where there was

6

no allegation that the funds were kept in a separate account." *Id.* (citing *Nechis*, 421 F.3d at 103). The court also noted that although plaintiffs framed their claim as an equitable one, "'the gravamen of this action remains a claim for money compensation and that, above all else, dictates the relief available.'" *Id.* (quoting *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006)). *But see Fedderwitz v. Metro. Life Ins. Co.'s Disability Unit*, 2007 WL 2846365, at *11 (S.D.N.Y. Sept. 27, 2007) (granting summary judgment in favor of MetLife on counterclaim seeking recovery of overpayment of long-term disability benefits due to plaintiff's receipt of Social Security disability benefits because a specific *res* (the Social Security disability benefits) was designated to a specific creditor (MetLife), and thus the action was permissible under ERISA).

JPMC argues that its counterclaim is an equitable action under § 502(a)(3)(B) because it seeks the return of money improperly paid by the STD Plan to plaintiff which "is clearly [an action] for restitution pursuant to the terms of the Plan." (Defs. JPMC Mem. Opp. Mot. Dismiss at 4.) Defendants argue that they are entitled to relief under *Sereboff* because the amount in dispute is clearly identifiable—the benefits mistakenly paid by the STD Plan and taken from the JPMC cost center for plaintiff's previous business unit. (*Id.* at 5.)

As we already discussed, *Sereboff* confirms the holding in *Knudson* that money damages are unavailable under § 502(a)(3) when the party does not seek to recover a particular fund. *See Coan*, 457 F.3d at 263. JPMC seeks to recover from plaintiff money that it alleges was paid out in error. Although in its argument JPMC has attempted to specifically identify the funds as moneys paid by the STD Plan from the JPMC cost center for plaintiff's previous business unit, for purposes of this inquiry it does not matter where the funds originated. JPMC must demonstrate that it has a right to clearly identifiable funds in plaintiff's possession. JPMC does not identify segregated funds in

7

plaintiff's possession, but merely attempts to impose a personal liability upon plaintiff. All JPMC

can do in this case is show just grounds for recovering money for a benefit plaintiff received, but it

can not assert title or right to possession of particular property. *See Knudson*, 534 U.S. at 213. For

this reason, JPMC fails to state a claim under § 502(a)(3).


**III.      Plaintiff Fails to State a Claim of Retaliation**

Plaintiff seeks leave of the Court to further amend her Complaint to assert a claim of unlawful

retaliation and interference by JPMC in bringing "an unwarranted counterclaim response to her filing

the instant ERISA complaint." (Pl. Mem. Supp. Mot. Dismiss at 8.) Leave to amend "shall be freely

given when justice so requires." FED. R. CIV. P. 15(a). However, a motion to amend should be

denied if there is an "'apparent or declared reason—such as undue delay, bad faith or dilatory motive

. . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Dluhos*

*v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

JPMC argues that the proposed claim is futile because it could not withstand a motion to

dismiss. (Defs. JPMC Mem. Opp. Mot. Dismiss at 6.) The amendment will be deemed futile, and

the motion to amend denied, "where the amendment would be subject to immediate dismissal for

failure to state a claim upon which relief can be granted, or would be subject to dismissal on some

other basis." *Kreinik v. Showbran Photo, Inc.*, 2003 WL 22339268, at *2 (S.D.N.Y. Oct. 14, 2003)

(internal quotation marks and citation omitted). We review plaintiff's proposed amended complaint

for adequacy using the same standards as those that govern the adequacy of a filed pleading, and need

not allow its filing if it does not state a claim upon which relief can be granted. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Plaintiff alleges retaliation and interference under section 510 of ERISA, which provides that it shall be unlawful for any person to discriminate against a participant or beneficiary for exercising any right to which she is entitled or interfere with the attainment of any right to which such participant may become entitled. *See* 29 U.S.C. § 1140. To assert a claim of retaliation under section 510, plaintiff would have to establish that: (1) she was engaged in a protected activity; (2) JPMC was aware of her participation in the protected activity; (3) JPMC took adverse employment action against her; and (4) a causal connection existed between the protected activity and the adverse action. *See Kreinik*, 2003 WL 22339268, at *3 (internal citation omitted); *see, e.g. Resner v. Arc Mills, Inc.*, 152 F.3d 920 (2d Cir. 1998) (holding that, in order to state a discrimination claim under ERISA, plaintiff must first establish a prima facie case by demonstrating that she was a member of the protected class, qualified for her job and discharged under circumstances giving rise to an inference of discrimination). Plaintiff's filing of her ERISA claim against JPMC was a protected activity of which JPMC was aware. We consider whether she sufficiently pleads that JPMC took adverse employment action against her by filing the counterclaim.

In *Kreinik*, the court held that counterclaims, asserted after the termination of a plaintiff's employment, could constitute the type of adverse employment action required to meet the third element of a *prima facie* case of retaliation. *Id.* at *4. The court noted that for a counterclaim to be actionable as retaliatory, however, it must have some impact on the plaintiff's employment or prospective employment. *Id.* at *7. In *Kreinik*, the counterclaims alleged that the plaintiff engaged in trade name infringement, unfair competition and misappropriation under state common law;

9

violations of New York Business Law; tortious interference with actual business relations; tortious interference with prospective business relations; misappropriation of proprietary information; breach of contract and breach of implied covenants of good faith and fair dealing. *Id.* The court determined that even if it was not likely that the counterclaims would have an actual, adverse effect on plaintiff's business, the apparent potential for an adverse impact to his livelihood was sufficient for the retaliation claim to survive at the pleading stage. *Id.*

Plaintiff is no longer employed by JPMC and has not been since November 14, 2006. The nature of JPMC's claim is in restitution for recovery of money allegedly overpaid to plaintiff under the STD Plan. Plaintiff does not allege, nor can we surmise, how this claim will have an actual or apparent adverse impact on plaintiff's prospective employment. The claim does not impugn her professional reputation in any way. Nor is it apparent how a counterclaim asserted against plaintiff for recovery of money that JPMC, through the STD Plan, overpaid her would impact any potential employment opportunities.

Plaintiff "respectfully disagrees with the part of the holding in *Kreinik*, wherein it was stated that the adverse retaliatory action suffered by the litigant had to be an adverse *employment* action." (Pl. Reply Mem. Supp. Mot. Dismiss at 3 (emphasis in original).) Plaintiff argues that the law is unsettled regarding the extent to which a section 510 claim must implicate the employer-employee relationship. (*Id.* (citing *Tirone v. N.Y. Stock Exch., Inc.,* 2006 U.S. Dist. LEXIS 69591, at *9 (S.D.N.Y. Sept. 28, 2006).) Plaintiff argues that other circuits have noted that the anti-retaliation and anti-interference provision in ERISA is not narrowed to the employment relationship, and because the law is unsettled the proposed claim can not be futile. (*Id.* (citing *Mattei v. Mattei,* 126 F.3d 794,

801 (6th Cir. 1997).)[1]

Plaintiff's reading of *Tirone* is simply wrong. Although the court in *Tirone* noted that the Second Circuit had not squarely addressed the issue of whether a section 510 claim must implicate the employer-employee relationship, it noted that courts in the District have held that section 510 only proscribes interference with the employment relationship.[2] *See Tirone*, 2006 U.S. Dist. LEXIS 69591, at *9 (citing *Devlin v. Transp. Commc'ns Int'l Union*, 1997 WL 570512, at *6 (S.D.N.Y. Sept. 15, 1997); *Downes v. JP Morgan Chase & Co.*, 2004 WL 1277991, at *5 (S.D.N.Y. June 8, 2004); *DeSimone v. Transprint USA, Inc.*, 1996 WL 209951, at *3 (S.D.N.Y. Apr. 29, 1996); *DeGrooth v. Gen. Dynamics Corp.*, 837 F. Supp. 485, 489 (D. Conn. 1993)); *see also Ello*, 531 F. Supp. 2d at 571, n.18. The court held that the plaintiffs must allege that the defendant took some type of adverse employment action to interfere with the attainment of their benefit rights under the plan, and determined that the Amended Consolidated Complaint did not allege an adverse employment action. *Tirone*, 2006 U.S. Dist. LEXIS 69591, at *10. Because we determine that plaintiff likewise does not allege an adverse employment action in her proposed Amended Complaint, her request to amend the Complaint is denied as futile.

---

[1] The Third Circuit rejected the holding of *Mattei* in *Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 383 (3d Cir. 2002). We are not persuaded by it here either.

[2] Because the text of section 510 does not specifically state that the interference must be with an employment relationship, we rely on previous case law that has addressed this issue. *See* 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act . . . .").

## CONCLUSION

For all of the foregoing reasons, the plaintiff's motion to dismiss the counterclaim is granted

and her motion to amend the Complaint is denied.


SO ORDERED.

Dated: White Plains, New York
      June 30, 2008

                                       Sr. United States District Judge

# EXHIBIT B

**JPMorganChase** ◯          ▓▓▓▓▓▓▓     **Susan Henderson** ▾          JPM  38.47 ▾ 0.38 16:00
                                         My Profile | Change User                            EST

Company Home    HR & Personal    Workplace    Human Resources          People    [        ] ⦿
                                  Resources                             Search
   HR Policies    Corporate Forms Library    HR & Personal Index    Feedback    Site Map    Search    [        ] ⦿
                                                                                Intranet

**HR & Personal Home**

**Web Centers & Toolkits**          ## Disability Leave

**Pay & Benefits**

**Career & Work**                   Home > Career & Work > HR Policies > Time Away from Work > Leave of Absence Policies >
                                    **Disability Leave**                                    ⎙ print friendly

**HR Policies**

   Time Away from Work             JPMorgan Chase's Disability Leave Policy provides time off for employees    **Related Links**
                                   when they have an illness or injury that continues for more than one
   Leave of Absence Policies       workweek and up to 26 weeks. The policy also provides disability pay        Terms to Know
                                   benefits in the form of full or partial pay for eligible employees.          JPMorgan Chase and the Family
      JPMC and the Family and                                                                                   and Medical Leave Act
      Medical Leave Act           For the purposes of this policy, the term, disability, is defined as a period  Disability and Reasonable
                                   of illness or injury that continues for eight or more consecutive calendar    Accomodation
      Family Leave                 days, during which you are unable to perform all of the material and
                                   substantial duties of your position, on an active employment basis. You
      Parental Leave               must be under the care of a licensed physician during this time and
                                   certified by JPMorgan Chase's applicable short-term disability benefits
      **Disability Leave**         administrator for non-work-related illnesses or injuries or you must be
                                   certified as disabled by JPMorgan Chase's Workers' Compensation benefits
      Discretionary Leave          administrator for work-related illnesses or injuries. Accordingly, you are
                                   not covered under this policy if the sole reason you cannot report to work
      Military Leave and           is due to your inability to commute to the workplace. (If this is an issue
      Reserve Training             that affects you, please see the Disability and Reasonable
                                   Accommodation Policy.) Furthermore, this policy does not cover any
**Education & Training**           disability that results from cosmetic surgeries, war (declared or
                                   undeclared, or any act of war), your active participation in a riot or your
**Life & Well-Being**              participation in a felony.

**Employee Discounts &**           Details, including your rights to benefits under the program are contained
**Banking**                        in the documents governing its operations. To the extent a benefit is
                                   insured (e.g., state disability benefits in New York and New Jersey), the
**JPMorgan Chase**                 benefits under the program are governed by the Employee Retirement
**Culture & Community**            Income Security Act (ERISA), a federal law that regulates employee
                                   benefits. For these insured benefits, both the insurance policy and the
**Life Event Guides**              related plan document are the governing documents.

                                   - Maximum Disability Leave Duration
                                   - Eligibility for Disability Pay Benefits
                                   - Disability Pay Benefits Schedule
                                   - Reporting a Disability Leave
                                   - Filing A Claim For Disability Pay Benefits
                                   - Ongoing Certification Process
                                   - Medical Documentation
                                   - Denied Claims
                                   - Disability Leaves Exceeding 26 Weeks
                                   - Recurrent Disabilities
                                   - Multiple Disability Leaves
                                   - Job Protection
                                   - While You Are on a Disability Leave

                                   **Maximum Disability Leave Duration**
                                   All employees are eligible to take time off in accordance with the terms
                                   of this policy. Depending upon your employment classification and length
                                   of service, your disability leave may consist of paid and/or unpaid time
                                   off, as further described in the Eligibility for Disability Pay Benefits
                                   section of this policy. When you take a disability leave, your maximum
                                   disability leave duration, i.e., the maximum amount of disability leave
                                   time available to you for each disability leave you take, is determined by
                                   your employment classification, as follows:

                                   - If you are a full-time or part-time salaried employee who is
                                     actively at work when your disability leave begins, you are

eligible to take up to 26 weeks of paid or unpaid disability leave.

- If you are a part-time hourly-paid employee who is actively at work when your disability leave begins, you are eligible to take up to 60 days of unpaid disability leave. While you are not eligible for disability pay benefits, you may be eligible for statutory benefits, i.e., state disability benefits if you work in a state that provides such benefits or Workers' Compensation benefits, if applicable.

▲ Return to Top

**Eligibility for Disability Pay Benefits**
If you are actively at work when your disability leave begins and you are either a full-time employee who has completed the Introductory Period or a part-time salaried employee who has completed two years of recognized service, you are eligible for disability pay benefits if you file your completed claim in a timely manner and it is approved by the appropriate benefits administrator.

If you are a rehired full-time or part-time salaried employee, please note that you must complete the Introductory Period following your rehire to be eligible for disability pay benefits, even if you have met the recognized service requirement.

Disability pay benefits (up to a maximum of 25 weeks within a calendar year) are based on your completed years of recognized service as of the beginning of your disability leave and the approved duration of the disability under the terms of the program. As described below, your disability leave includes a wait period before your disability pay benefits begin, in accordance with the terms of this policy.

*The First Week Of Your Disability Leave*
There is a one-week wait period, i.e., seven consecutive calendar days, for disability pay benefits. Please refer to the Applying Available Paid Time Off section of this policy for more information.

*Disability Pay Benefits*
Beginning on the eighth consecutive calendar day of your disability leave, you may be eligible to receive disability pay benefits at either 100% or 60% pay (up to a total of 25 weeks within a calendar year), in accordance with the Disability Pay Benefits Schedule below. (In certain instances, employees may receive disability pay benefits at a higher percentage of pay than 60%, in accordance with applicable statutory requirements.) Disability pay benefits are payable only if your claim is approved for short-term or Workers' Compensation benefits. The disability pay benefits that you receive during your approved disability period are offset by any statutory benefits, including, but not limited to, any state disability (e.g., in New York and New Jersey) or Workers' Compensation benefits for which you may be eligible. You are not eligible to receive more than 100% of your pay between any state disability or Workers' Compensation benefits and disability pay benefits you may be eligible to receive under this policy. Any combination of disability benefit payments exceeding 100% of your pay must be returned to the firm.

The number of weeks of disability pay benefits at 100% or 60% pay for which you may be eligible during a disability leave under this policy is determined by your completed years of recognized service as of the beginning of your disability leave and the number of weeks of disability pay benefits that you already have received within the calendar year in which your disability leave begins. If you are eligible for time off under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy and your disability leave qualifies under that policy, your disability leave and time off approved under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy run concurrent and count toward the maximum leave duration under the Disability Leave Policy, as well as toward the time off for which you are eligible under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy

▲ Return to Top

**Disability Pay Benefits Schedule**

| Years of Recognized | Weeks at 100% | Weeks at 60% Pay |
| --- | --- | --- |

| Service | Pay within a Calendar Year | within a Calendar Year |
|---------|---------|---------|
| Less than 1* | 0 | 25 |
| 1-2* | 4 | 21 |
| 3-4 | 7 | 18 |
| 5-6 | 10 | 15 |
| 7-9 | 13 | 12 |
| 10-19 | 16 | 9 |
| 20 or More | 25 | 0 |

*Full-time employees, including rehired employees, must complete the Introductory Period before the beginning of the disability leave to be eligible for disability pay benefits; part-time salaried employees must complete two years of recognized service before the beginning of the disability leave to be eligible for disability pay benefits. Rehired part-time salaried employees must complete the Introductory Period following rehire in order to be eligible to receive disability pay benefits, even if they previously satisfied the two-year service requirement.

▲ Return to Top

### Reporting a Disability Leave

It is your responsibility to provide your manager with as much advance notification as possible if you believe that you will be absent due to an illness or injury that will continue for eight or more consecutive calendar days. Advance notification will enable your manager to make the necessary arrangements to cover your work during your absence and to report your request for disability leave to the accessHR Contact Center, between the first and eighth consecutive calendar day of your absence, through the Leaves and Terminations database which can be accessed via a link on the Manager Connection home page. Timely reporting of your disability leave ensures a timely determination of the disability pay benefits for which you may be eligible.

Note: If you believe that your illness or injury was sustained in the course of or arose out of work, you must immediately inform your manager, whether or not your illness or injury causes you to be absent, so that your manager can report any work-related illnesses or injuries to accessHR.

▲ Return to Top

### Filing a Claim for Disability Pay Benefits

Upon learning of your disability leave from your manager, the accessHR Contact Center will send you a leave packet that includes disability claim forms and instructions for filing your disability claim to determine if you are eligible for disability pay benefits. You and your health care provider will be required to provide complete medical evidence to support your request for disability leave by sending the completed claim forms to the appropriate benefits administrator. Please note that any disability pay benefits for which you may be eligible will be suspended if you fail to provide the necessary medical information within the time frame required, i.e., within 15 calendar days. If you do not submit the required medical information and/or your claim is not approved within the subsequent time frame communicated to you, your claim will be denied and your employment may be terminated.

▲ Return to Top

### Ongoing Certification Process

Based on the medical information supplied, the benefits administrator will determine your eligibility for disability pay benefits, including the duration of benefits. Payroll will be notified of the claim determination and you will be paid accordingly. If you continue to require leave, periodic updates of medical documentation will be required, at your expense. Disability pay benefits will be suspended and your employment may be terminated if you fail to provide the necessary medical information when it is required.

▲ Return to Top

### Medical Documentation

Certain medical information will be requested of you and must be supplied at your own expense and in a timely manner, in order for your

request for disability leave to be evaluated, both initially and on an ongoing basis. You will also be required to provide signed authorization for JPMorgan Chase's benefits administrator to obtain and release all reasonably necessary information which supports your disability pay benefits claim.

You should only provide your medical certification to the medical professionals who are responsible for reviewing your medical certification; it should not be provided to your manager, Human Resources Business Partner or anyone else. Any medical information that you submit to the firm's benefits administrators is treated as confidential and used only for appropriate purposes.

JPMorgan Chase reserves the right to have you examined by a licensed physician chosen by the firm, at the firm's expense, as often as reasonably necessary while your claim continues. Failure to comply with this examination may result in the denial, suspension or termination of any disability pay benefits provided under this policy, unless JPMorgan Chase agrees you have a valid and acceptable reason for not complying.

▲ Return to Top

### Denied Claims

If the benefits administrator informs you that your claim for leave under this policy is denied and your time off is not designated as covered under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy by the FMLA Unit within JPMorgan Chase's Disability Management Services Department, it is your responsibility to immediately contact your manager to determine whether your former position is available and whether you may return to it. If your position is no longer available, your employment will be terminated.

If your former position is available and your manager indicates that you are eligible to return to it, you will be expected to return to work immediately. If you are returned to your former position, any time off that was not approved by the benefits administrator and was not approved under the JPMorgan Chase and the Family and Medical Leave (FMLA) Policy will be considered as an unapproved absence and may affect your attendance record and can be used as a negative factor toward corrective action. Except when you are notified that your time off is covered under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy, if you do not contact your manager upon notification of denial of disability pay benefits or if you do not return to work as instructed by your manager, your employment will be terminated for failure to return from leave.

Whether or not you return to work, any overpayment of disability pay benefits will be recovered from you. At the time that the benefits administrator informs you of the denial of your request for disability leave, you will also be advised of any appeal process. If you appeal the denial of your request for disability leave and your appeal is successful, you will receive the disability pay benefits for which you are eligible.

▲ Return to Top

### Disability Leaves Exceeding 26 Weeks

In the event you continue to be disabled as defined within this policy after taking an approved 26-week disability leave under this policy, you may be eligible to receive long-term disability (LTD) benefits if you elected LTD benefits coverage, under the terms of JPMorgan Chase's LTD benefit plan. If you are approved for LTD benefits, you will be placed on LTD status and paid the benefits for which you qualify under the terms of your LTD Plan coverage. If you did not elect LTD benefits coverage or if your claim for LTD benefits is denied, your employment is terminated, unless any of the following three exceptions apply to you:

- Your initial claim for LTD benefits is still being reviewed in which case your leave will be extended on an unpaid basis until an initial LTD claim determination is made; or

- You have requested and have been approved for additional unpaid leave time under another JPMorgan Chase policy, such as the Disability and Reasonable Accommodation Policy; or

- Other laws require an extension of your disability leave on an
  unpaid basis.

▲ Return to Top

**Recurrent Disabilities**

If you return to active status from a disability leave under this policy and
you take another disability leave under this policy for a medical condition
related to or due to the same cause as your prior disability leave within
60 calendar days of returning to work, you will not have to complete
another one-week wait period and your subsequent disability leave will
be considered a continuation of your original disability leave (even if the
subsequent disability period occurs in a new calendar year), provided
your successive leave is approved by the benefits administrator. The
subsequent weeks of disability leave will resume being counted toward
the maximum leave duration for which you are eligible, i.e., 26 weeks
for salaried employees. If you are eligible for disability pay benefits, your
benefits will resume at the appropriate rate, i.e., 100% or 60% of pay,
based on your length of service as of the beginning of your original
disability leave, up to the maximum of 25 weeks available to you within
the calendar year in which your original disability period began. If you
reach the maximum of 25 weeks of disability pay benefits within a
calendar year, any further disability leave for which you may be eligible
is provided an unpaid basis, provided your disability leave continues to
be approved by the benefits administrator.

▲ Return to Top

**Multiple Disability Leaves**

If you return from a leave under this policy and are in active status for
more than 60 calendar days and you require another leave under this
policy for a condition related to or due to the same medical condition as
your prior leave or if you take another disability leave at any time after
returning to active status for a different condition than your prior
disability leave, your successive leave will be considered a new disability
leave. Therefore, you will be required to complete another one-week
wait period and your maximum disability leave duration, i.e., 26 weeks
for salaried employees will begin anew. If you are eligible for disability
pay benefits as determined by the benefits administrator, your benefits
will resume at the appropriate rate, i.e., 100% or 60% of pay, based on
your length of recognized service as of the beginning of your most recent
disability leave, up to the maximum of 25 weeks within the calendar
year in which your disability leave begins. If you reach the maximum of
25 weeks of disability pay benefits within a calendar year, any further
disability leave for which you may be eligible is provided on an unpaid
basis, provided your disability leave continues to be approved by the
applicable benefits administrator.

▲ Return to Top

**Job Protection**

If you are a full-time or part-time salaried employee with 12 or more
months of recognized service when your disability leave under this policy
begins, or a part-time hourly-paid employee with 12 or more months of
recognized service when your disability leave under this policy begins
who has worked 1,250 or more hours within the 12-month period
immediately preceding your disability leave, your disability leave may be
job protected to the extent it is covered under the JPMorgan Chase and
the Family and Medical Leave Act (FMLA) Policy.

If your disability leave is approved by the appropriate benefits
administrator or by the FMLA Unit within Disability Management Services
and is job protected under the JPMorgan Chase and the Family and
Medical Leave Act (FMLA) Policy, you may return to the same job or an
equivalent job. If you do not return to work on the date that you are
released to return to work, your employment may be terminated due to
your failure to return from leave, unless your continued absence was
otherwise approved under another JPMorgan Chase policy, such as
the Disability and Reasonable Accommodation Policy.

If your disability leave under this policy is approved by the appropriate
benefits administrator, but you are not eligible for job protection under
the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy,

you may return to your former job if it has not been filled. If your former job has been filled, you are eligible to conduct a 60-day unpaid internal job search, provided you meet the Job Posting Program eligibility requirements. If you do not secure another position within the 60-day job search period or do not meet the Job Posting Program eligibility requirements, your employment with JPMorgan Chase is terminated unless you are approved for additional time off under another JPMorgan Chase policy, such as the Disability and Reasonable Accommodation Policy.

If you are provided with a job-search period, you may continue many of the benefits you elected provided you make the necessary contributions. Benefits which do not continue while you are on a job-search include Business Travel Accident, Transportation Spending Accounts, Child/Elder Care Spending Account and Long-term Disability (LTD).

If you are a part-time hourly-paid employee with less than 12 months of recognized service when your disability leave under this policy begins and you have not worked 1,250 hours within the 12-month period immediately preceding the disability leave, you are not eligible for job protection under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy and, therefore, during your disability leave. If you return to work within 60 days of having begun a disability leave under this policy, you may, however, return to your former position if it is still available. Otherwise, you are eligible to conduct a 60-day unpaid internal job search, provided you meet the Job Posting Program eligibility requirements. If you do not secure another position within the 60-day job search period or do not meet the Job Posting Program eligibility requirements, your employment with JPMorgan Chase is terminated.

The approval of your disability leave under this policy, either with or without job protection, does not restrict the firm's right to eliminate positions in connection with staff reductions or other business reasons. If your position is eliminated during your approved disability leave, your termination date typically will be deferred until your disability leave has ended.

▲ Return to Top

### While You Are on a Disability Leave

#### Holidays
You are not paid for holidays while you are receiving disability pay benefits at 60% pay or while you are on an unpaid disability leave. In addition, you do not earn floating holidays for holidays that occur while you are on a disability leave, unless the holiday occurs during the first week of a disability leave covered under the Disability Leave Policy.

#### Applying Available Paid Time Off
If your disability leave is due to a non-work related illness or injury, you must apply any earned and unused sick time during the one-week wait period for disability pay benefits, as well as during an unpaid disability leave that is approved by the applicable disability administrator or by the FMLA Unit of Disability Management Services. If your earned and unused sick time is exhausted, you must apply earned and unused personal days and floating holidays, if applicable, as well as any accrued and unused vacation. In addition, at your request, JPMorgan Chase will advance you unaccrued vacation time for the calendar year in which your leave begins for use during your one-week wait period or unpaid disability leave. However, you will be required to reimburse JPMorgan Chase for any unaccrued vacation time for which you are paid if your employment terminates prior to the date you otherwise would have accrued such vacation time. The paid days you apply to your leave may not exceed the number of unpaid days you are taking. For example, you may not apply three weeks of unused vacation to a two-week unpaid disability leave.

If your disability leave is due to a work-related illness or injury, you may, but are not required to, apply any of your available paid time off during the one-week wait period for disability pay benefits or an unpaid disability leave that is approved by the Workers' Compensation administrator or by the FMLA Unit of Disability Management Services. You may also choose not to receive the disability pay benefits described in this policy. If you choose to use your available paid time off and/or to receive disability pay benefits, your available paid time off and/or

disability pay benefits will be offset by any Workers' Compensation benefits for which you may be eligible, unless prohibited by state law. In other words, you are not eligible to receive more than 100% of your pay between Workers' Compensation benefits and your available paid time off and/or disability pay benefits. Disability pay benefits and other available paid time off are paid on the express condition that you will return to the firm any combination of disability pay benefits and/or paid time off and Workers' Compensation benefit payments exceeding 100% of your pay.

You may not apply any of your available paid time off if your pay is suspended because you have not provided medical information to support your request for leave in a timely manner or if your benefits claim is denied and your time off is not approved under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy. You also may not apply any of your available paid time off while you are receiving disability pay benefits, including benefits that are provided on a partial pay basis.

### Benefits Coverage During Your Disability Leave

While you are on a disability leave under this policy you may continue many of the benefits you elected provided you make the necessary contributions. Benefits which do not continue while you are on disability leave include Business Travel Accident and Transportation Spending Accounts. In addition, if your leave is unpaid, you cannot continue the Child/Elder Care Spending Account. Benefits coverage may also cease after appropriate notification from JPMorgan Chase if you do not make the necessary contributions. You may resume your benefits coverage when you return to work.

### Timing of Your Salary Review

If your salary review date occurs during your disability leave, your salary will be reviewed at that time. Any salary increase for which you may be eligible will be effective on the regularly scheduled date.

### Corrective Action

If you did not provide advance notification of your disability leave, your absence may affect your attendance record and can be used as a negative factor toward corrective action, unless your absence is approved under the JPMorgan Chase and the Family and Medical Leave Act (FMLA) Policy or Disability and Reasonable Accommodation Policy or related to an approved Workers' Compensation claim.

If you were within the corrective action restrictions period before you began your disability leave, the balance of the restrictions period resumes when you return to work if you are eligible to return to your former position. If your former position has been filled, you are not eligible to conduct an unpaid internal job search and your employment is terminated.

### Returning to Work

At least two days before your scheduled return to work, you must inform your manager of your intent to return to work. You must also provide the applicable benefits administrator with a statement from your health care provider verifying that you are able to return to work. Your manager can then notify the accessHR Contact Center as soon as you have actually returned so that you are reactivated on the payroll system.

### Termination of Employment

During any leave approved under this policy, your employment remains subject to the Employment at Will Policy. Please note that your employment may be terminated if it is determined that you, either before or during your leave, committed a material violation of the firm's Code of Conduct or a major violation of any JPMorgan Chase policies. Falsification or unauthorized alteration of any documentation submitted under this policy will be considered to be a violation of JPMorgan Chase policy and will result in the immediate termination of employment as well as the termination of any benefits under this policy.

▲ Return to Top

**Last Update Date:** 07/01/05

| Tokyo | Hong Kong | London | Sao Paulo | New York | Chicago |
|-------|-----------|--------|-----------|----------|---------|
| 6:27 AM | 5:27 AM | 9:27 PM | 7:27 PM | 4:27 PM | 3:27 PM |
| Thu Dec 8 | Thu Dec 8 | Wed Dec 7 | Wed Dec 7 | Wed Dec 7 | Wed Dec 7 |

More Time Zones/Weather

Company Home | JPMorgan Chase | JPMorgan | Chase | Bank One

©2005 JPMorgan Chase & Co. All rights reserved.
Stock prices are 20-minute delayed and are provided
by Quotemedia via OTF Market Data Services; they should not be
used as a basis for trade without further verification.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X  Via ECF

DONNA FEHN,

                          Plaintiff,      :    07 CIV. 8321 (WCC)

       -against-

                                :   AFFIDAVIT OF SERVICE

GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF JP MORGAN CHASE BANK, JP
MORGAN CHASE BANK, as Plan Administrator,
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY, as Administrator/Fiduciary of the Plan, KRISTA
DUDECK, Individually, DANIEL BERTA, Individually,
KARA MORETT, Individually, and DESMOND "Doe,"
Individually,

                        Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**STATE OF NEW YORK**    )
                      ) ss.:
**COUNTY OF NEW YORK**    )

      Marlene Thompson, being duly sworn, deposes and says, that deponent is not a party to the action, is over eighteen years of age and is employed by JPMorgan Chase Bank, N.A.

    That on the 15th day of July, 2008 deponent served the within:

### NOTICE OF MOTION FOR RECONSIDERATION

### JPMORGAN CHASE'S MEMORANDUM OF LAW IN SUPPORT

### OF ITS MOTION FOR RECONSIDERATION

To:   Danie T. Driesen, Esq.              Michael Bernstein, Esq.
     **Sapir & Frumkin LLP**            **Sedgwick, Detert, Moran & Arnold, LLP**
     Attorneys for Plaintiff           Attorneys for Defendant Hartford
     399 Knollwood Road, Suite 310    125 Broad Street, 39th Floor
     White Plains, New York 10603    New York, New York 10004-2400
     DDriesen@sapirfrumkin.com     Michael.Bernstein@sdma.com

by the address designated for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Sworn to before me this
15 day of July, 2008

_____
Notary Public

STUART RADISH
Notary Public, State of New York
No. 01RA6115435
Qualified in New York County
Commission Expires September 7, 2008

163621:v1